


**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JANIE SAMUEL, Adm. of Estate of Cathy Lynn Tubbs, et al., | : | Case No. C-1-02-378 |
| | : | |
| PLAINTIFFS | : | Judge Dlott |
| | : | |
| -vs- | : | |
| | : | **DEFENDANTS' MOTION TO DISMISS** |
| STEVEN M. HOOG, et al. | : | |
| DEFENDANTS. | : | |

Now come Defendants Cincinnati Firefighters Steven M. Hoog and Michael A. Lotz, by and through counsel, and hereby move this Court for an Order dismissing Plaintiffs' Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted and on the grounds of qualified immunity from suit. A Memorandum in Support is attached hereto.

Respectfully submitted,

JULIA L. McNEIL (0043535)
City Solicitor

GERI HERNANDEZ GEILER (0042081)
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph. (513) 352-3334

Trial Attorney for Defendant City of Cincinnati

## MEMORANDUM IN SUPPORT

### A. INTRODUCTION / ALLEGATIONS

Plaintiffs filed suit against Defendant Cincinnati Firefighters Steven M. Hoog and Michael A. Lotz (hereinafter referred to as "Defendants") on May 28, 2002, alleging one count of denial of equal protection based on race on behalf of Cathy Lynn Tubbs, three counts of intentional infliction of emotional distress and one count for punitive damages. Ultimately, Plaintiffs base their claims on nothing more than the fact that the Firefighters are "Caucasian" and Plaintiffs are "African-American." (Complaint, paras. 20-24).

Plaintiffs claim that on May 28, 2002 Defendants, who are paramedics, arrived at their home in response to a call they made to 911 regarding Cathy Lynn Tubbs (hereinafter referred to as Ms. Tubbs"). Plaintiffs complain that "[a]fter evaluating the situation" one of the Defendants stated his opinion that Ms. Tubbs' condition was not an emergency. (Complaint, para. 15). Plaintiffs further allege that Defendants failed to transport Ms. Tubbs to a hospital "because of her race." (Complaint, para 31). However, in paragraph 47 of their Complaint, Plaintiffs express that Defendants were merely reluctant to use an ambulance to transport Ms. Tubbs based on their opinion that her situation was not an emergency. Plaintiffs admit that Defendants did, in fact, take Ms. Tubbs to a hospital and admit that Plaintiffs did not wish for Ms. Tubbs to be transported to the nearest hospital, but rather to one across town. (Complaint, para. 39). Plaintiffs do not attempt to hold Defendants accountable for the death of Ms. Tubbs. Nor do they claim that Defendants' actions hastened her death.

**B.   PLAINTIFFS' COMPLAINT FAILS TO STATE A FEDERAL EQUAL PROTECTION CLAIM AGAINST DEFENDANTS UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiffs bring their suit under 42 U.S.C. 1983. (Complaint, para. 1). To establish a claim under 42 U.S.C. 1983, a plaintiff must prove: (1) that the defendant acted under color of state law, and (2) that the offending conduct deprived plaintiff of rights secured by federal law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981). Plaintiffs claim that Defendants violated Ms. Tubbs' constitutional right to equal protection of the law when Defendants hesitated to transport her to the hospital.

Plaintiffs' Complaint fails to state any federal equal protection claim upon which may be granted. Recently, in Goad v. Mitchell 297 F.3d 497 (6th Cir. 2002) the Sixth Circuit reconsidered the heightened pleading requirement imposed on civil rights plaintiffs where the defendant raised the affirmative defense of qualified immunity. See, e.g., Veney v. Hogan, 70 F.3d 917 (6th Cir. 1995). The court's reconsideration came as a result of the United States Supreme Court's decision in Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, invalidating the D.C. Circuit's heightened pleading requirements in such cases. The Sixth Circuit in Goad held that Crawford-El likewise invalidated the Sixth Circuit's heightened pleading requirements in civil rights/qualified immunity cases, thereby partly overruling Veney. Goad at 503. However, the court explicitly stated that trial courts must still require plaintiffs to produce specific, nonconclusory factual allegations of a defendant's improper motive before discovery in civil rights cases where the plaintiff must prove wrongful motive and qualified immunity is a defense. Id. at 504.

3

The Sixth Circuit court in <u>Goad</u> supported its position by explaining:

> The Supreme Court in *Crawford-El* did, however, reiterate that in cases in which qualified immunity is raised as an affirmative defense, "'firm application of the Federal Rules of Civil Procedure is fully warranted' and may lead to the prompt disposition of insubstantial claims." <u>Crawford-El</u>, 523 U.S. at 597 (quoting <u>Harlow v. Fitzgerald</u> 457 U.S. 800, 819-20, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). **The Court further stated that "when a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.** It must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings." 523 U.S. at 597-98. In such cases, the Court explained that district courts "may order a reply to the defendant's or a third party's answer under Federal Rule of Civil Procedure 7(a), or grant the defendant's motion for a more definite statement under Rule 12(e). **Thus, the court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment."** 523 U.S. at 598 (quoting <u>Siegert v. Gilley</u>, 500 U.S. 226, 236, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991) (Kennedy, J., concurring)). The Court went on to say that the above options exist even if the defendant does not raise the affirmative defense of qualified immunity, and that "if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." <u>Id.</u>

<u>Id.</u> at 503-504 (Emphasis added). Plaintiffs' claim for intentional discrimination on behalf of Ms. Tubbs requires proof of wrongful motive. Therefore, according to the Sixth Circuit's analysis in <u>Goad</u>, Plaintiffs herein are required to put forward in their Complaint specific, nonconclusory factual allegations that establish an improper motive in order to survive a motion to dismiss. Plaintiffs fail to do so.

At best, Plaintiffs plead intentional discrimination in classic "notice" form, which does not suffice to overcome a motion to dismiss based on qualified immunity. For example, Plaintiffs' Complaint states:

20. Fire Fighter Hoog is a Caucasian man.

21. Fire Fighter Lotz is a Caucasian man.

22. Cathy Lynn Tubbs was an African-American woman.

23. Janie Samuel is an African-American woman.

24. Candace Tubbs is an African-American woman.

. . .

31. Defendants, Fire Fighters Hoog and Lotz failed to transport Cathy Lynn Tubbs because of her race.

32. The initial decision of Fire Fighter Hoog not to transport Cathy Lynn Tubbs to the hospital because of her race violates Cathy Lynn Tubbs' right to have equal protection under the law.

. . .

41. Fire Fighter Hoog's independent declaration of a non-emergency and his reluctance to use an ambulance to transport Cathy Lynn Tubbs to the hospital constitute a custom of reluctance to provide equal medical services to African-Americans in need of emergency medical attention.

These conclusory assertions are insufficient to prove a prima facie case of intentional discrimination. See, e.g., Kelly v. City of Cincinnati, C-1-99-306, p.28 (March 2, 2002), unreported (attached) (holding that conclusory assertions of sexual discrimination are insufficient to prove a prima facie case of selective prosecution and intentional discrimination).

A defendant does not violate the equal protection clause unless he purposefully discriminates against a plaintiff because of his or her class. Hunter v. Underwood, 471 U.S. 222, 229, 105 S.Ct. 1916 (1985); Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 583, 104 S.Ct. 2576 (1984); Rodgers v. Lodge, 458 U.S. 613, 618, 102 S.Ct. 3272 (1982); Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555 (1977); Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040

(1977). First, there is not a single allegation regarding any intentional act or intentional deprivation of any right. Plaintiffs' Complaint basically alleges that Defendants are White; Plaintiffs are Black; therefore, Defendants discriminated against Plaintiff Ms. Tubbs based on her race. Plaintiffs' civil rights claim never alleges that Defendants' hesitation to transport Ms. Tubbs was erroneous from a medical standpoint, based on her condition at the time of the event. Even if Defendants' actions had been erroneous, equal protection claims cannot be based on a decision which is simple error, neglect or mistake. See Ciechon v. City Chicago, 686 F.2d 511, 523 (7th Cir. 1982).

Additionally, Plaintiffs' Complaint makes not a single allegation of disparate treatment, that is, that similarly situated Whites were treated differently than Blacks. As the plaintiff in Kelly, supra, failed to do, Plaintiffs herein fail to name or otherwise identify any similarly situated White person who was treated differently by these Defendants. That is, Plaintiffs fail to name any White person who called for their services, who was conscious, alert and speaking upon their arrival, and who Defendants treated any differently by not expressing their opinion as to their condition or not hesitating to take them to a hospital. This failure to include information about the identity of a similarly situated individual from which the defendants' discriminatory intent could be reasonably inferred caused the court in Kelly to rule that the plaintiff's complaint was insufficient to state a claim of intentional discrimination and also failed to overcome the presumption that the defendants properly discharged their duties. Kelly at 28, citing Gardenhire . Schubert, 205 F3d 303, 320 (6th Cir. 2000). Herein, Plaintiffs' failure to do likewise causes their Complaint to be insufficient to state a claim of intentional discrimination.

6

Even if Plaintiffs' Complaint alleged disparate impact, which it does not, proof of disparate impact is not determinative unless the pattern is clear or "stark" and unexplainable on grounds other than race. <u>Arlington Heights</u> at 242. Again, Plaintiffs' Complaint alleges no pattern whatsoever, let alone, a "stark" one, and the circumstances of this one particular incident as alleged by Plaintiffs, even when assumed to be true, are not so dramatic that a suspect motive can even be inferred. Therefore, Plaintiffs' Complaint fails to state a federal claim for equal protection upon which relief may be granted.

## C. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Defendants are entitled to qualified immunity on the equal protection claim because they are government officials who were performing discretionary functions and generally are shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. <u>Saucier v. Katz</u>, 533 U.S. 194, 200-201, 121 S.Ct. 2151 (2001).

When a government official asserts the defense of qualified immunity, courts must engage in a two-part sequential determination. The first step is to determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If no constitutional right would have been violated based on the facts alleged, the court need not inquire

further. Id. at 202. However, if the facts do allege a violation of a constitutional right, then the second step is to determine whether the right was clearly established at the time in question. Id. 201.

This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. A constitutional right is "clearly established," if "the law is clear in regard to the official's particular actions in the particular situation." Long v. Norris, 929 F.2d 1111, 1114 (6th Cir. 1991) cert. den'd, 502 U.S. 863 (1991), See also, Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1996) (holding that "for a plaintiff to make a successful 1983 claim, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'" (quoting Russo v. Cty of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992)).

Taken in the light most favorable to Plaintiff, the alleged facts as stated in the Complaint do not show that the Defendants' conduct violated any constitutional right. Again, Goad, supra, requires that when a plaintiff files suit against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. Goad, citing Crawford-El 523 U.S. at 598. The Court must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings. Id. Goad ruled that trial courts must insist that plaintiffs 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a motion to dismiss or motion for summary judgment. Id. at 504. As demonstrated in the equal protection segment of this Motion,

8

Plaintiffs plead in nothing more than "notice" form, omitting any allegation of intentional acts or intentional deprivation of any right and omitting any allegation of disparate treatment. In failing to meet this first prong of the qualified immunity analysis, Plaintiffs' claim should not be further analyzed as to the second prong. Defendants are entitled to judgment based on qualified immunity.

**B.    IN THE ABSENCE OF FEDERAL CLAIMS, THE COURT SHOULD NOT ASSERT PENDANT JURISDICTION OVER COMMON LAW TORT CLAIMS.**

This Court should decline jurisdiction over Plaintiffs' pendant state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966); Soliday v. Miami County, 55 F.3d 1158, 1164-65 (6th Cir. 1995). Even if this Court had jurisdiction, Plaintiffs' Complaint fails to state any state claim for intentional infliction of emotional distress upon which relief may be granted.

### 1. Plaintiffs Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress.

A claim for intentional infliction of emotional distress requires proof of the following elements: (1) the actor either intended to cause emotional distress or knew that actions taken would result in serious emotional distress to plaintiff; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff was serious. Kovacs v. Bauer (1996), 118 Ohio App.3d 591, 693 N.E. 2d 1091; Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America (1983), 6 Ohio St.3d 369, 453 N.E.2d 666.

Plaintiffs' Complaint fails to make specific, nonconclusory allegations which meet the elements of intentional infliction of emotional distress. At best, Plaintiffs have alleged that Defendants hesitated, based on their opinion that the situation was not an emergency, to transport Ms. Tubbs to a hospital and that such opinion was stated in the presence of Ms. Tubbs. There are no allegations that Ms. Tubbs was a child and Plaintiffs admit that she was "awake and alert" as Defendants were attending to her medical needs. (Complaint, para. 46). There is nothing about a serious medical condition which would dictate that Defendants discuss Ms. Tubbs' condition outside of her presence or that would dictate that they express an opinion as to her condition outside of her presence. Clearly, it was Defendants' duty to discuss Ms. Tubbs' condition with her directly, rather than out of her presence. Moreover, Plaintiffs' Complaint establishes that at most, Defendants were merely reluctant to transport Ms. Tubbs, as they admit that Defendants did transport her to a hospital. In fact, Plaintiffs admit that it was Defendants who suggested that she be taken to the closest hospital rather than one across town. In this vein, Plaintiffs wholly fail to meet the elements necessary to establish an action for intentional infliction of emotional distress.

### 2. Defendants are Entitled to Immunity Pursuant to O.R.C. 2744.

Even if the Court finds that the Plaintiffs' Complaint adequately pleads a claim for intentional infliction of emotional distress, Defendants would still be entitled to immunity pursuant to O.R.C. 2744.03. The question of whether a governmental employee is entitled to statutory immunity is a question of law for a court's determination. Conley v. Shearer (1992), 64 Ohio St.3d 284, 29, 595 N.E.2d 862; Feitshans v. Darke County (1996), 11 Ohio App.3d 14, 19, 463 N.E.2d 52. R.C. 2744.03(A)(6)(b) provides

immunity to government employees unless the employee's acts were with malicious purpose, in bad faith or in a wanton or reckless manner.

Defendants herein are entitled to immunity from state tort claims unless their acts were committed with malicious purpose, in bad faith or in a wanton or reckless manner. Plaintiffs allege the various standards randomly in the three counts for intentional infliction of emotional distress in an attempt to avoid O.R.C. 2744's immunity. However, just as plaintiffs are required to adhere to the Goad standard of pleading in this particular type of civil rights case to defeat qualified immunity under federal law, so too should plaintiffs attempting to defeat statutory immunity under state law. Plaintiffs' bare bones, conclusory allegations of willful, reckless, malicious and wanton conduct do not suffice to adequately defeat the immunity conferred to Defendants by O.R.C. 2744.

Even if Plaintiffs' Amended Complaint met the heightened pleading standard, Defendants' alleged conduct does not constitute malice as defined by Ohio law. The Ohio Supreme Court has held that "malicious" means indulging or exercising malice, harboring ill will or enmity. Teramano v. Teramano (1966), 6 Ohio St.2d 117, 118, 216 N.E.2d 375, 377. "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. Jackson v. Butler Cty. Bd. of Commrs. (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363, citing Bush v. Kelley's, Inc. (1969), 18 Ohio St.2d 89, 92, 247 N.E.2d 745. Assuming, arguendo, the truth of Plaintiffs' allegations, Defendants discussion with Ms. Tubbs about her condition or a momentary reluctance to transport her based on their opinion that the situation was not an emergency, cannot be viewed as malicious conduct within the meaning as set forth by Ohio law. Defendants are not

11

accused of hastening Ms. Tubbs' eventual death. There is no case law in this state declaring such conduct to be malicious.

The Ohio Supreme Court has defined "reckless" to mean conduct committed knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. Cater v. City of Cleveland (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, citing Marchetti v. Kalish (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, 700 (additional citations omitted). Again, assuming, arguendo, the truth of Plaintiffs' allegations, Defendants discussion with Ms. Tubbs about her condition or a momentary reluctance to transport her based on their opinion that the situation was not an emergency, cannot be viewed as reckless conduct within the meaning as set forth by Ohio law. There is no case law in this state declaring such conduct to be reckless.

"Wanton" misconduct was defined as conduct committed where one "'fails to exercise any care whatsoever toward those to whom he owes a duty of care, and this failure occurs under circumstances in which there is a great probability that harm will result.'" McKinney v. Hartz & Restle Realtors, Inc. 31 Ohio St. 3d 244, 246, 510 N.E.2d at 388-389, quoting Hawkins v. Ivy (1977), 50 Ohio St. 2d 114, 118-119, 363 N.E.2d 367, syllabus. Once more, assuming, arguendo, the truth of Plaintiffs' allegations, Defendants' discussion with Ms. Tubbs about her condition or a momentary reluctance to transport her based on their opinion that the situation was not an emergency, cannot be viewed as wanton conduct within the meaning as set forth by Ohio law. There is no case law in this state declaring such conduct to be wanton. Since Plaintiffs cannot

establish that the O.R.C. 2744 immunity does not apply in regards to the claim of Ms. Tubbs, they surely cannot establish such claims as bystanders. Therefore, Defendants are entitled to immunity pursuant to O.R.C. 2744.

WHEREFORE, Defendants pray for an Order dismissing Plaintiffs' Complaint with prejudice and all other relief to which they may be entitled.

Respectfully submitted,

JULIA L. McNEIL (0043535)
City Solicitor

*/s/ Geri Hernandez Geiler*
GERI HERNANDEZ GEILER (0042081)
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio 45202
Ph. (513) 352-3334

Trial Attorney for Defendant City of Cincinnati

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing pleading has been sent to Plaintiff's counsel of record, Barbara Bison Jacobson, 3536 Edwards Road, Suite 201, Cincinnati, Ohio 45208 on this __16th__ day of __December__ 2002, by ordinary U.S. Mail.

*/s/ Geri Hernandez Geiler*
GERI HERNANDEZ GEILER (0042081)
Sr. Assistant City Solicitor

s:\Geiler\SamuelsMTD