**United States District Court**
**Southern District of Ohio**
**Western Division**

FILED
KENNETH J. MURPHY
CLERK

'02 MAR 14  PH 2: 14

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

MELISSA KELLY,
aka "Brittany,"

        Plaintiff,

No.  C-1-99-306
Magistrate Judge Jack Sherman, Jr.
(by consent; formerly assigned to Weber, J.)

vs.

CITY OF CINCINNATI, et al.,

        Defendants.



## ORDER THAT:

1.    City Of Cincinnati Police Officers' Motion To Dismiss (doc. 22) Is Granted;

2.    Blue Ash Police Officers' Motion To Dismiss (doc. 27) Is Granted; and

3.    Plaintiff's Complaint Is Dismissed With Prejudice.

---

## I.    INTRODUCTION

Plaintiff Melissa Kelly, a professional exotic dancer, brings this action through counsel

under 42 U.S.C. § 1983 claiming that Defendants violated her rights under the First, Fourth,

and Fourteenth Amendments of the United States Constitution.

The individual Defendant police officers seek dismissal of Plaintiff's claims against

them based on the doctrine of qualified immunity, which generally shields government officials

3'

making discretionary decisions – including law enforcement personnel – "from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 520 (6th Cir. 2001)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity in this case arises by way of the following presently pending Motions and Memoranda: the City of Cincinnati Police Officers' Motion to Dismiss (doc. 22), the Blue Ash Police Officers' Motion To Dismiss (doc. 27), Plaintiff's Memoranda In Opposition to both Motions (docs. 25, 29), and Defendants' respective Replies (docs. 30, 32).

---

## II.    MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A Motion to Dismiss for failure to state a claim may not be granted "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir. 1989)(citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In ruling on such a Motion, the well-pleaded factual allegations in a Complaint must be taken as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. (1998).

Although these standards of review are quite favorable to plaintiffs, *see Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988), the Court is not required to make unwarranted factual inferences or to accept a Complaint's legal conclusions as correct.

2

*Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his [or her] claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid*, 859 F.2d at 436 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)).

Consequently, ruling on a Motion To Dismiss for failure to state a claim resolves not whether the plaintiff will ultimately prevail but instead whether the plaintiff is entitled to search for and offer evidence in support of his or her claims.

---

## III.    FACTUAL BACKGROUND

Accepting Plaintiff's allegations as true reveals the following factual background.

### A.    Plaintiff's Entertainment Business

In 1993 Plaintiff established Brittany's Entertainment Services ("Brittany's"), a business that provided dancers to "perform at bachelor parties, birthday parties, and other functions for their customers, all of whom had to be twenty-one or over in age." (Doc. 1 at 5). Plaintiff and her dancers performed exotic dance numbers in the nude. "Although they danced nude they would only perform in the privacy of the homes or at the private hospitality facilities of their customers." (Doc. 1 at 5).

For a number of years Brittany's customers included "police officers, deputy sheriffs, prosecutors, defense attorneys, and other public officials...." (Doc. 1 at 6). Prior to Plaintiff's

3

arrest, described below, "Plaintiff and/or her dancers had performed exotic nude dancing for some of the very same officers that were involved in her arrest." (Doc. 1 at 12).

"The events that Plaintiff and her dancers performed at were for the strict purpose of adult entertainment and fun. At no time did [Plaintiff] or any of her dancers engage in the act of prostitution. The customers had clean fun at the parties and [Plaintiff] and her dancers earned a living legally." (Doc. 1 at 5).

### B.     The "Sting" Operation

On three occasions – August 28, 1996, October 22, 1996, and December 17, 1996 – Defendants' friends, who were not law enforcement officers, held fake bachelor parties in their private homes. Defendants' friends invited Brittany's dancers to perform at these fake bachelor parties. This was done at Defendants' request.

During these private events, Defendants secretly videotaped nude dancing performed by Britanny's dancers including Plaintiff and Gina Reisner. Defendants did not obtain a search warrant authorizing them to videotape Plaintiff or her dancers, and "the undercover officers and their friends had been told by the dancers not to take any pictures or videotape the dance performances." (Doc. 1 at 6). Defendants eventually distributed and showed the videotapes "to others outside of law enforcement, and outside of the legal process." (Doc. 1 at 6). "A review of the videotapes demonstrates that the dances were strictly for fun and entertainment not to sexually gratify or arouse. In fact, the videotapes of the parties demonstrate that the officers are drinking plenty of beer, laughing, joking...." (Doc. 1 at 7).

"Defendants knew that Plaintiff was not engaged in prostitution. In fact, some of the

officers requested that the dancers perform oral sex, and were told by the dancers, they do not engage in that type of activity. The Defendants charged her with crimes anyway." (Doc. 1 at 7).

### C.      The Criminal Actions Against Plaintiff And Reisner

On May 22, 1997, Plaintiff was arrested and charged with promoting prostitution, a fourth degree felony under Ohio law. A grand jury indictment followed charging Plaintiff with managing or controlling "the activities of Gina Reisner, a prostitute, engaging in sexual activity for hire on the three different dates of August, October and December of 1996." (Doc. 1 at 15 (internal quotes omitted)). Around this same time, Reisner was charged with prostitution concerning activities that allegedly occurred during the fake bachelor parties in August, October, and December 1996.

A trial court found Reisner not guilty of prostitution. During her trial the prosecution utilized "the same videotapes that were involved in Plaintiff's case and ... the same police officers involved in Plaintiff's case." (Doc. 1 at 15).

"Even though Gina Reisner was found not to be a prostitute on the dates alleged, the Defendants continued with their prosecution of Plaintiff, alleging that she had promoted prostitution, even when ... Gina Reisner ... was found not to be engaged in the act of prostitution." (Doc. 1 at 15). In December 1997 the trial court found Plaintiff guilty on three counts of promoting prostitution. (Doc. 1 at 15).

In September 1998 the Ohio Court of Appeals reversed all three of Plaintiff's convictions after concluding that "the evidence was insufficient as a matter of law to convict

5

Kelly of promoting prostitution." *State v. Kelly*, App. No. C-971080, 1998 WL 654418 (Ohio Ct. App. Sept. 25, 1998)(*per curiam*). The Ohio Supreme Court dismissed the State of Ohio's appeal, *State v. Kelly*, 84 Ohio St.3d 1448 (1998), and predictably the present case ensued.

---

## IV.    A PRELIMINARY ISSUE

### A.    The Parties' Contentions

The first point of divergence in this case concerns the standards applicable to a Motion to Dismiss based on qualified immunity.

The Cincinnati police officers argue that under *Veney v. Hogan*, 70 F.3d 917 (6th Cir. 1995) "a heightened standard of pleading applies when a plaintiff bringing a ... § 1983 action against individual government officials is faced with a motion to dismiss on qualified immunity grounds." (Doc. 22 , Memo. at 1).[1]

Plaintiff contends, "A Complaint need not set down in detail all the particularities of a Plaintiff's claims....  Rule 8(a)(2) simply requires 'a short and plain statement of the claim showing that the pleader is entitled to relief....'  All a Complaint need do is afford the Defendant 'fair notice of what the Plaintiff's claim is and the grounds upon which it rests.'" (doc. 25 at 3 (citations omitted)).

The Court has previously reviewed Plaintiff's Complaint under the notice standards[2]

---

[1]  The Blue Ash police officers apply *Veney* in a similar way without describing the pleading standard as "heightened." (Doc. 27 at 3).

[2]  *See supra*, § II.

6

referred to by Defendants in their first Motions to Dismiss and determined that Plaintiff's

Complaint satisfied those pleading standards. (Doc. 21). Defendants, however, failed in their

first Motions To Dismiss to rely on *Veney* or to identify the heightened-pleading standard

applicable in this Circuit when a defendant seeks the protection of qualified immunity.

Because *Veney* significantly alters the pleading standards applicable in this situation, the Court

finds its necessary to revisit Plaintiff's Complaint under these standards. First, however, a

careful review of the applicable pleading standards is needed due to the parties' disagreement

over what standards apply.

**B.    Pleading Standards And Qualified Immunity**

**1.**
**Pleading Standards**

Because the Defendant police officers have asserted qualified immunity in their Motions

to Dismiss, Plaintiff's Complaint must contain factual allegations regarding the circumstances,

occurrences, and events in support of her constitutional claims. *Veney*, 70 F.3d at 922. This

does not mean, as Plaintiff correctly suggests, that her Complaint must state all the

particularities underlying each of her claims for this would improperly require her to plead

facts in support of every arcane element of her claim, *see Scheid*, 859 F.2d at 436, or to plead

trivial or less significant facts that may only come to light during discovery. This does,

however, harken back to what has long been required of Complaints in this Circuit –

allegations of the facts that will clearly dominate the case. *See Scheid*, 859 F.2d at 436.

Certainly the dominant facts in § 1983 cases are the particular circumstances,

7

occurrences, and events that caused the claimed constitutional injury. *See Kain v. Nesbitt*, 156

F.3d 669, 672 (6th Cir. 1998). Absent such allegations it is fair to assume that those facts do not

exist. *See Scheid*, 859 F.2d at 436. The following illustration is instructive:

> If a plaintiff in a § 1983 action alleges she was the victim of the use of
> excessive force by the police, this would be adequate initially under notice
> pleading to state a claim. If the defendant responded by making a claim of
> qualified immunity, then, at this point, plaintiff's complaint does not meet the
> heightened pleading requirement ... enunciated in *Veney*.... If plaintiff were then
> to amend by saying that the excessive force consisted of handcuffing her in
> connection with the arrest, the claim would fail because it would be apparent on
> its face that no constitutional violation had been pleaded. In such an instance the
> claim would be subject to dismissal under Rule 12(b)(6).... If, however, the
> plaintiff were to amend and state the excessive force consisted of intentionally
> and maliciously handcuffing so tightly that she lost circulation in both her wrists
> and suffered physical injury, then the qualified immunity analysis would have to
> be made.

*Kain*, 156 F.3d at 672. A failure to impose this pleading burden on § 1983 plaintiffs who face

an assertion of qualified immunity "would eviscerate the substantive rights afforded by the

qualified immunity defense. The promise of an early exit from a lawsuit offered by qualified

immunity is an empty promise if plaintiffs are routinely permitted to survive a motion to

dismiss with mere 'notice' pleading." *Veney*, 70 F.3d at 922.

## 2.
## Plaintiff's Complaint

In the instant case, Plaintiff did not amend her Complaint in response to the individual

Defendants' assertions of qualified immunity. She instead chose to file Memoranda In

Opposition to the Motions to Dismiss relying on the factual allegations set forth in her

Complaint. (Doc. 25 at 6-8; doc. 29 at 5-8). The Court therefore focuses on the allegations

raised in Plaintiff's Complaint and summarized in her Memoranda.

8



In light of the pleading standards reviewed above, the initial inquiry asks whether

Plaintiff's Complaint alleges particular circumstances, occurrences, and events to support any

of her constitutional claims. *See Kain*, 156 F.3d at 672; *Veney*, 70 F.3d at 921-22. Plaintiff

must plead such facts with "enough specificity to create a foundation for recovery against the

defense of qualified immunity." *Bloch*, 156 F.3d at 686. She "must at least chart a factual path

to ... defeat ... the defendant's immunity, free of conclusion." *Schultea v. Wood*, 47 F.3d 1427,

1430 (5th Cir. 1995).

Determining whether Plaintiff has met these heightened-pleading standards and has

stated a constitutional claim are the first issues triggered by the Defendant police officers'

invocation of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, ___, 121 S.Ct. 2151, 2156

(2001); *Cooper v. Parrish*, 203 F.3d 937, 951-52 (6th Cir. 2000). If her Complaint fails to state

a constitutional claim, "there is no necessity for further inquiries concerning qualified

immunity." *Saucier*, 121 S.Ct. at 2156. If her Complaint properly pleads a violation of her

constitutional rights, "the next, sequential step is to ask whether the right was clearly

established." *Saucier*, 121 S.Ct. at 2156.

### 3.
### Clearly Established Law

To successfully show the existence of a clearly established constitutional right, Plaintiff

must do more than show the right existed as a general proposition – as, for example, a claim

that law enforcement officials violated a plaintiff's rights under the Due Process Clause – she

must show a constitutional violation "in a more particularized sense." *Saucier*, 121 S.Ct. at

2156; *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "The contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. This requires an examination of the situation the police officers confronted to determine whether it would have been clear to a reasonable officer at the time that his or her conduct was unlawful. *Saucier*, 121 S.Ct. at 2156. This is often an insurmountable hurdle for plaintiffs, because at its heart, qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine if a constitutional right was clearly established at a particular time, this Court must first examine Supreme Court decisions, then decisions of the United States Court of Appeals for the Sixth Circuit and other courts within this Circuit, and lastly to the decisions of other Circuits. *Hughes v. City of North Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996).

"The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

---

V.    **PLAINTIFF'S CONSTITUTIONAL CLAIMS**

A.    <u>**Plaintiff's Complaint Is Not Time Barred**</u>

In a prior Order regarding the parties' initial Motions To Dismiss, the Court concluded that Plaintiff's Complaint was not barred by the applicable two-year statute of limitations, because her claims accrued when she was arrested rather than when the Defendant police officers videotaped her without a warrant. (Doc. 21 at 5).

10

The Blue Ash police officers again contend that Plaintiff's Complaint is time barred because her claims focus on their alleged pre-arrest conduct (e.g., videotaping her exotic dances), which occurred outside the two-year limitations period.

Upon reconsideration of this contention, the Court concludes that Plaintiff's Complaint is not time barred. This is so not because her claims accrued on the date of her arrest (as previously thought) but because the claims accrued when the Ohio Court of Appeals reversed her criminal convictions. *Ruff v. Runyon*, 258 F.3d 498, 501 (6th Cir. 2001). "[A] cause of action under § 1983 will not accrue 'until the disposition of any pending criminal charges.'" *Ruff*, 258 F.3d at 501 (quoting *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 399 (6th Cir. 1999)). This occurred in Plaintiff's criminal case in September of 1998, when the Ohio Court of Appeals reversed her convictions. *Supra*, § III(C). Because Plaintiff filed her Complaint in April of 1999 – well within two years of the reversal of her convictions – her constitutional claims are timely. *See Ruff*, 258 F.3d at 500-01.

### B.    Plaintiff's First Amendment Claim

### 1.
### Plaintiff's Complaint States
### A Violation Of The First Amendment

Plaintiff claims that Defendants violated her First Amendment right to freely express herself through exotic nude dancing. In support of this claim, Plaintiff argues that she was "arrested, handcuffed, shackled, house ramshackled, put to the expense of an expensive trial and appeal, and more specifically, held in abeyance of exotic dancing because she did not know whether exotic dancing that she had been doing prior to the arrests actually constituted an

11

'illegality' after her arrest." (Doc. 25 at 6).

Nonobscene nude dancing for entertainment is expressive conduct protected at least minimally by the First Amendment. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000)(plurality opinion); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 & 581 (1991)(Souter, J. concurring –  agreeing "with the plurality and the dissent that an interest in freely engaging in the nude dancing at issue here is subject to a degree of First Amendment protection")(1991); *Schad v. Borough of Mr. Ephraim*, 452 U.S. 61, 65-66 (1981). The United States Court of Appeals for the Sixth Circuit recently recognized this general First Amendment principle in *Currence v. City of Cincinnati*, 2002 WL 104778, unpublished op. at *5 (6th Cir. 2002), as have federal courts at all levels, *e.g., Ranch House, Inc. v. Amerson*, 238 F.3d 1273, 1278 n.3 (11th Cir. 2001); *Schultz v. City of Cumberland*, 228 F.3d 831, 839 (7th Cir. 2000); *D.H.L. Associates, Inc. v. O'Gorman*, 199 F.3d 50, 56 (1st Cir. 1999); *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111 n.2 (9th Cir. 1999); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 753 (2nd Cir. 1998); *J.L. Spoons, Inc. v. City of Brunswick*, 49 F.Supp.2d 1032, 1038 (N.D. Ohio 1999); *Threesome Entertainment v. Strittmather*, 4 F.Supp.2d 710, 716-17 (N.D. Ohio 1998).

Plaintiff's Complaint contains sufficiently specific allegations concerning the type of dancing she performed to demonstrate that it constituted expression protected by the First Amendment. Plaintiff describes herself as "a professional exotic dancer." (Doc. 1 at 5). She states that she engaged in "exotic nude dancing." (Doc. 1 at 12). "Plaintiff and her dancers worked hard at perfecting their profession. They rehearsed and practiced exotic simulated

12

dance numbers so they could be the best at what they did." (Doc. 1 at 5). "The events that Plaintiff[] and her dancers performed at were for the strict purpose of adult entertainment and fun. At no time did [Plaintiff] or any of her dancers engage in the act of prostitution. The customers had clean fun at the parties...." (Doc. 1 at 5). "[T]he dances were strictly for fun and entertainment not to sexually gratify or arouse." (Doc. 1 at 7). Plaintiff and her dancers always made sure that the customers "were aware that they [Plaintiff and her dancers] did not engage in sexual intercourse of any kind." (Doc. 1 at 12).

The Cincinnati police officers contend that to the extent Plaintiff's services are not unlawful, her services are unprotected recreational, sexual escort services. The Cincinnati police officers reason, "Just as recreational dancing is not constitutionally protected and personal escort services are not protected, so personal recreational sexually-oriented escort services cast as 'dancing' are also not protected. (Doc. 22 at 4-5). These contentions lack merit for two reasons.

First, the Cincinnati police officers' First Amendment argument was rejected in *Currence* where the Court of Appeals held that the nude dancing performed by a male outcall dancer was expression protected by the First Amendment. 2002 WL 104778 at *4-5.[3]

Second, and more troubling, is the City of Cincinnati attorney's failure to accept Plaintiff's characterization of her activities as involving exotic dance. Instead, he derides Plaintiff's activities as "personal recreational sexually-oriented escort services cast as

---

[3] This does not mean Plaintiff has established that the actual dances she performed at the bachelor parties constituted speech protected by the First Amendment, because whether the actual dances constituted protected speech is a question of fact. *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 409 (6th Cir. 1997).

13

'dancing'…" (doc. 22 at 4-5).  By characterizing Plaintiff's activities as he sees fit, the City of

Cincinnati's attorney has turned the standards applicable to a Motion to Dismiss on their head.

At this stage of the litigation, Plaintiff's allegations must, of course, be accepted as true.

*Supra*, § II.  The City of Cincinnati's attorney was therefore required to assume that Plaintiff is

a professional exotic dancer and that her exotic nude dances were strictly for adult

entertainment purposes and fun.  The Cincinnati police officers cannot succeed in their present

Motion either by ignoring these allegations or by construing Plaintiff's Complaint in their

favor.  *Bloch*, 156 F.3d at 677;  *Morgan*, 829 F.2d at 12.

The Cincinnati police officers next contend, based on *Arcara v. Cloud Books, Inc.*, 478

U.S. 697, 706 (1986), that the First Amendment does not override "the government's need to

control prostitution and other unlawful sexual activities, the transmission of disease, the sale of

obscenity, and the exposure of minors to indecent conduct."  (Doc. 30 at 3-4).  Application of

*Arcara* to the instant case lacks merit at this stage of the litigation.  The Court in *Arcara*

concluded that the First Amendment did not prevent law enforcement officials from closing an

adult bookstore where prostitution occurred in the bookstore.  478 U.S. at 705-07.  This

conclusion was based on the summary-judgment record, which established that prostitution in

fact had occurred in the bookstore.  478 U.S. at 701-02, 705.  In contrast, at this stage of the

instant case, the Cincinnati police officers' attorney again errs by ignoring the allegations of

Plaintiff's Complaint.  It must be presently assumed as true that Plaintiff and her dancers did

not engage in prostitution; that the Defendant police officers knew Plaintiff was not engaged in

prostitution; that her dances were performed strictly for fun and entertainment; that Brittany's

14

dancers declined some of the police officers' requests to engage in oral sex; that Plaintiff was

nonetheless arrested, charged, and prosecuted for promoting prostitution; and that the criminal

actions against both Plaintiff and Reisner were dismissed due to insufficient evidence. (Doc. 1

at 5-8, 12-16). Given these allegations, the factual basis for an application of *Arcara* to the

instant case does not exist under the standards applicable to the Defendant police officers'

Motions to Dismiss.

Accordingly, Plaintiff's Complaint states a violation of her rights under the First

Amendment.

**2.**
**Qualified Immunity Shields The Defendant**
**Police Officers From Plaintiff's First Amendment Claim**

Plaintiff maintains that the following cases clearly established her right under the First

Amendment to engage in exotic nude dancing: *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61

(1981); *Threesome Entertainment v. Strittmather*, 4 F.Supp.2d 710, 716-17 (N.D. Ohio

1998)(and cases cited therein). Plaintiff, therefore, concludes that qualified immunity does not

bar her First Amendment claim against Defendants. Plaintiff's reliance on these cases fails to

demonstrate the existence in 1996 of a clearly established First Amendment right to engage in

exotic nude dancing at private bachelor parties.

The Supreme Court in *Schad* invalidated, on First Amendment grounds, the application

of a municipal zoning ordinance to operators of an adult bookstore. The adult bookstores at

issue offered among its various products "a coin-operated mechanism permitting the customer

to watch a live dancer, usually nude, performing behind a glass panel." 452 U.S. at 62. The

15

ordinance at issue broadly prohibited "live entertainment" from establishments covered by the ordinance. 452 U.S. at 65. At the outset of its opinion, the Supreme Court stated, "By excluding live entertainment..., the ordinance ... prohibits a wide range of expression that has long been held to be within the protections of the First and Fourteenth Amendments." 452 U.S. at 65. This range of protected expression included, to some extent, nude dancing. The Court stated in general terms, "nude dancing is not without its First Amendment protections from official regulation." 452 U.S. at 66.

Contrary to Plaintiff's position, however, *Schad* at most would have informed a reasonable police officer that nude dancing has some, albeit minimal, First Amendment protection. Whether this protection extended to exotic nude dancing at private bachelor parties was not clear after *Schad*. Supreme Court cases after *Schad* reveal the difficulties encountered when determining the extent to which the First Amendment protects nude dancing.

*Barnes v. Glen Theatre*, for example, involved a meritless First Amendment challenge to an Indiana public indecency statute requiring nude dancers to wear pasties and G-strings when they dance. 501 U.S. 560, 563-65 (1991). The procedural history of *Barnes* demonstrates the room for debate that existed at that time surrounding nude dancing and the First Amendment. The District Court in *Barnes* concluded that the nude dancing at issue was not expressive conduct protected by the Constitution. 501 U.S. at 564-65. A panel of the Seventh Circuit Court of Appeals reversed, holding that the nude dancing was expressive conduct protected by the First Amendment. 501 U.S. at 565. A majority of the Seventh Circuit, sitting en banc, held that nonobscene nude dancing performed for entertainment is

16

expression protected by the First Amendment and that application of the Indiana statute impermissibly infringed the First Amendment. 501 U.S. at 565. The Supreme Court – in a plurality opinion – reversed, holding that Indiana's public indecency statute requiring the nude dancers to wear pastries and G-string in the establishments at issue did not violate the First Amendment. 501 U.S. at 565. In light of this procedural history, and given that <u>Barnes</u> was a plurality decision, the extent to which the First Amendment protected nude dancing was not clear in 1991 when the Supreme Court put *Barnes* to rest.

Plaintiff does not cite to any case after *Barnes* yet before the events at issue that clearly established her First Amendment right to engage in exotic nude dancing at private bachelor parties. In addition, the remaining cases cited above, *supra*, § V(B)(1), in support of the conclusion that Plaintiff's Complaint states a First Amendment claim, do not demonstrate the existence of such a clearly established right in 1996, because each of these cases was decided after Defendants' investigation and arrest of Plaintiff.

Accordingly, qualified immunity protects the Defendant police officers from Plaintiff's First Amendment claim.

### C.    Plaintiff's Fourth Amendment Claim

#### 1.
#### The Fourth Amendment
#### And Warrantless Searches

Plaintiff claims that Defendants invaded her privacy by recording and disseminating videotapes of her exotic dance performances without her permission, without a warrant, and contrary to the contractual relationship made prior to her performances. Plaintiff claims that



this violated her right to privacy under the Fourth Amendment. (Doc. 1 at ¶ 60).

The Fourth Amendment to the Constitution grants "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures...." U.S. Const. amend. IV. Warrantless searches, particularly of a suspect's home, are per se unreasonable and violate the Fourth Amendment unless an exception to the warrant requirement applies. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001); *Illinois v. Rodriguez*, 497 U.S. 177, 191-92 (1990); *Katz v. United States*, 389 U.S. 347, 357 (1967).

"The touchstone of Fourth Amendment analysis is whether a person has 'a constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo*, 476 U.S. 207, 211 (1986)(quoting *Katz*, 389 U.S. at 360 (Harlan, J., concurring)). A two-part analysis applies: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *Ciraolo*, 476 U.S. at 211 (explaining *Katz*, *supra*; citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

### 2.
### <u>Plaintiff's Subjective Expectation Of Privacy</u>

The allegations of Plaintiff's Complaint if accepted as true demonstrate that she manifested her own subjective intent and desire to limit the viewing of her exotic nude dancing to only those attending the bachelor parties. Plaintiff alleges in her Complaint:

> At these alleged bachelor parties which occurred on three different dates in 1996, the undercover officers and their friends were told by the dancers not to take any pictures or videotape the dance performances. Ignoring Plaintiff's requests, and without a warrant, Defendants secretly videotaped the private nude dancing with several different cameras. These cameras were equipped with

lenses sufficient enough to identify every 'nook and cranny' of Plaintiff's bare body. Eventually, these tapes were distributed and/or shown to others outside of law enforcement, and outside of the legal process.

(Doc. 1 at 6). These allegations, if taken as true, are sufficiently specific to establish Plaintiff's subjective expectation of privacy to be free from police videotaping of her exotic dance performances at the bachelor parties.

### 3.
### Plaintiff's Expectation Of Privacy Was Reasonable

Plaintiff has also alleged sufficient facts to demonstrate that society would recognize as reasonable her subjective expectation not to be videotaped under these particular circumstances. The test here is not whether Plaintiff chose to conceal an activity she considered private, but instead whether the Defendant police officers' warrantless secret videotaping her under these particular circumstances infringed "upon the personal and societal values protected by the Fourth Amendment." *Ciraolo*, 476 U.S. at 212 (quoting *Oliver v. United States*, 466 U.S. 170, 181-83 (1984)).

Prior to answering this specific question, it must be recognized that in general "video surveillance is a search governed by the Fourth Amendment...." *United States v. Williams*, 124 F.3d 411, 416 (3rd Cir. 1997). Courts recognizing this have employed particularly strong language. "Hidden video surveillance is one of the most intrusive investigative mechanisms available to law enforcement. The sweeping, indiscriminate manner in which video surveillance can intrude upon us, regardless of where we are, dictates that its use be approved only in limited circumstances." *United States v. Nerber*, 222 F.3d 597, 603 (9th Cir.

19

2000)(discussing *United States v. Taketa*, 923 F.2d 665, 677 (9th Cir. 1991)). "'[E]very court considering the issue has noted [that] video surveillance can result in extraordinarily serious intrusions into personal privacy.... If such intrusions are ever permissible, they must be justified by an extraordinary showing of need.'" *Nerber*, 222 F.3d at 603 (quoting *United States v. Koyomejian*, 970 F.2d 536, 551 (9th Cir. 1992)(Kozinsky, J. concurring)). "Hidden video surveillance invokes images of the 'Orwellian state' and is regarded by society as more egregious than other kinds of intrusions." *Nerber*, 222 F.3d at 603 (citing *United States v. Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987); *United States v. Mesa-Rincon*, 911 F.2d 1433, 1442 (10th Cir. 1990); *United States v. Torres*, 751 F.2d 875, 882 (7th Cir. 1984)). "Although domestic silent video surveillance is not regulated by statute, it is of course subject to the Fourth Amendment." *Koyomejian*, 970 F.2d at 542. "We think it ... unarguable that television surveillance is exceedingly intrusive ... and inherently indiscriminate, and that it could be grossly abused to eliminate personal privacy as understood in modern Western nations." *Torres*, 751 F.2d at 882.

Despite this strong language, warrantless videotaping does not always violate the Fourth Amendment. *Torres*, 751 F.2d at 882-83; *see Nerber*, 222 F.3d at 604. Indeed, Plaintiff's Complaint opens the door to this possible outcome due to the unusual circumstances of the Defendant police officers' warrantless videotaping. Inherent in Plaintiff's allegations is her willingness – her consent – to be seen performing her exotic nude dances by those attending the bachelor parties. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection...." *Katz*, 389 U.S. at 351 (citations

20

omitted).  On the other hand, "what he [or she] seeks to preserve as private, even in an area

accessible to the public, may be constitutionally protected."  *Katz*, 389 U.S. at 351 (citations

omitted).  The issue then is whether Plaintiff's consent to be seen but not videotaped

performing her exotic nude dances at private bachelor parties was objectively reasonable.  *See*

*Ciraolo*, 476 U.S. at 211.

The answer to this issue lies in the object of the challenged search – Plaintiff's exotic

nude dancing.  What was at stake was Plaintiff's right to the privacy of her "person," which the

language of the Fourth Amendment specifically protects by granting "[t]he right of the people

to be secure in their persons, houses, papers, and effects...."  U.S. Const. amend. IV (emphasis

added).

Plaintiff consented to be viewed dancing in the nude by the few, not the many.

Although she was not clothed, her nudity was protected from view by the public at large due to

her explicit request not to be videotaped.  Society would recognize this request as reasonable

given her allegation that she performed her exotic nude dances at bachelor parties in private

homes,[4] not public facilities, and due to the highly intrusive nature of videotape surveillance.

The concerns set forth in *United States v. Nerber* are equally pertinent to the instant case: "the

defendant had a reasonable expectation to be free from hidden video surveillance because 'the

video search was directed straight at him, rather than being a search of property he did not

control or own ... and the silent, unblinking lens of the camera was intrusive in a way that no

temporary search of the office could have been.'"  222 F.3d at 603 (citations and brackets

---

[4] *See* doc. 1 at 6.

omitted).  Plaintiff's allegations trigger these concerns.  She alleges that the Defendant police

officers videotaped her "with several different cameras.  These cameras were equipped with

lenses sufficient enough to identify every 'nook and cranny' of Plaintiff's bare body."  (Doc. 1

at 6).  Thus, not only were the lenses silent and unblinking, they allegedly captured intimate

details of Plaintiff's nude body on videotape for all to see.  Society would recognize Plaintiff's

expectation to be free from such a warrantless search.

Relying on *Minnesota v. Carter*, 525 U.S. 83 (1998), the Cincinnati Defendants contend,

"Plaintiff had no right to expect privacy when she sold nude services before a group of

strangers in the home of a third party."  (Doc. 22 at 8).  Defendants read *Carter* as holding that

"a person in someone else's home for a matter of hours for a business transaction cannot claim

the protection of the Fourth Amendment."  (Doc. 22 at 8).  *Carter*, however, is distinguished

from the instant case.  The claimed Fourth Amendment right at issue in *Carter* focused on the

place searched, which was the home of another.  525 U.S. at 90-91.  Consequently, in order to

challenge the search, Carter needed to demonstrate his right of privacy in the home that was

searched.  *Id.*  In contrast, the claimed Fourth Amendment right at issue in the instant case

focused on Plaintiff's physical body – as stated above, her "person" in the specific language of

Fourth Amendment.  This distinction renders *Carter* inapplicable to the instant case.

**4.**
### Plaintiff's Complaint States A Fourth Amendment Claim

For all of the above reasons, Plaintiff has alleged sufficiently particular circumstances,

occurrences, and events to demonstrate that her subjective expectation of privacy in the

challenged warrantless videotaping of her exotic dance performances was reasonable.

22

Consequently, Plaintiff's Complaint states a violation of her rights under the Fourth

Amendment.

**5.**
**Qualified Immunity Shields The Defendant**
**Police Officers From Plaintiff's Fourth Amendment Claim**

Plaintiff contends that qualified immunity does not protect the Defendant police officers

because by 1995 clearly established Fourth Amendment law prohibited them from recording

and disseminating videotapes of her exotic dance performances without her permission,

without a warrant, and contrary to the contractual relationship made prior to her performances.

Plaintiff relies on several cases to demonstrate that this aspect of Fourth Amendment law was

clearly established by 1995: *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65-66 (1973); *Roe v.*

*Wade*, 410 U.S. 113 (1973); *Bloch*, 153 F.3d at 678; *Painter v. Robertson*, 185 F.3d 557 (6th

Cir. 1999). Plaintiff's reliance on these cases is miplaced for the simple reason that none of

them involved a Fourth Amendment challenge to warrantless secret videotaping by police.

In addition, to demonstrate that qualified immunity does not apply, Plaintiff must do

more than rely on cases such as *Paris Adult Theatre* and *Roe v. Wade* to claim a violation of a

general constitutional right to privacy under the Fourteenth Amendment. *See* doc. 29 at 9-11.

She must show that the contours of her claimed constitutional right to be free from warrantless

secret videotaping – which is derived from the Fourth Amendment's warrant requirement –

were sufficiently clear in 1996 to alert a reasonable police officer in Defendants' position that

videotaping Plaintiff's exotic nude dancing without a warrant violated that right. *Anderson*,

483 U.S. at 640. Plaintiff has failed to make this showing because she relies on cases involving

23



circumstances distinct from police videotaping and cases concerning the Fourteenth

Amendment's right to privacy rather than the Fourth Amendment's warrant requirement. *Cf.*

*Ohio Civil Service Employees Assoc. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir.1988)(finding

general Fourth Amendment principles of *Katz* too generalized to show violation of the claimed

clearly established right).

Plaintiff, moreover, does not cite – and research does not reveal – a Supreme Court case

or a case within the Sixth Circuit finding a violation of the Fourth Amendment in

circumstances similar to the instant case. Consequently, the only remaining avenue for

Plaintiff to defeat Defendants' assertion of qualified immunity would be to rely on cases – such

as those cited above, *supra*, § V(C)(3) – from outside the Sixth Circuit.

Precedent from outside the Sixth Circuit may demonstrate the existence of a clearly

established constitutional right. *Virgili v. Gilbert*, 272 F.3d 391, 393 (6th Cir. 2001); *Seiter*, 858

F.2d at 1177. Such cases are relatively rare, however, because the Sixth Circuit Court of

Appeals "places little or no value on the opinions of other circuits in determining whether a

right is clearly established." *Marsh v. Arn*, 937 F.2d 1056, 1069 (6th Cir. 1991).

> In an extraordinary case, it may be possible for the decisions of other
> courts to clearly establish a principle of law. For the decisions of other courts to
> provide such 'clearly established law,' these decisions must both point
> unmistakably to the unconstitutionality of the conduct complained of and be so
> clearly foreshadowed by applicable direct authority as to leave no doubt in the
> mind of a reasonable officer that his conduct, if challenged on constitutional
> grounds, would be found wanting.

*Seiter*, 858 F.2d at 1177; *see Virgili*, 272 F.3d at 393.

At the time of Defendants' warrantless secret videotaping of Plaintiff, cases decided by

24

courts outside the Sixth Circuit, including those reviewed above, *supra*, § V(C)(3), did not point unmistakably to the unconstitutionality of the Defendant police officers' warrantless secret videotaping in similar circumstances. These cases, moreover, were not so clearly foreshadowed by applicable direct authority as to leave no doubt in the minds of a reasonable police officer that warrantless secret videotaping of Plaintiff's exotic nude dancing at private bachelor parties would violate her rights under the Fourth Amendment. This is not to say that the Defendant police officers acted in the most professional and constitutionally responsible manner, for it is difficult to understand why they simply did not obtain a search warrant authorizing the videotaping.[5] Indeed, obtaining a search warrant in a manner consistent with the Fourth Amendment would have likely obviated much of the present controversy. Fortunately for the Defendant police officers, however, in 1996 under then-existing Fourth Amendment law there was room for reasonable police officers in their position to disagree about whether a search warrant was constitutionally demanded. Qualified immunity therefore protects the Defendant police officers from Plaintiff's Fourth Amendment claim. *See Malley*, 475 U.S. at 341 (qualified immunity should be recognized when officers of reasonable competence could disagree on the pertinent principle of law).

---

[5] These comments are based on the assumed truth of Plaintiff's allegations.

25

**D.    Plaintiff's Equal Protection Claims**

**1.**
**Selective Enforcement**
**And Intentional Discrimination**

Plaintiff claims that Defendants violated her rights under the Equal Protection Clause by selectively enforcing Ohio laws against prostitution and promoting prostitution.  Plaintiff alleges that Defendants targeted and charged female exotic dancers, including her, with prostitution (in Plaintiff's case with promoting prostitution) but failed to charge male exotic dancers with prostitution.  Plaintiff further claims that Defendants violated her rights under the Equal Protection Clause by arresting her because she is a woman, by participating in exotic activities with her because she is a woman, and by otherwise acting "to enhance their own sexual entertainment perversions."  (Doc. 1 at ¶ 61).

"'Sometimes the enforcement of an otherwise valid law can be means of violating constitutional rights by invidious discrimination.  To address this problem, courts have developed the doctrine of selective enforcement....'  Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect."  *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)(citation omitted).

To demonstrate that constitutionally impermissive selective enforcement has occurred with regard to criminal laws, a plaintiff must satisfy three elements:

> First, an official must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations.  Second, the official

26

must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenhire*, 205 F.3d at 319 (citation and brackets omitted).

Satisfying the first element is a demanding task because the plaintiff must "make at least a prima facie showing that similarly situated persons outside her category were not prosecuted." *Gardenhire*, 205 F.3d at 319 (citation omitted). "Furthermore, 'there is a strong presumption that state actors have properly discharged their official duties....'" *Gardenhire*, 205 F.3d at 319 (citation omitted).

## 2.
## Plaintiff's Complaint Fails To
## State An Equal Protection Claim

Accepting Plaintiff's allegations as true, she has failed to allege sufficient facts to satisfy the heightened-pleading standard applicable to her claims in the face of the Defendant police officers' assertion of qualified immunity. *Supra*, § III(B); *see Veney*, 70 F.3d at 922. Plaintiff's Complaint pleads her selective enforcement and intentional discrimination claims in classic "notice" form, which sufficed until Defendants sought dismissal based on qualified immunity. For example, Plaintiff's Complaint states:

38.    Defendants intentionally targeted Plaintiff and her dancers because they are female.

39.    There are exotic male dancers who perform in the City of Cincinnati, Hamilton County, State of Ohio.

40.    Defendants did not target any exotic male dancers, or run any sting operations involving exotic male dancers.

41.    Defendants did not charge any exotic male dancers with prostitution.

42.    Defendants alleged that Plaintiff and her dancers were engaged in the act of prostitution, yet over the years not one male person who has attended one of these bachelor parties was ever charged with soliciting a prostitute.

43.    By charging Plaintiff ... and never, not once, charging any of the males who solicited Plaintiff's dancers with solicitation of prostitution, the Defendants have set one standard for females and one for males in violation of Plaintiff's right to equal protection.

(Doc. 1 at 14).

These allegations are insufficient to show a prima facie case of constitutionally impermissible selective prosecution or intentional discrimination. Plaintiff fails to name any male dancer in Cincinnati who performed exotic dancing similar to Plaintiff and who Defendants failed to investigate or charge with prostitution or promoting prostitution. Plaintiff likewise fails to identify any male who attended one of the bachelor parties who allegedly solicited a prostitute and was not arrested. As a result, Plaintiff has improperly plead her claims of selective prosecution and intentional discrimination in a generalized and conclusory manner and has therefore failed to create a foundation for recovery. *See Bloch*, 156 F.3d at 687; *Veney*, 70 F.3d at 922.

In addition, without specific information about the identity of a similarly situated male exotic dancer from which Defendants' discriminatory intent could be reasonably inferred, Plaintiff's Complaint is not only insufficient to state claims of intentional discrimination and selective prosecution, it also fails to overcome the presumption that Defendants properly discharged their duties in connection with their alleged "sting" operation and Plaintiff's arrest. *See Gardenhire*, 205 F.3d at 320.

In sum, although selective prosecution and intentional discrimination by state authorities



can constitute a cognizable cause of action under the Equal Protection Clause, Plaintiff's generalized and conclusory allegations fail to satisfy the heightened-pleading standard applicable at this stage of the litigation. Consequently, "there is no necessity for further inquiries concerning qualified immunity."[6] *Saucier*, 121 S.Ct. at 2156.

Accordingly, the Defendants police officers' Motions To Dismiss Plaintiff's claims of selective enforcement claim and intentional discrimination are well taken.

### E.    Plaintiff's Right-To-Work Claim

Plaintiff claims that Defendants violated her "fundamental right to work and earn a living, secured by the United States Constitution in their discriminatory intent and selective enforcement in targeting, charging and disseminating pictures and videotapes of Plaintiff." (Doc. 1 at 18). This claim fails because Plaintiff's Complaint fails to contain allegations sufficient to support her claims of selective enforcement and intentional discrimination. Plaintiff, moreover, has neither cited any case nor presented any argument in support of this claim. *See* docs. 25, 29.

Accordingly, the Defendants police officers' Motions To Dismiss Plaintiff's right-to-work claim is well taken.

---

[6]  In reaching this conclusion regarding Plaintiff's pleading problems, the Court has neither considered nor accepted the Cincinnati police officers' argument that *Currence v. City of Cincinnati*, C-1-97-725 (S.D. Ohio 2000)(Beckwith, J.) "directly refutes the Plaintiff's false allegation that the City engages in selective enforcement." (Doc. 22 at 7). This contention relies on a factual conclusion in *Currence* regarding the City police officers' continuous monitoring of a male exotic dancer for criminal activities. *Id.* Consideration of this factual conclusion is inappropriate at this stage of the litigation as it is beyond the allegations contained in Plaintiff's Complaint, and because the Cincinnati police officers have not indicated whether this fact was either undisputed in *Currence* or was construed in the City's favor by the Court or was merely dicta. *Armengau v. Cline*, 7 Fed. Appx. 336, 343-44 (6th Cir. 2001).

**F.   Plaintiff's Claims Against The Municipal Defendants**

Plaintiff's Complaint names as Defendants the City of Cincinnati, the City of Blue Ash,

and the Village of Lockland.  Plaintiff's allegations, when accepted as true and construed in her

favor, fail to indicate that these Defendants were responsible for any alleged constitutional

injury she suffered.[7]

"It is firmly established that a municipality ... cannot be held liable under § 1983 for an

injury inflicted solely by its employees or agents.... For liability to attach, there must be

execution of a government's policy or custom which results in a constitutional tort." *Gregory*

*v. Shelby County Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)(citation omitted).  Plaintiff's

allegations focus on acts taken by the individual Defendant police officers without any

allegation from which it could be reasonably inferred that these individual Defendants acted

pursuant to a municipal policy or custom, or even that such a policy or custom existed.

Without such allegations – which would dominate Plaintiff's claims against the municipal

Defendants – "it seems fair to assume that those facts do not exist...." *Scheid*, 859 F.2d at 436.

Consequently, the Complaint contains no basis for concluding that the municipal Defendants

could be liable as the "moving force" behind her alleged constitutional injuries.  *See Board of*

*County Comm., Bryant County v. Brown*, 520 U.S. 397, 403-04 (1997).

Accordingly, Plaintiff's Complaint fails to state a claim against the City of Cincinnati,

the City of Blue Ash, and the Village of Lockland.

---

[7]   In analyzing the sufficiency of Plaintiff's Complaint against the municipal Defendants, the heightened-pleading standard applied earlier in this opinion is inapplicable to § 1983 claims against municipalities. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168 (1993).  The Court will therefore apply the notice pleading standards set for above, *supra*, § II, to Plaintiff's claims against the municipal defendants.

**G.    Defendants Wiley And Buffey**

Plaintiff alleges that Defendants Wiley and Buffey acted as confidential informants at

"all times relevant to this action ... acted under color of [sic] law." (Doc. 1 at 11-12).  Because

Plaintiff bases these claims on the same allegations she has raised against the Defendant police

officers, her claims against Defendants Wiley and Buffey suffer from the same deficiencies and

fail for the reasons stated above.  *Supra*, § V(B)-(E).

---

### IT IS THEREFORE ORDERED THAT:

1.    City Of Cincinnati Police Officers' Motion To Dismiss (doc. 22) Is Granted;

2.    Blue Ash Police Officers' Motion To Dismiss (doc. 27) Is Granted; and

3.    Plaintiff's Complaint Is Dismissed With Prejudice.

Jack Sherman, Jr.
United States Magistrate Judge

31