UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANIE SAMUEL, Adm. of Estate of Cathy Lynn Tubbs, et al., | : | Case No. C-1-02-378 |
| | : | |
| PLAINTIFFS | : | Judge Dlott |
| | : | |
| -vs- | : | **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| STEVEN M. HOOG, et al. | : | |
| DEFENDANTS. | : | |

Now come Defendants Cincinnati Firefighters Steven M. Hoog and Michael A. Lotz, by and through counsel, and hereby move this Court for an Order dismissing Plaintiff's Amended Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted and on the grounds of qualified immunity from suit. A Memorandum in Support is attached hereto.

           Respectfully submitted,

           JULIA L. McNEIL (0043535)
           City Solicitor


           /s/: *Geri Hernandez Geiler*
           **GERI HERNANDEZ GEILER** (0042081)
           Sr. Assistant City Solicitor
           Room 214 City Hall
           801 Plum Street
           Cincinnati, Ohio  45202
           Ph. (513) 352-3334
           geri.geiler@cincinnati-oh.gov

           Trial Attorney for Defendants Firefighters Hoog and Lotz

**MEMORANDUM IN SUPPORT**

A.  **INTRODUCTION / PROCEDURUAL POSTURE**

This suit was originally filed by Plaintiff, Janie Samuel, as the administrator of the estate of her deceased daughter, Cathy Lynn Tubbs and Candace Tubbs, the sister of the deceased, on May 28, 2002.  (Doc. #1).  Candace Tubbs was dismissed as a Plaintiff on April 17, 2003 (Doc. #12).  Defendants filed a Motion to Dismiss the original complaint on December 16, 2002 (Doc. #10).  The Court extended the time for Plaintiff to respond until one month after mediation efforts had been exhausted. (Doc. #11).  Rather than opposing Defendants' Motion to Dismiss, Plaintiff finally filed an amended complaint on May 28, 2004.  (Doc. # 15).

B.  **FACTUAL ALLEGATIONS**

Plaintiff alleges that the Defendants, Firefighters Hoog and Lotz (collectively referred to herein as "Firefighters") violated her daughter's right to equal protection under the law (Count I) and intentionally inflicted emotional distress upon her daughter (Count II) and upon herself (Count III).  Plaintiff does not include the City of Cincinnati as a defendant in this case but seeks punitive damages against the Firefighters. (Count IV).  Plaintiffs do not attempt to hold the Firefighters accountable for the death of Ms. Tubbs.  Nor do they claim that the Firefighters' actions hastened her death or proximately caused any medical injuries or consequences whatsoever.  The family's grief is being expressed in pointless vengeance against these career Firefighters with heretofore unblemished records and they move for dismissal of the action once again.

Plaintiff's allegations stem from the Firefighters' attendance to her daughter's emergency medical call on May 29, 2000.  On that day, Plaintiff claims that Ms. Tubbs

2

requested medical assistance and had "experienced shortness of breath, extreme weakness and other related medical problems." (First Amended Complaint, ¶¶ 40, 13). She does not state what symptoms were actually communicated to the Firefighters, however does admit that Ms. Tubbs made the request for assistance and was "awake and alert" during the events. (Id. at ¶¶ 40, 41). Public records show that the Firefighters arrived on the scene at 1452 hours (2:52 pm) and left the scene, transporting Ms. Tubbs at 1509 (3:09 pm).[1] They were on the scene a total of 17 minutes. Plaintiff states that FF Hoog, shortly after arriving, without verbally consulting FF/Paramedic Lotz, declared that her daughter's condition was not an emergency and that they would not transport her to the hospital. (First Amended Complaint, ¶34). FF/Paramedic Lotz did not verbalize any disagreement with FF Hoog's assessment of the situation. (Id.).

Plaintiff accuses FF/Paramedics Lotz of failing to follow Cincinnati Fire Department, and medical guidelines, but still omits any allegations of the alleged failure to have proximately caused any medical consequences whatsoever. (Id.). Plaintiff describes a discussion between the Firefighters and Plaintiff's family about whether emergency medical transportation was necessary in this particular situation. Plaintiff

---

[1] The Sixth Circuit Court of Appeals has held that "[a]s matters of public record, the Court may take these documents into account on a motion to dismiss without converting it to one for summary judgment by considering matters outside the pleadings." *Simpson v. Columbus S. Power Co.*, 2003 U.S. Dist. LEXIS 13400, *1,1 *3 (attached) (quoting *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001))(emphasis added); *Kostrzewa v. City of* Troy, 247 F.3d 633, 644 (6th Cir. 2001);see also 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990); *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997)(holding that "[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."); *Yanacos v. Lake County*, 953 F. Supp. 187, 191 (N.D. Ohio 1996). Public records are "records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units…." Ohio Rev. Code Ann. §149.43(A)(1) (Anderson 2003).

and her family did not want to transport Ms. Tubbs in their own car because of the large oxygen tank Ms. Tubbs required and because they thought she should have medical services and communication to the hospital available. (Id.). Plaintiff admits that her other daughter, Candace Tubbs, who has been dismissed as a plaintiff from this suit, challenged FF Hoog during the discussion, apparently calling him a racist, to which FF Hoog allegedly responded, "Yea, I am a racist." (Id.). Plaintiff admits that the Firefighters did transport her daughter to the hospital of her choice, yet she still complains that FF Hoog did not pronounce the transportation to be an "emergency." (Id.). Plaintiff does not allege that the failure to label the transportation as an "emergency" caused any medical consequences whatsoever.

**C.    LEGAL ARGUMENT**

    **1.    PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A FEDERAL EQUAL PROTECTION CLAIM AGAINST THE DEFENDANT FIREFIGHTERS UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiff brings this suit under 42 U.S.C. 1983. (Amended Complaint, ¶ 1). To establish a claim under 42 U.S.C. 1983, a plaintiff must prove: (1) that the defendant acted under color of state law, and (2) that the offending conduct deprived plaintiff of rights secured by federal law. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981). Plaintiff claims that the Firefighters violated Ms. Tubbs' constitutional right to equal protection of the law when they "created an atmosphere of confrontation" by discussing whether Ms. Tubbs needed to be transported by emergency vehicle to the hospital. (Amended Complaint, ¶33).

4

Plaintiff's Amended Complaint fails to state any federal equal protection claim upon which relief may be granted.  In Goad v. Mitchell 297 F.3d 497 (6th Cir. 2002) the Sixth Circuit urged trial courts to require plaintiffs to produce specific, nonconclusory factual allegations of a defendant's improper motive before discovery, in civil rights cases where the plaintiff must prove wrongful motive and qualified immunity is a defense.  Id. at 504.

The Sixth Circuit court in Goad supported its position by explaining:

> The Supreme Court in *Crawford-El* did, however, reiterate that in cases in which qualified immunity is raised as an affirmative defense, "'firm application of the Federal Rules of Civil Procedure is fully warranted' and may lead to the prompt disposition of insubstantial claims." Crawford-El, 523 U.S. at 597 (quoting Harlow v. Fitzgerald 457 U.S. 800, 819-20, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). **The Court further stated that "when a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.** It must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings." 523 U.S. at 597-98.  In such cases, the Court explained that district courts "may order a reply to the defendant's or a third party's answer under Federal Rule of Civil Procedure 7(a), or grant the defendant's motion for a more definite statement under Rule 12(e). **Thus, the court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment**." 523 U.S. at 598 (quoting Siegert v. Gilley, 500 U.S. 226, 236, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991) (Kennedy, J., concurring)). The Court went on to say that the above options exist even if the defendant does not raise the affirmative defense of qualified immunity, and that "if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." Id.

Id. at 503-504 (Emphasis added).  Plaintiff's claim for intentional discrimination on behalf of Ms. Tubbs requires proof of wrongful motive on the part of the Defendant

Firefighters. Therefore, according to the Sixth Circuit's analysis in <u>Goad</u>, Plaintiff should be required to put forward specific, nonconclusory factual allegations that establish an improper motive in order to survive a motion to dismiss. Plaintiff fails to do so. No case law exists which hold a FF/paramedic liable for questioning the urgency of a patient's medical condition and then ultimately transporting the patient to the hospital of her choice. Such allegations fail to establish any improper motive. And moreover, no cognizable injury has even been pled.

At best, Plaintiff once again pleads intentional discrimination in classic "notice" form, which does not suffice to overcome a motion to dismiss based on qualified immunity. For example, Plaintiff's First Amended Complaint states:

> 18.    Fire Fighter Hoog is a Caucasian man.
>
> 19.    Fire Fighter Lotz is a Caucasian man.
>
> 20.    Cathy Lynn Tubbs was an African-American woman.
>
> 21.    Janie Samuel is an African-American woman.

Without identifying any White citizens in any manner other than by alleged ailments, Plaintiff claims that the Firefighters have, in the past,

> . . . transported – without opposition, argument and confrontation – whites with similar or less serious conditions than Cathy Lynn Tubbs' condition . . . under the 'You call, we haul' policy[.]

and have

> . . . encountered white residents temporarily living at the home of Janie Samuels, at the exact same location at issue in this case, 1316 Burdett Avenue, and transported – without opposition, argument and confrontation – these whites with similar or less serious conditions than Cathy Lynn Tubbs' condition . . . under the 'You call, we haul' policy.

(Id. at ¶¶ 27, 29). Plaintiff claims that the Firefighters treated her daughter differently than they have treated Whites in the past, based on her race. (Id. at ¶ 36). These conclusory assertions are insufficient to prove a prima facie case of intentional discrimination. The Court need not accept legal conclusions or unwarranted factual inferences as true.

A defendant does not violate the equal protection clause unless he purposefully discriminates against a plaintiff because of his or her class. Hunter v. Underwood, 471 U.S. 222, 229, 105 S.Ct. 1916 (1985); Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 583, 104 S.Ct. 2576 (1984); Rodgers v. Lodge, 458 U.S. 613, 618, 102 S.Ct. 3272 (1982); Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555 (1977); Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040 (1977). First, in the case at bar there is not a single allegation regarding any purposeful discrimination, intentional act or intentional deprivation of any right. Plaintiff's Amended Complaint basically alleges that the Firefighters are White; Plaintiff and her daughter are Black; that the Firefighters discussed the urgency of Ms. Tubbs' medical condition and therefore, Defendants discriminated against Ms. Tubbs based on race. Plaintiff's civil rights claim never alleges that the Firefighters' hesitation to transport Ms. Tubbs was erroneous from a medical standpoint, based on her condition at the time of the event. Even if Defendants' actions had been erroneous, equal protection claims cannot be based on a decision which is simple error, neglect or mistake. See Ciechon v. City Chicago, 686 F.2d 511, 523 (7th Cir. 1982).

The Equal Protection Clause requires public institutions to "treat similarly situated individuals in a similar manner." Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir.

1988).  It is the plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner.  See Gillard v. Norris, 857 F.2d 1095, 1101 (6th Cir. 1988).  In King v. City of Eastpointe, 86 Fed. Appx. 790, 802 (6th Cir. 2003), the Sixth Circuit instructed that a plaintiff can prove discriminatory effect by showing that the police treated similarly situated individuals of another race differently through statistical evidence or by identifying a person of another race who police treated differently. Id., citing United States v. Armstrong, 517 U.S. 456, 465, 116 S. Ct. 1480 (1996); Chavez v. Ill. State Police, 251 F.3d 612, 638 (7th Cir. 2001).

The Sixth Circuit has routinely dismissed equal protection claims where plaintiffs fail to identify any similarly situated individuals who were treated differently.  In Buchanan v. City of Bolivar, 99 F.3d 1352 (6th Cir. 1996) the plaintiff failed to identify any White student who was treated differently from her son who was arrested on school property for throwing rocks which hit the school principal's car.  Instead, the plaintiff relied on the defendants to introduce such evidence.  As a result, the plaintiff was found to have failed in satisfying her burden of proving that a similarly situated White student, that is, a White student at that same school who was in the same disciplinary circumstances as the plaintiff's son, was treated differently, and summary judgment was deemed appropriate.  Id. at 1360.  In Nicholson v. City of Westlake, 76 Fed. Appx. 626, 629 (6th Cir. 2003) the court found that the plaintiff's failure to identify any similarly situated White motorist, that is, one who was arrested for DUI and subsequently sued the city, who was treated differently than himself, was sufficient grounds to dismiss his case alleging violation of his equal protection rights.  In Ross v. Duggan, 2004 U.S.

8

App. LEXIS 10106, *33-34 (attached), the court recently held that the plaintiff's failure to "identify, either in the Amended Complaint or in the plaintiffs' opposition to the summary judgment motion *any* specific taxicab operator[,]" that is, one who had habitually, and knowingly leased a significant number of its cabs to "pimps and whoremongers over the implicated time period," who received comparatively favorable treatment, invalidating his claim for equal protection.  Id., citing Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073(2000); Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326 (1992).  The Sixth Circuit explained that if the plaintiff had such information, he should have included it in the amended complaint and that "[i]f he did *not possess* such information (as is evidently the case), any discovery on the subject would have constituted an unjustified fishing expedition."  Ross at 34.

     Plaintiff's Amended Complaint fails in its attempt to allege disparate treatment based on race.  Plaintiff fails to name or identify any similarly situated White person who was treated differently by these Firefighters.  That is, Plaintiff fails to name any White person who called for emergency medical services, who was conscious, alert and speaking upon their arrival, and who the Firefighters treated any differently by not expressing their opinion as to their condition or not questioning the urgency of their situation.  As the Sixth Circuit stated in Ross, if Plaintiff herein possessed such information, she should have referenced it in the First Amended Complaint.  Since she does not possess such information, as is evidently the case, any discovery on the subject would constitute an "unjustified fishing expedition."  Id.  This failure to identify a similarly situated individual, from which the Firefighters' discriminatory intent could be reasonably inferred, caused the Sixth Circuit in the cases noted above, to rule that the

9

complaints were insufficient to state a claim of intentional discrimination and also failed to overcome the presumption that the defendants therein properly discharged their duties. Herein, Plaintiff's failure to do likewise causes the First Amended Complaint to be insufficient to state a claim of purposeful discrimination.

Even if Plaintiffs' Complaint alleged disparate impact, which it does not, proof of disparate impact is not determinative unless the pattern is clear or "stark" and unexplainable on grounds other than race. Arlington Heights at 242. Again, Plaintiffs' Complaint alleges no pattern whatsoever, let alone, a "stark" one, and the circumstances of this one particular incident as alleged by Plaintiffs, even when assumed to be true, are not so dramatic that a suspect motive can even be inferred. The Court need not accept legal conclusions or unwarranted factual inferences as true. Morgan v. Church's Fried Chicken, 829 F.2d 10 (6th Cir. 1987). Therefore, Plaintiff's First Amended Complaint fails to state a federal claim for equal protection upon which relief may be granted.

**2.    THE FIREFIGHTERS ARE ENTITLED TO QUALIFIED IMMUNITY.**

The Defendant Firefighters are entitled to qualified immunity on the equal protection claim because they are government officials who were performing discretionary functions and generally are shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of

litigation and trial. Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151 (2001). Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal **before the commencement of discovery**. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Harlow emphasizes that even such pretrial matters as discovery are to be avoided if possible, as "[inquiries] of this kind can be peculiarly disruptive of effective government." Id. at 817. Harlow recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability; and that entitlement is effectively lost if a case is erroneously permitted to proceed to discovery or worse, trial.

When a government official asserts the defense of qualified immunity, courts must engage in a two-part sequential determination. The first step is to determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If no constitutional right would have been violated based on the facts alleged, the court need not inquire further. Id. at 202. However, if the facts do allege a violation of a constitutional right, then the second step is to determine whether the right was clearly established at the time in question. Id. 201.

This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. A constitutional right is "clearly established," if "the law is clear in regard to the official's particular actions in the particular situation." Long v. Norris, 929 F.2d 1111, 1114 (6th Cir. 1991) cert. den'd, 502

U.S. 863 (1991), See also, <u>Adams v. Metiva</u>, 31 F.3d 375, 387 (6th Cir. 1996) (holding that "for a plaintiff to make a successful 1983 claim, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'" (quoting <u>Russo v. Cty of Cincinnati</u>, 953 F.2d 1036, 1042 (6th Cir. 1992)).

Taken in the light most favorable to Plaintiff, the alleged facts as stated in the First Amended Complaint do not show that the Firefighters' conduct violated any constitutional right and the Court's inquiry should stop there at the first prong. Again, Goad, supra, requires that when a plaintiff files suit against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. Goad, citing Crawford-El 523 U.S. at 598. The Court must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings. Id. Goad ruled that trial courts should insist that plaintiffs 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a motion to dismiss or motion for summary judgment. Id. at 504. As demonstrated in the equal protection segment of this Motion, Plaintiff pleads in nothing more than "notice" form, omitting any allegation of purposeful discrimination or intentional deprivation of any right and omitting any allegation of disparate treatment. No constitutional violation is stated where a FF/paramedic questions the urgency of a patient's medical condition and then quickly transports the patient to the hospital of their choice, with no resulting medical consequences even alleged. In failing to meet this first prong of the qualified immunity analysis, Plaintiff's claim should not be further analyzed as to the second prong. The Defendant Firefighters are entitled to judgment based on qualified immunity.

Even if the second prong of the qualified immunity test is considered in this case, there is no clearly established case law which holds that it is a constitutional violation for a FF/paramedic to question the urgency of a patient's medical condition or to discuss it

with the family in front of the patient or to take so much as 17 minutes to attend to and then transport the patient to the hospital of her choosing. Without any clearly established law showing that such a right was clearly established in May of 2000, Plaintiff cannot defeat the qualified immunity which the Firefighters are entitled to as public servants.

> **3. IN THE ABSENCE OF FEDERAL CLAIMS, THE COURT SHOULD NOT ASSERT PENDANT JURISDICTION OVER COMMON LAW TORT CLAIMS.**

This Court should decline jurisdiction over Plaintiff's pendant state law claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966); Soliday v. Miami County, 55 F.3d 1158, 1164-65 (6th Cir. 1995). Even if this Court had jurisdiction, Plaintiff's Amended Complaint fails to state any state claim for intentional infliction of emotional distress upon which relief may be granted.

> **a. Plaintiff's Amended Complaint Fails to State a Claim for Intentional Infliction of Emotional Distress.**

A claim for intentional infliction of emotional distress requires proof of the following elements: (1) the actor either intended to cause emotional distress or knew that actions taken would result in serious emotional distress to plaintiff; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff was serious. Kovacs v. Bauer (1996), 118 Ohio App.3d 591, 693 N.E. 2d 1091; Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America (1983), 6 Ohio St.3d 369, 453 N.E.2d 666.

Plaintiff's Amended Complaint fails to make specific, nonconclusory allegations which meet the elements of intentional infliction of emotional distress. At best, Plaintiff has alleged that the Firefighters discussed whether to transport Ms. Tubbs by ambulance, based on their opinion that Ms. Tubbs' condition was not an emergency situation, and that such opinion was stated in the presence of Ms. Tubbs. There are no allegations that Ms. Tubbs was a child and Plaintiff admits that she was "awake and alert" as the Firefighters were attending to her medical needs. (Amended Complaint, ¶ 41). There is nothing about a serious medical condition which would dictate that the Firefighters discuss Ms. Tubbs' condition outside of her presence or that would dictate that they express an opinion as to her condition outside of her presence. Clearly, it was the Firefighters' duty to discuss Ms. Tubbs' condition with her directly or with her family in her presence, rather than out of her presence. Moreover, Plaintiff's Amended Complaint establishes that at most, the Firefighters merely questioned whether Ms. Tubbs' condition was an emergency situation, as the Amended Complaint states that the Firefighters did transport her to the hospital of her choice. (Amended Complaint, ¶34). The run report reflects that it was no more than 17 minutes from the time the Firefighters arrived on the scene to the time they transported Ms. Tubbs by ambulance to the hospital of her choice. In fact, Plaintiff admits that it was the Firefighters who suggested that she be taken to the closest hospital rather than one across town. In this vein, Plaintiff wholly fails to meet the elements necessary to establish an action for intentional infliction of emotional distress.

**2. Defendants are Entitled to Immunity Pursuant to O.R.C. 2744.**

Even if the Court finds that the Plaintiff's Amended Complaint adequately pleads a claim for intentional infliction of emotional distress, the Firefighters would still be entitled to immunity pursuant to O.R.C. 2744.03. The question of whether a governmental employee is entitled to statutory immunity is a question of law for a court's determination. Conley v. Shearer (1992), 64 Ohio St.3d 284, 29, 595 N.E.2d 862; Feitshans v. Darke County (1996), 11 Ohio App.3d 14, 19, 463 N.E.2d 52. R.C. 2744.03(A)(6)(b) provides immunity to government employees unless the employee's acts were with malicious purpose, in bad faith or in a wanton or reckless manner.

The Defendant Firefighters herein are entitled to immunity from state tort claims unless their acts were committed with malicious purpose, in bad faith or in a wanton or reckless manner. Plaintiffs allege the various standards randomly in the three counts for intentional infliction of emotional distress in an attempt to avoid O.R.C. 2744's immunity. However, just as plaintiffs are required to adhere to the Goad standard of pleading in this particular type of civil rights case to defeat qualified immunity under federal law, so too should plaintiffs attempting to defeat statutory immunity under state law. Plaintiff's bare bones, conclusory allegations of willful, reckless, malicious and wanton conduct do not suffice to adequately defeat the immunity conferred to Defendants by O.R.C. 2744.

Even if Plaintiffs' Amended Complaint met the heightened pleading standard, the Firefighters' alleged conduct does not constitute malice as defined by Ohio law. The Ohio Supreme Court has held that "malicious" means indulging or exercising malice, harboring ill will or enmity. Teramano v. Teramano (1966), 6 Ohio St.2d 117, 118, 216 N.E.2d 375, 377. "Malice" is the willful and intentional design to do injury or the

16

intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. Jackson v. Butler Cty. Bd. of Commrs. (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363, citing Bush v. Kelley's, Inc. (1969), 18 Ohio St.2d 89, 92, 247 N.E.2d 745. Assuming, arguendo, the truth of Plaintiff's allegations, the Firefighters' discussion with Ms. Tubbs about her condition or a momentary reluctance to transport her based on their opinion that the situation was not an emergency, coupled with the fact that they did transport her to the hospital of her choice no more than 17 minutes after their initial arrival, cannot be viewed as malicious conduct within the meaning as set forth by Ohio law. Defendants are not accused of hastening Ms. Tubbs' eventual death. There is no case law in this state declaring such conduct to be malicious.

    The Ohio Supreme Court has defined "reckless" to mean conduct committed knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. Cater v. City of Cleveland (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, citing Marchetti v. Kalish (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, 700 (additional citations omitted). Again, assuming, arguendo, the truth of Plaintiff's allegations, the Firefighters' discussion with Ms. Tubbs about her condition or a momentary reluctance to transport her based on their opinion that the situation was not an emergency, coupled with the fact that they did transport her to the hospital of her choice no more than 17 minutes after their initial arrival, cannot be viewed as reckless conduct within the meaning as set forth by Ohio law. Moreover, Plaintiff does not allege

any physical harm being proximately caused by the Firefighters' actions.  There is no case law in this state declaring such conduct to be reckless.

"Wanton" misconduct was defined as conduct committed where one "'fails to exercise any care whatsoever toward those to whom he owes a duty of care, and this failure occurs under circumstances in which there is a great probability that harm will result.'"  <u>McKinney v. Hartz & Restle Realtors, Inc.</u> 31 Ohio St. 3d 244, 246, 510 N.E.2d at 388-389, quoting <u>Hawkins v. Ivy</u> (1977), 50 Ohio St. 2d 114, 118-119, 363 N.E.2d 367, syllabus. Once more, assuming, arguendo, the truth of Plaintiff's allegations, the Firefighters' discussion with Ms. Tubbs about her condition or a momentary reluctance to transport her based on their opinion that the situation was not an emergency, coupled with the fact that they did transport her to the hospital of her choice no more than 17 minutes after their initial arrival and that no medical consequences occurred as a result of the Firefighters' actions, cannot be viewed as wanton conduct within the meaning as set forth by Ohio law.  There is no case law in this state declaring such conduct to be wanton.  Since Plaintiff cannot establish that the O.R.C. 2744 immunity does not apply in regards to the claim of Ms. Tubbs, she surely cannot establish such claims as a bystander.  Therefore, the Defendant Firefighters are entitled to immunity pursuant to O.R.C. 2744.

WHEREFORE, Defendants pray for an Order dismissing Plaintiff's Amended Complaint with prejudice and all other relief to which they may be entitled.

Respectfully submitted,

      JULIA L. McNEIL (0043535)
      City Solicitor


      <u>/s/:  Geri Hernandez Geiler</u>
      **GERI HERNANDEZ GEILER** (0042081)
      Sr. Assistant City Solicitor
      Room 214 City Hall
      801 Plum Street
      Cincinnati, Ohio  45202
      Ph. (513) 352-3334
      geri.geiler@cincinnati-oh.gov

      Trial Attorney for Defendants
      Firefighters Hoog and Lotz

## CERTIFICATE OF SERVICE
## BY ELECTRONIC FILING

     I hereby certify that on July 29, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following: Barbara Bison Jacobson. I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:   n/a.

<u>/s/: Geri Hernandez Geiler</u>
**GERI HERNANDEZ GEILER (0042081)**
Atty. Reg. No. 0042081
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio  45202
Ph.: (513) 352-3338
Fax: (513) 352-1515
Email: geri.geiler@cincinnati-oh.gov

s:\Geiler\SamuelMTDFirstAmendedComplaint