2 of 91 DOCUMENTS

John Ross, et al., Plaintiffs-Appellants, v. Michael Duggan, et al., Defendants-Appellees.

No. 02-1987

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2004 U.S. App. LEXIS 10106

May 19, 2004, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN. 01-72441. Zatkoff. 07-01-02.

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For John Ross, Judy Lewis, Vincent Green, Don Beekman, Clyed Coleman, John Clark, Lorraince Cab Co., Atul Grover, Ganell Smith Mack, Patrick O'Hare, Willie Green, Plaintiffs - Appellants: Hugh M. Davis, Jr., Cynthia Heenan, Constitutional Litigation Associates, Detroit, MI.

For Michael Duggan, Defendant - Appellee: Joseph A. Puleo, Asst. Pros. Attorney, Office of the Prosecuting Attorney, Detroit, MI.

For Michael Duggan, City of Detroit, Benny Napolean, John Doe, Defendants - Appellees: Linda D. Fegins, City of Detroit, Law Department, Detroit, MI.

**JUDGES:** BEFORE: KRUPANSKY and GILMAN, Circuit Judges, and RUSSELL, District Judge. *

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation. [*2]

**OPINIONBY:** KRUPANSKY

**OPINION:**

KRUPANSKY, Circuit Judge. The plaintiffs-appellants John Ross, Judy Lewis, Vincent Green. Don Beekman, Clyde Coleman, John Clark, Lorraine Cab Co., Atul Grover, Ganell Smith Mack. Patricia O'Hara, and Willie Green (collectively "the plaintiffs") have contested the district court's dismissal, via summary judgment for each defendant, of their nine-count Amended Complaint against defendants-appellees Michael Duggan in his official capacity as Wayne County Prosecutor, the City of Detroit. Benny Napoleon in his official capacity as Detroit Chief of Police. and John Doe police officers in their individual capacities (collectively "the defendants"). The district court had rejected the complainants legal theory undergirding each of their claims, namely that the defendants, in the course of ostensibly enforcing the state vice laws, had unconstitutionally applied Michigan nuisance abatement law against them by impounding, and threatening to effect the civil forfeiture of, their automobiles, absent payment of civil fines and fees. On review, the plaintiffs have contended that the trial court (1) abused its discretion by resolving the defendants summary judgment motion [*3] prior to any discovery period, and (2) legally erred by summarily dismissing each of their nine causes of action as a matter of law without trial.

The instant litigation resulted from a Detroit, Michigan vice-crime law enforcement effort denominated "Operation Push-Off," which involved the "nuisance abatement" impoundments of vehicles, and the subsequent initiations of civil forfeiture proceedings against those vehicles, which were ultimately resolved by either (1) the restoration of a subject vehicle to its owner upon his or her payment of assessed civil fines and fees usually totaling around $ 950.00 in settlement or resolution of the nuisance abatement action; (2) the forfeiture of the owner's automotive title to the state, following the owner's failure to either pay the standard "settlement" fees or other assessed fines and charges, or to successfully oppose "nuisance abatement" forfeiture at a "show-cause" hearing; or (3) the release of the vehicle to its owner, without the imposition of civil penalties or other substantial monetary costs, following the owner's successful opposition at a "show-cause" hearing to the state's legal and/or factual bases for forfeiture.

The gravamen [*4] of the plaintiffs' first amended civil rights complaint was that the defendant municipality and its agents, animated by a desire to enrich the public fisc rather than to enforce the criminal law, had allegedly conspired to deprive citizens, in the absence of any pre-impoundment hearing, of property (either vehicles or cash) and/or liberty (the freedom of the owner to drive his or her car), irrespective of the actual guilt or innocence of the individual suspected of committing solicitation of prostitution or another morals offense (either the automobile's driver or a passenger). in violation of various constitutional provisions; and further had executed official policies and practices in furtherance of that alleged scheme, including a standard practice of dismissing both the *in rem* civil forfeiture / nuisance abatement proceeding against the vehicle *and* the criminal prosecution against the alleged perpetrator of the misdemeanor sex offense upon the payment of the civil fines and fees imposed for release of the impounded vehicle.

In implementing "Operation Push-Off," the Detroit Police Department enlisted undercover plainclothes female police officers posing as prostitutes to [*5] interact with men in motor vehicles within high-crime city districts frequented by streetwalkers and their patrons. Standard departmental operating procedures dictated that, when solicitation of prostitution or a similar lewdness offense by a male culprit inside or near a vehicle which had transported him to the offense location was discovered, that vehicle would be impounded in tandem with the perpetrator's misdemeanor vice arrest. Contemporaneously, the arrestee (plus any other person who accompanied him inside that motor carriage) was furnished with a standard single-sheet printed formal notification of the pertinent vehicular nuisance abatement and civil forfeiture procedures, entitled "Notice of Impoundment of Vehicle Pending Disposition of Criminal Charges/Nuisance Abatement Proceedings."

The introductory paragraph of that standard notice recited, in material part:

> On [day of the week, month, date, year] at approximately [time], the motor vehicle you were driving or in which you were a passenger was seized pursuant to an arrest for a state misdemeanor involving lewdness, assignation, and/or solicitation for prostitution or a comparable city ordinance.
>
> This matter [*6] will also be reviewed by the Wayne County Prosecutor's Office to determine if a nuisance abatement action will be filed in Wayne County Circuit Court, under MCL 600.3801 *et seq.* [the Michigan Nuisance Abatement Statutes], to have your motor vehicle abated as a nuisance based on the allegation that it was used for the purposes of lewdness, assignation, or prostitution.
>
> If the abatement action is filed, a show cause hearing may be scheduled about one week after the case is filed. At the hearing, you will have the opportunity to present your evidence as to why the vehicle should not be kept by the Detroit Police Department.

The written notice also contained an advisory regarding "Claim Procedures." That section of the form stated:

> . You must contact the Wayne County Prosecutor's Office after 48 hours but no longer than 14 days from the date of seizure to be offered an out of court settlement.
>
> . You must wait 48 hours before contacting the Prosecutor's Office to ensure that all paperwork relating to the incident has been received by the Wayne County Prosecutor's Office.
>
> . The Prosecutor's Office will only talk with the owner or his/her attorney.
>
> . [*7] Do not appear without an appointment.

. You must bring the following items
when appearing at the Wayne County
Prosecutor's Office

. The notice of
impoundment form.

. Picture identification.

. Title, registration and
insurance papers.

. Cashier's check or money
order only.

. If no claim is made within 14 days or a
settlement has not been reached, a civil
complaint seeking forfeiture of the vehicle
as a nuisance (under Michigan nuisance
abatements laws) may be filed and a
hearing date set. Your vehicle will not be
returned unless you win the case. The
conveyance and storage fees are not
waivable.

. The civil nuisance action is independent
of any criminal action which may occur.
In certain situations, after evaluation by
the prosecutor's office, the vehicle may be
returned to a "negligent entruster" upon
payment of conveyance and storage fees.
A warning letter will be given to that
person.

Finally, the official notice listed the following potential fees: (1) Wayne County Prosecutor's Fee - $ 250.00; (2) Detroit Police Department Fee - $ 650.00: (3) Conveyance Fee - $ 75.00; and (4) Storage Fee (per day after three days) - $ 8.00.

The eleven [*8] named plaintiffs have alleged that, in recent years preceding their complaint, the Detroit police had annually impounded approximately 500 motor vehicles under the state nuisance abatement laws, each of which was ultimately either returned to its owner upon payment of assessed fees and/or fines, or was forfeited to, and sold by the city police department and county prosecutor's office. The plaintiffs further alleged that a vehicle owned by each of them had been impounded by the Detroit police in the course of the city's anti-vice "sting" operation. In some alleged instances, the plaintiff/owner was inside or near the vehicle during the averred commission of a sex crime; in others, the plaintiff/owner was not physically present, but his or her vehicle was impounded when another person who was driving or riding inside that automobile with the plaintiff's permission became ensnared in the vice crackdown. In two instances, the charged perpetrator of an indecency misdemeanor was not physically inside the ultimately-impounded vehicle during the commission of the alleged offense, but had merely used that car to travel to the scene of the crime.

In most cases alleged in the Amended Complaint, [*9] the Detroit police restored the subject vehicle to its owner following his or her "settlement" payment of the civil fees and fines; likewise, in most alleged instances, the underlying criminal charge which had incited the vehicular seizure was ultimately dismissed, either because (1) the arresting officer failed to appear at the perpetrator's criminal trial, or (2) the Wayne County prosecutor or the presiding judge elected to drop the misdemeanor charges after the civil fees and fines for release of the impounded automobile were paid.

By contrast, the automobiles of plaintiffs Ganell Smith Mack and Vincent Green were released to them, *without* assessment of any fees or fines, following their successful challenges to the threatened forfeitures at "show-cause" hearings. On the other hand, plaintiff Willie Green's motorcar was forfeited to the state because he purportedly could not pay the approximately $ 2.000.00 in fees and fines imposed against him following his unsuccessful challenge at his "show-cause" hearing. Similarly, plaintiff Judy Lewis' car, which had been seized while her son was behind its wheel, was forfeited following her unsuccessful challenge because she did not [*10] pay the court-ordered fees and fines exceeding $ 900.00, irrespective of the dismissal of the underlying solicitation charge against her son impelled by the arresting officer's failure to testify at his criminal trial.

The Amended Complaint framed nine causes of action, each anchored in *42 U.S.C. § 1983* and specific constitutional amendments. n2 The plaintiffs sought relief including compensatory damages for the loss of use and/or value of their vehicles; loss of wages, income, and employment; loss of liberty; unjustified arrest and/or prosecution; damage to reputation; and emotional distress. Additionally, they requested reimbursement of costs and attorney fees, an award of punitive damages, an injunction against the defendants "from engaging in the practices complained of herein," a declaration that the Michigan Nuisance Abatement Statutes are "unconstitutional as applied," and certification of an expanded plaintiff class consisting of all persons whose vehicles were impounded by the Detroit police during the implementation of Operation Push-Off.

n2 *Section 1983* provides, in pertinent segment:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

*42 U.S.C. § 1983.* In any action under *section 1983.* the plaintiff must prove that (1) he or she has been deprived of a right secured by the United States constitution or laws, and (2) the defendant who allegedly caused that deprivation acted under color of state law. *Parratt v. Taylor, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981); O'Brien v. City of Grand Rapids, 23 F.3d 990 (6th Cir. 1994).*

[*11]

Shortly after answers to the Amended Complaint were lodged, but prior to any discovery, on January 8, 2002, defendants City of Detroit and Detroit Police Chief Benny Napoleon moved to dismiss the Amended Complaint against them under *Fed. R. Civ. P. 12(b)(6)* for failure to state any triable claim, or alternatively for summary judgment under *Fed. R. Civ. P. 56.* Following briefing, the district judge awarded full summary judgment to *all* defendants (including County Prosecutor Michael Duggan and the John Doe police officers), in essence ruling that, because no legally colorable federal constitutional violation had been alleged in the Amended Complaint, no amount of discovery could ultimately produce sufficient evidence to support a triable *§ 1983* claim. n3 Fundamentally, the trial court concluded that all of the actions allegedly taken by the defendants against any and all plaintiffs conformed to state law mandates, as well as federal constitutional norms; hence, as a matter of law, the plaintiffs' inherently misconceived foundational theory of the case - that the Michigan nuisance abatement laws were [*12] unconstitutional as applied against them -- could not buttress any triable claim irrespective of the potential outcome of discovery.

n3 Under *Federal Rule of Civil Procedure 56(c).* "the [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

A summary judgment, like any other ruling of law by a lower court, is examined *de nova* on review. *Graham-Humphreys v. Memphis Brooks Museum of Art. Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000).* However, a district court's election to deny discovery to the nonmoving party before granting summary judgment is reviewed for abuse of discretion. *United States v. Miami University, 294 F.3d 797, 815 (6th Cir. 2002).* "Generally, an abuse of discretion is [*13] evident when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d at 560 (6th Cir. 2000)* (citation omitted).

The Michigan legislature, via statute, created the legal authority for the defendants' alleged official actions:

> *Any* building, *vehicle,* boat, aircraft, or place *used for the purpose of lewdness, assignation or prostitution* or gambling, *or used by,* or kept for the use of prostitutes or *other disorderly persons* or used for the unlawful manufacture [etc. of illegal liquor or other controlled substances] *is declared a nuisance, and the* furniture, fixtures, and *contents of any* building, *vehicle,* boat, aircraft, or place and all intoxicating liquors therein *are also declared a nuisance, and all* controlled substances and *nuisances shall be enjoined and abated* as provided in this act and as provided in the court rules. Any person or his servant, agent, or employee who owns, [*14] leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance.

*Mich. Comp. Laws 600.3801.* (Emphases added). If a Michigan court finds the existence of a vehicular nuisance, its order of abatement may specify that the offending vehicle shall be *forfeited and sold,* with the

proceeds accruing to the public treasury. *Mich. Comp. Laws § 600.3825.* At least implicit in the legislatively-granted power to abate "sex offense" nuisances by vehicular forfeiture is the authority of law enforcement operatives to impound implicated vehicles upon probable cause, without a predicate hearing, as long as the owner is afforded reasonable notice and a *post-seizure* opportunity, via a hearing, to oppose the forfeiture, in conformity with federal constitutional standards. *See Bennis v. Michigan, 516 U.S. 442, 134 L. Ed. 2d 68, 116 S. Ct. 994 (1996).*

In *Bennis,* the Supreme Court sustained, over constitutional due process and taking-of-property challenges, a Michigan public nuisance abatement judgment under the above-cited statutes which effected [*15] the forfeiture of a vehicle jointly owned by a married couple, where the authorities had apprehended the husband while receiving fellatio from a prostitute inside that car, but where the wife had been entirely innocent of any personal wrongdoing and furthermore had been completely ignorant of her husband's plans to utilize their vehicle as a four-wheeled brothel. *Id. at 446* (remarking that "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use.") The *Bennis* Court emphasized that, although the civil forfeiture of property used in the commission of crime may sometimes *also* contribute to an offender's overall *punishment* for that underlying crime (especially if the criminal was the owner of the "nuisance" property abated by forfeiture), the *premier purpose* of civil forfeiture is *deterrence of future crime, not* punishment for past crime. *Id. at 451-52.*

Accordingly, even if an unfortunate innocent and unknowing owner ultimately loses his or her property through forfeiture [*16] proceedings because another person had used the owner's property for a criminal purpose, at least two proper public "deterrence" purposes - elimination of the offending property for future use as a public nuisance, and discouragement of future uses of similar property for similar illegal activities -- are advanced, which justify the forfeiture. *Id. at 451-52.* The Court further resolved that the *Fifth Amendment Takings Clause* has no application when title to property was transferred to the state via a valid civil forfeiture proceeding, rather than by eminent domain. *Id. at 452-53.*

Although *Bennis* did not squarely address the constitutionality of the Michigan nuisance abatement statutes as applied by the Detroit police department and Wayne County prosecutor's office to automobiles in the various precise circumstances alleged in the nine counts of the Amended Complaint in controversy (evolved below), the Court's ruling therein instructively defined the facial and as-applied constitutional contours and boundaries of the implicated Michigan statutes. n4 As evolved herein, because the implicated Michigan statues survived "as-applied" constitutional [*17] scrutiny on the facts presented in *Bennis,* they *a fortiori* must pass "as-applied" examination on the *less compelling* facts asserted by the instant plaintiffs.

> n4 The Sixth Circuit has explained the distinction between "facial" and "applied" challenges to legislative enactments:
>
>> A court may hold a statute unconstitutional either because it is invalid "on its face" or because it is unconstitutional "as applied" to a particular set of circumstances. Each holding carries an important difference in terms of outcome: If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances. Traditionally, a plaintiff's burden in an as-applied challenge is different from that in a facial challenge. In an as-applied challenge, "the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional." Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.
>
> *Women's Medical Professional Corp. v. Voinovich, 130 F.3d 187, 193 (6th Cir. 1997)* (citation omitted).

[*18]

In count one of their Amended Complaint, each of the eleven plaintiffs alleged that the impoundments of their vehicles, *in the absence of pre-seizure hearings,* violated constitutional proscriptions against takings of property without due process of law and unreasonable seizures of property, because Michigan law *did not expressly authorize* the *pre-hearing impoundments* of

automobiles as a means of abating a salacious public nuisance. However, as stated previously, that power was implied in the broader statutory authority to take forfeiture of and sell abated "nuisance" vehicles. In any event, the mere failure of Michigan law to expressly authorize the pre-hearing impoundment of vehicles as nuisance abatement is not dispositive of count one's *constitutional* assault against official state action. *See. e.g., Vicory v. Walton, 721 F.2d 1062. 1065-66 (6th Cir. 1984)* (explaining that a § 1983 remedy will not be available in each and every case in which established pre-deprivation state procedures were not followed or were constitutionally inadequate; rather, § 1983 ultimately will provide a potential constitutional remedy only if available state [*19] *post*-seizure remedial procedures were inadequate to correct the averred due process violation).

In the case *sub judice,* the plaintiffs were each afforded an opportunity to request a prompt *post*-impoundment "show-cause" hearing to challenge both the temporary seizure and the threatened permanent forfeiture; that challenge, if successful, would result in the immediate restoration, without substantial monetary penalties, of the implicated vehicle to its owner. That available post-impoundment remedy satisfied procedural due process and *Takings Clause* requirements. *See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 40 L. Ed. 2d 452, 94 S. Ct. 2080 (1974)* (authorizing the pre-hearing impoundment of a yacht where adequate post-seizure process was available): *United States v. James Daniel Good Real Property, 510 U.S. 43, 52, 126 L. Ed. 2d 490, 114 S. Ct. 492 (1993)* ("Central to our analysis in *Calero-Toledo* was the fact that a yacht was the 'sort of property that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given.' The ease with which an owner could frustrate the Government's interests in the forfeitable [*20] property created a special need for very prompt action' that justified the postponement of notice and hearing until after the seizure."). (Citations omitted).

Likewise, because an automobile is "mobile property," the defendants *sub judice* justifiably applied the Michigan nuisance abatement statutes by immediately impounding automobiles allegedly involved in lewdness offenses, and subsequently furnishing the owners with an opportunity to request a post-impoundment / *pre-forfeiture* "show-cause" hearing. n5 Generally, "the essential requirements of due process ... [are] notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985)*. At bottom, *pre-seizure* hearings are *not constitutionally mandated,* as long as interested persons receive notice and a timely *post-seizure* opportunity to be heard prior to forfeiture. *United States v. Von Neumann, 474 U.S. 242, 249-50, 88 L. Ed. 2d 587, 106 S. Ct. 610 (1986)*. Each plaintiff herein conceded that he or she received notice and an opportunity to be heard at a show-cause hearing. Therefore, the first cause of action was legally misconceived irrespective [*21] of any evidence which discovery might have yielded.

n5 The plaintiffs have protested that, on the facts alleged herein, a post-impoundment hearing was inherently inadequate to protect their liberty and property interests, because even owners who. pursuant to post-seizure hearings, have successfully prevented the forfeiture of their vehicles nonetheless suffered damages in the form of the uncompensated loss of their alleged liberty and property interests in the use of their vehicles during the few days that it was in state custody, plus consequential inconveniences such as the inability to drive to work during that short period. However, those alleged harms were *de minimis*. In the first instance, no compensable *liberty interest* was infringed, because "operating a motor vehicle on the public thoroughfares, under *any* circumstances, is *not* a fundamental personal *right,* but instead is a mere societally-bestowed *privilege,* granted by the grace of the state, which an adult citizen must earn, and which the government can restrict or invalidate, even administratively, in the rational furtherance of a legitimate public purpose." *United States v. Kingsley, 241 F.3d 828. 838 (6th Cir. 2001)* (emphases in original; citation omitted). Temporary alternative means of transportation are readily available, including public mass transit, taxicabs, vehicles leased for short terms, car pools, rides furnished by acquaintances, bicycling, and walking. *See id. at 839*.

Similarly, no compensable *property right* was taken, because "if satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Public School System, 360 F.3d 583, 587-88 (6th Cir. 2004) (citing Hudson v. Palmer, 468 U.S. 517, 533, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984); Vicory, 721 F.2d at 1065-66)*. Accordingly, as long as reasonably prompt post-deprivation process is made available which allows the owner an opportunity to show cause why his property should be returned, as was the case in the faulted Michigan nuisance abatement system, no compensable constitutional tort occurred by reason of the vehicle's initial

impoundment and/or short-term custodial detention.

**[*22]**

Next, each plaintiff (except Atul Grover, the owner/driver of a limousine whose vehicle was seized when an *ultimately-convicted* client was arrested therein for solicitation), through the second cause of action, has contended that the alleged perpetrators of morality violations which triggered the contested seizures of the vehicles at issue were *actually innocent* of those charges, and those persons were *arrested without probable cause*, hence, no lawful justification for the impoundments existed at *any* time.

Nevertheless, the sole "evidence" proffered by the plaintiffs of the "actual innocence" of the alleged perpetrators was the *ultimate dismissal of criminal charges* against each alleged culprit (except Grover's convicted passenger), matched with the allegation that the arrestees had been "entrapped" by female undercover agents "into *committing acts which might arguably be construed as solicitation* for the sole purpose of seizing the vehicles and extracting a 'settlement' or 'redemption' fee from the owners under threat of forfeiture of the vehicle." Amended Complaint, page 4. paragraph 18 (J.A. at 85). (Emphasis added).

However, *the plaintiffs have conceded* **[*23]** that some of those dismissals of criminal prosecutions were compelled by the arresting officer's failure to appear at the accused's criminal trial: and the remainder were authorized by the trial court or prosecutor following the owner's payment of the civil fines and fees for release of the impounded vehicle. Accordingly, *absolutely no evidence of the factual substantive innocence of any alleged offender had been offered by any plaintiff,* in that the procedural or discretionary dismissal of criminal charges prior to prosecution does *not* establish the factual innocence of the charged defendant. n6 Moreover, even assuming *arguendo* that some of the averred offenders may have in fact been innocent of the charges, the criminal arrests and affiliated civil nuisance-abatement property seizures needed to be supported merely by "probable cause," n7 *not* by certainty of guilt beyond a reasonable doubt. See *Chriss v. City of Kent, 867 F.2d 259. 262 (6th Cir. 1988)* (instructing that a subsequent dismissal of criminal charges can have no retroactive impact on the validity of a probable cause determination made prior to an arrest). "Due weight" should be accorded **[*24]** to the judgments of law enforcement agents and other local law enforcement operatives that pre-arrest probable cause existed on a given set of facts. *Ornelas v. United States, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996)*. That determination is a mixed issue of law and fact reviewed by the courts *de novo. Id. at 696-98.*

n6 "In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States, 470 U.S. 598, 607, 84 L. Ed. 2d 547, 105 S. Ct. 1524 (1985)*. The plaintiffs *subjudice* have confused judicial and prosecutorial leniency, coupled with the defendants' evident law enforcement policy and practice of penalizing most solicitation offenders solely by exacting civil fees and fines for the restoration of impounded vehicles in lieu of criminal misdemeanor prosecutions, with a supposed concession that the plaintiffs were in fact innocent of the dismissed morals charges. To the contrary, the plaintiffs' allegations and undisputed evidence of record reflected only that the defendants soundly exercised their law enforcement discretion, given the finite and scarce available public resources allocated to the enforcement of *all* state criminal laws, by selecting a rational means, short of criminal prosecutions, of punishing and deterring a particular species of unsavory and unhealthy miscreant public behaviors; hence, the plaintiffs have raised no sustainable inference that the defendants had conspired to extract fees and fines from *innocent* motorists. Furthermore, so-called "innocent" owners of vehicles can insulate themselves from liability for vehicle-restorative monetary penalties and other fees, or vehicular forfeitures, incited by violations committed by other individuals, by means including (1) declining to allow others to use their motorcars, (2) entering indemnification or "hold-harmless" contracts with users of their vehicles, or (3) initiating a lawsuit against the criminal perpetrator for recovery of any civil fines or fees paid by the owner to attain the return of his or her vehicle, or for the fair market value of any forfeited automobile. **[*25]**

n7 "'Probable cause' denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Painter v. Robertson, 185 F.3d 557, 569 (6th Cir. 1999) (citing Michigan v. DeFillippo, 443 U.S. 31, 37, 61 L. Ed. 2d 343, 99*

*S. Ct. 2627 (1979)*; *Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988))*. "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Ferguson, 8 F.3d 385, 392 (6th Cir. 1993)* (en banc) (quotation omitted). That standard requires proof of "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates, 462 U.S. 213, 244 n.13, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)*. Assessment of probable cause should consider the totality of the circumstances. *Id.* "This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." *Ferguson, 8 F.3d at 392. See also United States v. Cortez, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981)*.

[*26]

By alleging that law enforcement officers had "entrapped" the arrestees by purportedly contributing to the creation of circumstances which supported a solicitation charge, the plaintiffs have *conceded* that the challenged arrests were supported by probable cause. Whether a legal defense of entrapment against any criminal charge implicated in the nuisance abatement seizures in controversy had any colorable merit (1) has not been determined by any court, and (2) was ultimately irrelevant to the probable cause determination. *See, e.g., Fridley v. Horrighs, 291 F.3d 867, 874-75. (6th Cir. 2002)* (resolving that "probable cause" to arrest is proved when a hypothetical objectively reasonable law enforcement officer, based on what was known to the arresting patrolman, could have concluded that a crime had been or was being committed; the possibility that the culprit might ultimately possess an affirmative "entrapment" defense at trial is not material to the pre-arrest probable cause assessment, at least absent conclusive proof that the arresting officer knew at the time of the arrest that the arrestee lacked any predisposition to commit the charged offense). Hence, the [*27] second cause of action was anchored in a legal theory which was unsustainable regardless of any evidence which the plaintiffs might have gathered during discovery.

The third cause of action, asserted only by plaintiffs O'Hara and Vincent Green, alleged that their vehicles had been illegally impounded because the sex offenses charged against them occurred *outside* of their motorcars. However, Michigan law unambiguously legitimated the "nuisance abatement" of those vehicles because they had been "*used for the purpose of* lewdness, assignation or prostitution" in that they had transported the criminal perpetrators to the sites of their crimes. *See Mich. Comp. Laws 600.3801*. (Emphasis added). Because state law authorized those seizures, and because no federal law or constitutional principle invalidated those official actions, no amount of discovery could have salvaged the legally ill-formulated third cause of action.

Via count four of the Amended Complaint, each plaintiff claimed that the *post-impoundment procedures* made available to them were constitutionally inadequate. The plaintiffs alleged that, although each of them had received notice and [*28] an opportunity to contest the threatened nuisance-abatement forfeitures of their motor vehicles at a "show-cause" hearing, "as a practical matter, the costs of doing without a necessary personal or family vehicle for an indeterminate period pending the hearing, lost wages and employment due to lack of transportation, hiring a lawyer, taking time off from work to go to court and preparing to defend the forfeiture operated as a financial and practical barrier to these Plaintiffs ... who had good defenses to the forfeiture/nuisance abatement." Amended Complaint, page 19, paragraph 129 (J.A. at 100). That cause of action was facially deficient. As developed above, the initial seizures were constitutionally justified upon "probable cause," as long as the owners received reasonable notice and a fair post-impoundment-but-pre-forfeiture opportunity to contest ultimate forfeiture. No dispute exists that each plaintiff had received those things.

Moreover, the plaintiffs have conceded that the vehicle owners who successfully contested forfeiture (or who elected to pay the assessed fines and costs without opposition) realized the prompt return of their vehicles. Because the post-impoundment procedures [*29] afforded by the Michigan authorities guaranteed the ultimate protection of property rights in seized vehicles for their owners, procedural due process requisites were satisfied, which in turn legitimated the pre-release temporary property deprivation and its attendant minor inconveniences and procedural costs for the owner. *See* note 5 above. Consequently, no discovery was necessary to resolve the legally-inadequate fourth count.

The fifth cause of action purportedly stated a claim, by each plaintiff except the limousine owner Grover, for alleged *unlawful arrests and unreasonable seizures,* on the rationale that no probable cause existed for the arrest of any plaintiff or other implicated person. In the first instance, no plaintiff had standing to assert any alleged violation of the constitutional rights of a different individual; for example. Judy Lewis lacked standing to seek redress for the alleged wrongful arrest of her son, who was the driver of her car when the police

impounded it. *See United States v. Raines, 362 U.S. 17, 22, 4 L. Ed. 2d 524, 80 S. Ct. 519(1960)*; *United States v. Perry, 360 F.3d 519, 532 (6th Cir. 2004)*. In all events, as developed [*30] above, the plaintiffs have *conceded*, via their Amended Complaint, that probable cause existed to support the arrests of each pertinent arrestee, which in turn furnished constitutional justification for the temporary pre-forfeiture-hearing impoundments of the subject vehicles. Similarly, the sixth claim also asserted by each plaintiff except Grover, defectively averred that the arrestees were *prosecuted* on criminal charges in bad faith *absent probable cause*. Patently, no discovery was needed to resolve the facial legal insufficiency of the fifth and sixth counts.

Count seven was advanced only by plaintiff John Clark d/b/a Lorraine Cab Company ("Clark"), the owner of taxicabs which had been impounded by the Detroit Police in connection with the vice arrests of drivers or customers, but which were subsequently released upon Clark's payment of the assessed "settlement" civil fines and fees. Clark has posited that the defendants had denied him "equal protection of the laws" because an unknown number of unidentified fellow local taxicab owners whose cabs were also impounded during vice arrests had also obtained the return of their vehicles on an unknown number of occasions, [*31] albeit allegedly *without* paying fines and fees of the kind imposed against Clark. However, Clark has failed to identify, either in the Amended Complaint or in the plaintiffs' opposition to the summary judgment motion, *any* specific taxicab operator who was similarly situated to Clark, yet received comparatively favorable treatment. *See Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000)*; *Nordlinger v. Hahn, 505 U.S. 1, 11, 120 L. Ed. 2d 1, 112 S. Ct. 2326 (1992)*..

Moreover, even assuming *arguendo* that, on at least one occasion, the defendants had released a taxicab, which had been impounded during a solicitation arrest, to its owner without the predicate assessment of the standard "settlement" penalties and/or other monetary fees, that disparate treatment would offend equal protection strictures only if it was irrationally arbitrary; that is, if it did not rationally further any conceivable public purpose. *See Romer v. Evans, 517 U.S. 620, 631, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996)*(including that state actions which adversely impacted neither a suspect nor a quasi-suspect classification which embraces the plaintiff, nor the [*32] plaintiff's exercise of any fundamental or important civil right, receive highly deferential "rational relationship" judicial scrutiny under the *Equal Protection Clause*); *Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985)*(same). To prevail, Clark must *disprove* the rationality of *every conceivable justification* for his less favorable treatment by the authorities relative to the allegedly comparable taxicab owner(s) who purportedly are "similarly situated" to the plaintiff *in every material respect*. *See Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307, 313-14, 124 L. Ed. 2d 211, 113 S. Ct. 2096(1993)*;. *37712,Inc. v. Ohio Dept. of Liquor Control, 113 F.3d 614, 622 (6th Cir. 1997)*.

Clark's allegations in his Amended Complaint have illuminated the impossibility of satisfying that burden of proof. Clark has averred that "over the period of January 1998 and June 2001 [sic], Plaintiff [Clark] has had approximately 15 vehicles impounded by the Detroit Police Department based on allegations that the drivers and/or passengers in the cabs engaged in solicitation." Amended Complaint, page 10, [*33] paragraph 56(J.A. at 91). "In each instance,. Plaintiff Clark paid $ 650 - $ 900, plus towing and storage charges, demanded by the Prosecutor's office for return of the vehicles because he needed the vehicles to maintain his income and his business." *Id.,* paragraph 57. Accordingly, Clark would need to prove, *at minimum,* that during the identical alleged three-and-one-half-year duration, *at least one* competing Detroit-area cab owner (1) had at least one of its vehicles returned to it *absent the predicate payment of fines and fees* similar to those exacted from Clark: *and* (2) was *similarly situated* to Clark in *all other material respects,* including, but not limited to the total number of its cabs which had been implicated in vice crimes during the relevant period, and the degree of knowledge and/or complicity of that allegedly "comparable" owner concerning the charged morals offenses.

Absent supporting material proof beyond Clark's naked speculation, conjecture, hunches, hypothesizing, intuitions, innuendo, insupportable "inferences." empty theorizing, creative guesswork, and wishful thinking, no logical reason exists to *presume* that any other Detroit-area [*34] taxi company had habitually, and knowingly, leased a significant number of its cabs to pimps and whoremongers over the implicated time period. *See Chappell v. GTE Products Corp., 803 F.2d 261, 268 (6th Cir. 1986)*("Mere personal beliefs, conjecture and speculation are insufficient to support" a triable factual inference). If indeed Clark possessed such information, he should have referenced it in his Amended Complaint, or at minimum should have proffered it in opposition to the defense motion for summary judgment. If he did *not possess* such information (as is evidently the case), any discovery on the subject would have constituted an unjustified fishing expedition. Thus, no possibility that Clark could prove his equal protection case has been demonstrated. Accordingly, no discovery was necessary to dispose of that misconstructed claim.

The plaintiffs' eighth cause of action articulated a purported *Eighth Amendment* "excessive fines" allegation, undergirded by the contention that fines and fees ranging from $ 900 to $ 2.000 for the release of a vehicle impounded by reason of a single alleged vice offense "constitute excessive fines in that the forfeiture is not reasonably [*35] proportionate to the offense committed nor the role of the vehicle in committing the offense." Amended Complaint, page 23, paragraph 164 (J.A. at 104). The *Eighth Amendment* "excessive fines" clause applies to civil forfeitures. *Austin v. United States, 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993).* Nonetheless, no discovery regarding the instant "excessive fines" claim was necessary, because it was legally deficient on its face.

"A punitive forfeiture violates the *Excessive Fines Clause* if it is *grossly disproportionate* to the gravity of a defendant's offense." *United States v. Bajakajian. 524 U.S. 321, 334, 141 L. Ed. 2d 314, 118 S. Ct. 2028 (1998).* (Emphasis added). The fines and fees imposed in the case in controversy patently were not "grossly disproportionate" to the gravity of the implicated offenses. Solicitation of prostitution, lewdness. public indecency, and other sexual vice crimes of the types material to the subject litigation may impact adversely the health, safety, welfare, and morals of the affected neighborhood and the larger community. Those lascivious and irresponsible activities offend law-abiding citizens; degrade the moral fiber of their participants [*36] as well as society; rend bonds of marriage and family; transmit dreaded social diseases including AIDS, syphilis, and other often-incurable degenerative and/or deadly venereal diseases; attract and facilitate the abuse of, and trafficking in, dangerous controlled substances: and incite other violent felonies including common street crimes.

Consequently, those activities cannot be tolerated in a civilized and well-regulated commonwealth. The civil fines and fees alleged herein, which did not exceed approximately $ 2,000 in any single instance, manifestly were not grossly disproportionate to the gravity of the deterred and/or punished offenses. *Cf. Bennis, supra,* wherein the Supreme Court, in rejecting constitutional challenges to the Michigan nuisance abatement and civil forfeiture laws at issue herein (although on *Due Process Clause* and *Takings Clause* rationales rather than the *Excessive Fines Clause*), dictated that the legitimate public objectives of deterrence and punishment of vice crimes validated the complete and permanent forfeiture of an innocent co-owner's one-half interest in a vehicle involved in a sex offense committed by her husband. *Bennis, 516 U.S. at 451-53* [*37] (also suggesting, in dictum, that the civil forfeiture there in controversy would have survived a challenge under the *Excessive Fines Clause*) (citing *Austin v. United States, 509 U.S. 602, 617-18, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993)).* Following *Bennis.* at least one sister circuit has correctly mandated that the imposition of a reasonable administrative penalty plus towing and storage fees in connection with the release of a lawfully impounded vehicle does not transgress the Excessive Fines Clause. *Towers v. City of Chicago, 173 F.3d 619, 623-26 (7th Cir. 1999).*

Finally, the plaintiffs' ninth cause of action sought imposition of municipal liability against the City of Detroit, and as well as Duggan and Napoleon in their official capacities, under *Monell v. Department of Social Services, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)* and its progeny. The claimants have contended that Duggan and Napoleon, as official policymakers, "were responsible for the developing, implementing, enforcing and maintaining the policies, practices and procedures complained of herein." Amended Complaint, page 23, paragraph 168 (J.A. at 104). However, *even if* the [*38] complainants could prove that the defendants, as official policymakers, had developed policies, practices, and procedures which compelled or facilitated constitutional violations by state actors in *other* instances, no liability to the subject plaintiffs will arise if those identified unconstitutional policies, practices, and/or procedures *did not actually cause the deprivation of any constitutional right possessed by the plaintiffs. City of Los Angeles v. Heller, 475 U.S. 796, 799, 89 L. Ed. 2d 806, 106 S. Ct. 1571 (1986).* As illustrated herein, as a matter of law, the plaintiffs cannot prove that they had suffered *any* constitutional tort. Accordingly, as a matter of law, official "municipal liability" cannot be imposed against any defendant for any of the Amended Complaint's alleged, but nonexistent, constitutional wrongs. n8

> n8 Alternatively, even assuming for argument's sake that the plaintiffs *could* prove some unconstitutional impact against them caused by some official policy, practice, or procedure promulgated by the defendants, they must *further* prove, among other things, that the two named natural-person defendants, as the alleged relevant official policymakers, had acted with "deliberate indifference" toward the affected plaintiffs' federally-protected rights. *City of Canton v. Harris, 489 U.S. 378, 387-88, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).* "Deliberate indifference" is a very high standard of culpability, *exceeding* "gross negligence." *Id. at 388-92 & n.7 (1989).* "Deliberate indifference" signifies "a deliberate choice to follow a course of action ... made from among various

alternatives" by the implicated state actor(s) which reflected a conscious indifference to the constitutional rights violations which will inevitably result from the selected course of conduct or policy. *See id. at 388-90.* However, the complainants at bench have neither alleged in their Amended Complaint, nor produced in opposition to the defendants' summary judgment petition, any facts which could buttress a finding of "deliberate indifference." By contrast, in light of the Supreme Court's ruling and legal analysis propounded in *Bennis v. Michigan, 516 U.S. at 450, 134 L. Ed. 2d 68 (1996)* (mandating that the uncompensated civil forfeiture under the Michigan nuisance abatement statutes of an innocent and unaware co-owner's partial interest in an automobile, by reason of her husband's surreptitious use of that vehicle as his personal bawdy house, did not offend the federal constitution), it is evident as a matter of law that the alleged actions taken by the instant defendants did not reflect "deliberate indifference" to the federal civil rights of any plaintiff herein, even if, after close judicial scrutiny of those actions, some actual constitutional transgression had been identified.

For similar reasons, the existence of any actual constitutional violation on the subject facts would not justify imposition of liability against any individual defendant in his *personal* capacity, because each defendant would unquestionably be shielded by qualified immunity, in that any constitutional principle which might invalidate any public action alleged in the subject lawsuit was, as a matter of law, patently not "clearly established" in the Sixth Circuit after the Supreme Court's *Bennis* edict. *See Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).*

This reviewing court also notes that defendant Duggan, as Wayne County Prosecutor, may also be insulated by absolute prosecutorial immunity from any alleged liability. *See, e.g., Imbler v. Pachtman, 424 U.S. 409, 420-30, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976); Blakely v. United States, 276 F.3d 853, 871 (6th Cir. 2002); Cooper v. Parrish, 203 F.3d 937, 946-49 (6th Cir. 2000).* However, because the district court did not address that issue, and because its resolution was unnecessary to the final disposition of the appeal *instanter,* this court need not, and thus has not, decided it; not has this court considered Duggan's additional alternate arguments framed initially on appeal.

[*39]

This reviewing court has carefully considered the trial court record, the controlling law, and the briefs and arguments of counsel, and has concluded that the defendant's assignments of error were each ill-conceived. The district court did not abuse its discretion by resolving the summary judgment motion prior to discovery; nor did the trial court legally err by awarding summary judgment to each defendant on every cause of action of the Amended Complaint. n9 Hence, for the reasons developed herein, the lower court's summary judgment for the defendants is **AFFIRMED.**

---

n9 The plaintiffs request for class certification is denied as moot.