**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JANIE SAMUEL, | : | |
| AS ADMINISTRATOR OF | : | Case No. C-1-02-378 |
| THE ESTATE OF | : | |
| CATHY LYNN TUBBS, et al., | : | Judge Dlott |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| -vs- | : | |
| | : | |
| STEVEN M. HOOG, et al., | : | **MEMORANDUM IN OPPOSITION** |
| | : | **TO DEFENDANTS' MOTION TO** |
| Defendants | : | **DISMISS** |

I.    **PRELIMINARY STATEMENT**

A motion to dismiss is a challenge to the sufficiency of the plaintiffs' allegations when viewed in the light most favorable to the plaintiffs.  In the case at bar, the defendants effectively concede the sufficiency of the plaintiffs' complaint by the defendants' need to append matters outside the pleadings, including hearsay statements of the defendants themselves, to challenge the plaintiffs' claims.  Although the plaintiffs need only have complied with the "notice" pleading requirements of Rule 8(a), plaintiffs have set forth specific, nonconclusory facts that, if established, would entitle them to the relief they seek under both 42 U.S.C. § 1983 and Ohio state law.  The defendants can neither rely upon qualified immunity to shield them from the consequences of their intentional violations of Cathy Tubbs' clearly established constitutional rights, nor seek shelter under Ohio's statutory immunity for the negligent acts of state officers to escape liability for their intentional infliction of emotional distress upon the plaintiffs. Defendants' motion must be denied.

## II.    <u>FACTS</u>

Plaintiff Cathy Lynn Tubbs, an African-American citizen of the City of Cincinnati suffered from Pulmonary Hypertension, a disorder in which blood pressure in the pulmonary artery rises well above normal limits. She was under medical care for this condition. Symptoms of this disease include difficulty in breathing, dizziness, fatigue, and fainting spells. This disease is a serious medical condition and can lead to cardiac arrest and death. Amended Complaint ¶11.

On the afternoon of May 29, 2000, Cathy Tubbs was at her home at 1316 Burdett Avenue in the City of Cincinnati and experienced shortness of breath, extreme weakness and other related medical problems. A call was made to 911 for emergency medical assistance. Id. ¶ 13.

The City of Cincinnati Fire Department operates under a "You call, we haul" policy whereby they will transport anyone who requests transport and/or emergency medical services during transport to a hospital. Id. ¶ 24. Fire Fighters Hoog and Lotz, who are both white, transport white citizens who are conscious, alert and speaking upon their arrival and who have similar or less serious conditions than Cathy Tubbs' condition on May 29, 2000 in accordance with the "You call, we haul" policy without opposition and argument and without creating an atmosphere of confrontation. Id. ¶ 26; 27. Such similar or less serious conditions include: sore back, broken bone, pregnant women requesting ride to hospital, dizziness, breathing trouble, weakness, other maladies where the patient was conscious, alert and speaking upon Defendants' arrival.[1] Id. ¶ 27. Defendants have even responded to calls from white citizens who were conscious, alert and speaking upon their arrival with similar or less serious conditions at the very same address, 1316 Burdett Avenue, and have allowed these white citizens to be transported by

---

[1] The Defendants correctly identify the universe of similarly situated white citizens as those who sought emergency medical services, who were "conscious, alert and speaking upon their arrival…." Def. Memo. in Supp. Mot. to Dismiss, p. 9 ("Plaintiff fails to name or identify any similarly situated White person who was treated differently by these Firefighters. That is, Plaintiff fails to name any White person who called for emergency medical services, who was conscious, alert and speaking upon their arrival, and who the Firefighters treated any differently….")

ambulance to the hospital, and to receive medical services during transport, without any initial refusal, opposition, argument or confrontation, pursuant to the "You call, we haul" policy.  Id. ¶ 29.

Fire Fighters Hoog and Lotz arrived at 1316 Burdett Avenue in response to the 911 call. Id. ¶ 15.  Shortly after arriving at the scene, Fire Fighter Hoog stated that he was not going to provide emergency transport for Cathy Tubbs, despite the fact he knew that Cathy was having trouble breathing, was suffering from a serious high blood pressure condition, was so weak she had to have help to walk, was under extreme stress, and feared for her life.  Id. ¶ 16, 34.  Fire Fighter Lotz was present and failed to contradict Hoog.  Id. ¶ 16.  Upon Defendants' refusal to transport or to provide emergency medical treatment during transport, Cathy Tubbs' fear for her life intensified and she immediately began to cry and become extremely distressed. Id. ¶ 47.

Both Cathy and her mother, Janie Samuel, subsequently pleaded with the firefighters to transport Cathy to the hospital because she required medical treatment during transport and Cathy's home oxygen tank could not be safely transported in the family's private vehicle.  Id. ¶ 34.  Defendants refused their pleas.  Cathy's mother, Janie Samuel, ultimately got down on her knees and begged defendant Hoog to allow her daughter to be taken to the hospital by the ambulance on the scene.  Id. ¶ 57.  Defendant Hoog responded to Cathy's mother's pleas by deriding, ridiculing and humiliating Cathy, her mother, and other family members.  Hoog mocked Ms. Tubbs' family members for not caring enough about Cathy to take her to the hospital sooner, and stated that if she had been a member of his family, he would have already driven her them to the hospital.  Id. ¶ 45.  Jamie Samuel cried, shook and felt heart palpitations. Id. ¶ 61.  Defendants continued to refuse to allow Ms. Tubbs to be transported to the hospital by

ambulance.  When Cathy's sister, Candace Tubbs challenged Hoog's refusal to transport Cathy, Mr. Hoog stated "Yea, I am a racist."  Id. ¶ 45

Despite Cathy's serious and now deteriorating condition, the only paramedic on the scene, Defendant Fire Fighter Lotz, failed to perform the proper tests, and sat idle while Hoog, who was not a paramedic, declared Cathy's medical needs a non-emergency.  Id. ¶16; 34.  Lotz's inaction included, but was not limited to, failing to utilize the pulse/oximeter device to measure Cathy's pulse and oxygen levels and failing to apply the leads of the EKG machine to Cathy to monitor her heart rhythm—even though the equipment was available to Lotz.  Id. ¶ 34.

Only when defendants learned that Cathy's aunt, who had witnessed their statements and actions, was an attorney, did defendants agree to allow Cathy to be transported by ambulance and treated by emergency medical technicians during transport.  As Cathy was being loaded into the ambulance, however, Hoog's parting shot was to instruct the ambulance driver to drive slowly.  Id. ¶ 34.

As a result of defendants' statements and actions, Cathy Tubbs suffered extreme emotional distress, anxiety, discomfort, humiliation, embarrassment, extreme fear for her life, and perceived defendants to be preventing her from obtaining the emergency medical treatment necessary to save her life.  Id. ¶ 17; 47; 51.  Cathy ultimately died later that evening from complications arising from her high blood pressure condition.  Id. ¶ 11; 22.

Independent of her grief for the loss of her daughter, plaintiff Janie Samuel has suffered severe emotional distress, and severe mental and emotional anxiety requiring professional medical treatment as a result of defendants' conduct.  Id. ¶ 64.

### III.    LAW AND ARGUMENT

### A.    The Court Should Consider Only Those Allegations in the Complaint, Which Must Be Viewed In the Light Most Favorable to the Plaintiffs

A motion under Federal Rule 12(b)(6) is a challenge to the sufficiency of the allegations of a plaintiff's complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Armengau v. Cline, 7 Fed.Appx. 336, 343, 2001 WL 223857, at *5 (6th Cir., 2001). Under the Federal Rules, courts must accept as true all allegations in the complaint, viewing the allegations in the light most favorable to the party opposing the motion. Great Lakes Steel v. Deggendorf, 716 F.2d 1101, 1105 (6th Cir. 1983). When deciding a motion to dismiss, a court may consider only those matters "properly a part of the complaint or pleadings." Armengau at *5. A court may grant a motion under 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Balderaz v. Porter, 578 F.Supp. 1491, 1494 (S.D.Ohio 1983).

As defendants often do, the Defendants couch the argument in their memorandum within a factual context that is disputed by the plaintiffs. For example, the defendants characterize their outright refusal to transport Cathy Tubbs and their intentional derision, humiliation, ridicule and aggressive confrontation of the plaintiffs, as "discussion between the Firefighters and Plaintiff's family about whether emergency medical transportation was necessary in this particular situation." Defendants go so far as to affirmatively allege facts entirely absent from plaintiffs' complaint, putting words in the mouths of Ms. Tubbs' family and even attaching to defendants' motion, and asserting the truth of, hearsay statements apparently made by the defendants after their violations of plaintiffs' rights. Def. Mot. in Supp. p. 3, 4, Affidavit of Tom Lakamp. The very premise of Defendants' argument -- factual allegations that contradict and/or are absent

from plaintiffs complaint -- is one which the Court may not accept. Instead, the Court must construe the facts alleged by the plaintiffs and all reasonable inferences therefrom in favor of the plaintiffs, the non-moving parties. See, e.g., Hummel v. City of Carlisle, 229 F.Supp.2d 839, 854 -855 (S.D. Ohio, 2002). The defendants' apparent need to look beyond the plaintiffs' complaint in order to challenge the plaintiffs' claims is ample demonstration of the sufficiency of the allegations of the complaint.

      1.    **The Court Should Not Consider Defendants' Hearsay Statements Attached To Their Motion to Dismiss.**

Rather than viewing the plaintiffs' allegations in the light most favorable to the plaintiffs, the defendants step outside the pleadings and assert facts that are absent from plaintiffs' complaint. Defendants even go so far as to take the extraordinary step of attaching a document that purports to be a "medical run report" filled out by one or more of the defendants, and assert and rely upon the truth of these statements. The out of court statements included in the document were apparently made *after* the defendants refused to transport Ms. Tubbs, after their derision, ridicule and humiliation of Ms. Tubbs and her family, and after the defendants learned that one of the African-American family members that had witnessed their conduct and statements, was in fact a practicing attorney. Defendants' efforts to have this court take judicial notice of the veracity of the statements made in the attached "medical run report" must fail.

In addition to facts alleged in plaintiffs' Amended Complaint, the Court may consider "any documents attached or incorporated in the Amended Complaint, and public documents of which the Court can take judicial notice." U.S. ex rel. Dingle v. BioPort Corp., 270 F.Supp.2d 968, *971 -973 (W.D.Mich.,2003) (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.1999), overruled in part on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508-14, 122 S.Ct. 992, 996-99, 152 L.Ed.2d 1 (2002); Yeary v. Goodwill Indus.- Knoxville, Inc., 107

F.3d 443, 445 (6th Cir.1997); Armengau v. Cline, 7 Fed.Appx. 336, 344, 345 (6th Cir.2001). However, the defendants' semantic backflips to incorporate any documents falling within an Ohio state law definition of a "public record" into the federal rules has no support in the law. Def. Memo. in Supp., p. 3; See, e.g., Fed. R. Civ. P. 12(b).

Judicial notice of adjudicative facts is governed by Federal Rule of Evidence 201. Toth v. Grand Trunk R.R., 306 F.3d 335, 349 (6th Cir.2002). Rule 201(b) provides:

> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b). Defendants' hearsay statements made after their refusal to transport, their confrontation with Ms. Tubbs and her family, and after they became aware that an attorney had witnessed their statements and conduct, are not only clearly subject to reasonable dispute, but are inherently suspect. Because the defendants' out of court statements are not "generally known within [this jurisdiction]", nor "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," the Court should not consider, much less take judicial notice of defendants' proffered statements or any allegations of fact therein, especially in the context of defendants' motion to dismiss.[2]

Federal Rule of Civil Procedure provides that:

> If, on a motion asserting the defense numbered (6) ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

---

[2] If the Court is inclined to consider these statements notwithstanding their source and the posture of this case, plaintiffs request an opportunity to be heard pursuant to Federal Rule of Evidence 201(e).

Fed. R. Civ. P. 12(b); <u>Nieman v. NLO, Inc.</u>, 108 F.3d 1546, 1554 (6th Cir. 1997). If the Court decides to consider the documents attached to the defendants' Motion to Dismiss, the plaintiffs request that the Court deny defendants' motion, or in the alternative, provide plaintiffs with notice and an opportunity to obtain affidavits in support of a continuance pursuant to Federal Rules of Civil Procedure 12(b) and 56(f). See Plaintiffs' Motion to Strike Affidavit of Tom Lakamp.

**B      There Is No Heightened Pleading Standard for Cases Alleging Intentional Discrimination**

There is no heightened pleading standard applicable to the plaintiffs' claims. Although the Sixth Circuit Court of Appeals and other circuits had imposed a heightened pleading standard on civil rights plaintiffs accusing government officials of unconstitutional motive for a time, in <u>Goad v. Mitchell</u> and more recent cases, the Sixth Circuit "formally recognized this heightened standard as inconsistent with the Supreme Court decisions in <u>Crawford-El v. Britton</u>, 523 U.S. 574….(1998), and <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 …(2002)…." <u>Johnson v. Hayden, et. al</u> 2003 WL 21321087 at *4 (6th Cir. 2003) (unpublished) (citations omitted); accord <u>Leisure v. City of Cincinnati</u> 267 F.Supp.2d 848, 859 (S.D.Ohio, 2003). If the Federal Rules do not require a heightened pleading standard (e.g. as in the case of fraud), the "notice" pleading standard of Federal Rule 8(a) applies. See, <u>e.g.</u>, <u>Swierkiewicz v. Sorema N. A.</u> 534 U.S. 506, 514, (2002) (no heightened pleading requirement for intentional discrimination plaintiff). When no such heightened pleading standard exists under the Federal Rules, "[a] requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" <u>Swierkiewicz v. Sorema N. A.</u> 534 U.S. 506, 515, (2002) (quoting <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination</u>

8

Unit, 507 U.S. 163, 168 (1993)).  Because the Federal Rules do not permit, much less require, a heightened pleading requirement for civil rights plaintiffs alleging intentional discrimination, the notice pleading standard of Federal Rule 8(a) is applicable to plaintiffs' claims.  See, id.; Fed. R. Civ. P. 8 and 12(b).

Under the "notice" pleading standard of Federal Rule 8(a), plaintiffs need only have provided: "a short and plain statement of the grounds upon which the court's jurisdiction depends…."; "a short and plain statement of the claim showing that the pleader is entitled to relief"; and "a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. Proc. 8(a).  The complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A.  534 U.S. 506, 512, 122 S.Ct. 992, 999) (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Defendants concede that when viewed in the light most favorable to the plaintiffs, plaintiffs plead "intentional discrimination in classic "notice" form."  Def. Memo. in Supp., p. 4.  However, defendants invite this Court to ignore controlling authority and claim that plaintiffs' statement of a valid claim under "notice" pleading "does not suffice to overcome a motion to dismiss based on qualified immunity."  Mot. Dismiss p. 6.  At best, Defendants are simply mistaken.  See, e.g. Swierkiewicz v. Sorema N. A.  534 U.S. 506 (2002).

Although plaintiffs are not required to do so in order to survive a Motion to Dismiss under the Federal Rules, plaintiffs have alleged specific, nonconclusory allegations of fact that are sufficient to defeat defendants' qualified immunity affirmative defense.

C.    **Plaintiffs Have Stated a Valid Claim Under 42 U.S.C. § 1983 Based Upon The Deprivations of Cathy Tubbs' Clearly Established Rights To Equal Protection by Defendants Hoog and Lotz.**

To establish a prima facie case under 42 U.S.C. § 1983, plaintiffs must plead facts which, when viewed in the light most favorable to the plaintiffs, establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003) (quoting Tahfs v. Proctor, 316 F.3d 584 (6th Cir. 2003)).  Because plaintiffs' amended complaint alleges facts which, when viewed in the light most favorable to the plaintiffs, establish that defendants, who were state actors, intentionally discriminated against Ms. Tubbs, a member of a protected class, because of her membership in that class, plaintiffs' amended complaint states a valid claim that defendants have violated Ms. Tubbs' right to the equal protection of the laws.

In fact, Defendants concede that "[a]t best, Plaintiffs plead intentional discrimination in classic "notice" form …."  Motion to Dismiss p. 4.  Because the Court must construe the pleadings in the light most favorable to the non-moving party, or "at best", there appears to be no real dispute that Plaintiffs have sufficiently pled a claim against defendants for the violation of plaintiff's rights to equal protection under the  applicable "notice" pleading standard of the Federal Rules of Civil Procedure.

"The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 239 (1976).  The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction

that all persons similarly situated should be treated alike. <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 440 (1985); <u>Plyler v. Doe</u>, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).  The Sixth Circuit has recognized that "determining whether official action was motivated by intentional discrimination 'demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'"  <u>Farm Labor Organizing Committee v. Ohio State Highway Patrol</u>  308 F.3d 523, 534 (6th Cir. 2002) (quoting <u>Village of Arlington Heights v. Metro. Hous. Dev. Corp.</u>, 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).  Further, "[u]nder Goad v. Mitchell, 'district courts must [now] accept as specific, nonconclusory allegations of fact those allegations that provide circumstantial evidence of improper intent.'" <u>Johnson v. Hayden, et al</u>. 2003 WL 21321087 at *4 (6th Cir. 2003) (unpublished) (quoting <u>Goad v. Mitchell</u>, 297 F.3d at 505).  For example, "[d]iscriminatory purpose can be shown through discriminatory application of a government policy."   <u>Leisure v. City of Cincinnati</u>, 267 F. Supp.2d 848, 859 (S.D. Ohio, 2003) (citing <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 373-74, 6 S.Ct. 1064, 30 L. Ed. 220 (1886).

Plaintiffs have alleged that the City of Cincinnati had in place, and the individual defendants followed, a "You call, we haul" policy for white citizens, whereby any white citizen, including those that were "conscious, alert and speaking," that sought ambulance transport to a hospital would receive it notwithstanding the seriousness of their condition.  However, the plaintiffs have alleged that because of the defendants' racial animus, they refused to allow Cathy Tubbs to be transported to a hospital because she was "conscious, alert and speaking."  Thus, defendants subjected Ms. Tubbs to a "conscious, alert and speaking" standard, when whites are transported under a "You call, we haul" policy.

11

Plaintiffs have identified similarly situated white citizens that received preferential treatment from defendants at the same address that defendants responded to on May 29, 2000. Plaintiffs have also identified by a description of their medical conditions and status as similarly situated, additional white citizens that were given preferential treatment by the defendants. Contrary to defendants' unsupported contentions, plaintiffs have no legal requirement to provide defendants with the full names of the similarly situated individuals in order to survive a motion to dismiss. Defendants may, of course, seek more detailed information regarding plaintiffs' claims in discovery.

Plaintiffs have alleged that Defendants refused to transport Cathy Tubbs when they transported similarly situated white citizens and that said refusal was made because of Ms. Tubbs' race. Ms. Tubbs, because she was black, was refused ambulance service even though she had requested it. Fire fighter Lotz, a paramedic, kept silent and went along with Hoog's refusal to transport or provide continued care, thereby also refusing to transport or provide continued care to Ms. Tubbs. Non-African-Americans, however, were not required to establish that they met an apparently arbitrary "emergency" standard, as determined by a non-paramedic in order to be allowed the "privilege" of being transported to the hospital by City of Cincinnati's gatekeepers. There were no such gatekeepers for white citizens. Defendants' refusal to allow Ms. Tubbs to be transported under these conditions constitutes a violation of Ms. Tubbs' right to equal access to medical services.

Plaintiffs have not only sufficiently pled their case under the applicable "notice" pleading standard of the Federal Rules of Civil Procedure to survive a motion to dismiss, but have alleged specific, nonconclusory allegations of fact that, under any pleading standard, will entitle them to relief if the allegations are born out at trial. Plaintiffs have satisfied their burdens at this stage of

the litigation. See, e.g., Crawford-El v. Britton, 523 U.S. 574 (1998); Goad v. Mitchell, 297 F.3d 497 (6th Cir. 2002).

> **D.**    **Qualified Immunity Does Not Shield Defendants Hoog and Lotz From Liability For Their Intentional Violations of Plaintiffs' Clearly Established Equal Protection Rights.**

Qualified immunity is a doctrine that protects "government officials acting in their official capacities from damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Sixth Circuit has recently stated the test for qualified immunity as follows:

> To determine whether qualified immunity applies, we ask two questions. First, do the facts alleged, when viewed in the light most favorable to the plaintiff, demonstrate that the government official violated the claimant's constitutional rights? *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, in the event a constitutional violation occurred, was the right at issue so clearly established at the time of the incident that a reasonable official should have been aware of its existence? *See id.* at 201- 02.

Lyons v. City of Xenia,  2004 WL 187555, *3 (6th Cir., 2004).

> **1.    Plaintiff's Complaint States a Valid Claim Against Defendants For Violation of Cathy Tubbs' Right to Equal Access to Medical Care and Services as That Granted to Similarly Situated White Citizens under the Equal Protection Clause.**

For the reasons already stated, plaintiffs have alleged facts which, when viewed in the light most favorable to the plaintiffs, demonstrate that defendants violated Cathy Tubbs' constitutional right to equal access to medical care and services.  See Section B, *supra*.

**2.    Cathy Tubbs' Right to Equal Access to Medical Care Was
Clearly Established In May of 2000.**

"For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, … but it is to say that in light of pre-existing law the unlawfulness must be apparent."  Hope v. Pelzer 536 U.S. 730, 739 (2002) (citations omitted).  "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful." Pelzer at 740-741 (quoting U.S. v. Lanier quoting Anderson v. Creighton).  Thus, "…officials can still be on notice that their conduct violates established law even in novel factual circumstances.  Indeed in Lanier, we expressly rejected a requirement that previous cases be 'fundamentally similar'." Pelzer at 741.  The "salient question" [Pelzer] is whether the state of the law [at the time of the violation] gave the defendants fair warning that their alleged treatment of the plaintiff was unconstitutional.  Id.

"Few principles of law are more firmly stitched into our constitutional fabric than the proposition that a State must not discriminate against a person because of his race…." Adickes v. S. H. Kress & Co. 398 U.S. 144, 150-151, 90 S.Ct. 1598 (1970).  "The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." DeShaney v. Winnebago County Dept. of Social Services 489 U.S. 189, 197, 109 S.Ct. 998, 1004 (1989) (citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)).  The "discriminatory denial of state services is a clear deprivation of a Constitutional "right or privilege." Brown-Alleyne v. White, 1999 WL 1186809, *4 (E.D.N.Y., 1999) (Citing DeShaney, 489 U.S. at 197 n. 3).

There can be no question but that in May of 2000, the defendants were on notice that it was unlawful to refuse to allow a black citizen to be transported to a hospital, or to receive emergency medical services *en route* to a hospital because the citizen is black, when similarly situated white citizens are transported and provided with emergency medical care without question.  No reasonable officer could honestly doubt that such actions would violate the clearly established right of Ms. Tubbs to have the same access to medical transportation and treatment as that enjoyed by Cincinnati's white citizens.

> **E.     Plaintiffs' Complaint States A Valid Claim For Intentional Infliction of Emotional Distress Under Ohio Law**

Ohio courts recognize two distinct causes of action for the intentional infliction of emotional distress.

First, Ohio recognizes an actionable form of emotional distress based on public policy, in cases where the relationship of the parties creates a situation where the plaintiff is entitled to protection by the defendant.  Derungs v. Wal-Mart Stores, Inc., 162 F.Supp.2d 861, 869 - 870 (S.D. Ohio, 2001); Meyers v. Hot Bagels Factory, Inc., 131 Ohio App.3d 82, 721 N.E.2d 1068 (1999); Fisher v. Am. Red Cross Blood Serv., 139 Ohio App.3d 658, 662-663, 745 N.E.2d 462,465(Ohio App. 3 Dist., 2000).  "For reasons of public policy and because of the relationship between the parties, the law gives the plaintiff redress for mental distress and humiliation caused by the defendant's insulting conduct."  Fisher v. Am. Red Cross Blood Serv., 139 Ohio App.3d 658, 662, 745 N.E.2d 462, 465 (Ohio App. 3 Dist., 2000) (citing Meyers v. Hot Bagels Factory, Inc., 131 Ohio App.3d 82, 721 N.E.2d 1068 (1999) (holding that trial court's denial of defendant's JNOV motion was warranted when emotional distress claim is based upon defendant restaurant owner making sexual comments to plaintiff-customer); see also, Phillips v. Mufleh, 95 Ohio App.3d 289, 642 N.E.2d 411 (Ohio App. 6 Dist., 1994) (plaintiff had viable claim for

intentional infliction of emotional distress as a matter of public policy as a result of the defendant hotel operator unlawfully denying the plaintiff access to a room because he had AIDS)).  "Where one is in a situation in which he is entitled to protection from another, such as would be due to a guest from an innkeeper, to a patron from a theater, or to a passenger from a common carrier, he may recover for any injuries, including fright and terror, which result from a willful breach of duty, insult or unlawful treatment."  Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America,  6 Ohio St.3d 369, 373, 453 N.E.2d 666,670 (1983) (quoting Bartow v. Smith, 149 Ohio St. at 306, 78 N.E.2d 735 (citing Cincinnati Northern Traction Co. v. Rosnagle, an Infant, 84 Ohio St. 310 (1911)).  Under this first cause of action, defendants need not cause severe or extreme emotional distress, but may recover for fright, shock; mental distress or humiliation.  Cincinnati Northern Traction Co. v. Rosnagle,  84 Ohio St. 310, *318-319, 95 N.E. 884, 885 - 886 (1911);  Fisher v. Am. Red Cross Blood Serv.,  139 Ohio App.3d 658, 662, 745 N.E.2d 462,**465 (Ohio App. 3 Dist.,2000); Meyers v. Hot Bagels Factory, Inc., 131 Ohio App.3d 82, 721 N.E.2d 1068 (Ohio App. 1 Dist. 1999).

Second, Ohio recognizes a claim for "intentional infliction of serious emotional distress." Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America, 6 Ohio St.3d 369, 373, 453 N.E.2d 666, 670 (1983).  This cause of action does not require a special relationship, but the defendants' actions must be "outrageous" and cause "serious" emotional distress.  "[I]n order to recover on a claim for intentional infliction of emotional distress, a plaintiff must prove that '(1) the defendant either intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

(3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.'" <u>Meyers v. Hot Bagels Factory, Inc.</u> 131 Ohio App.3d 82, 93, 721 N.E.2d 1068, 1075 - 1077 (Ohio App. 1 Dist., 1999) (quoting <u>Ekunsumi v. Cincinnati Restoration, Inc.</u>, 120 Ohio App.3d 557, 562, 698 N.E.2d 503, 506 (1997)).

Plaintiffs have alleged facts sufficient to state claims under both theories of recovery. Plaintiffs have alleged that the defendants, with full awareness of Miss Tubbs' recent medical history, her shortness of breath, general weakness and her fear for her life, chose to refuse to allow her to be transported to a hospital because of her race. With Cathy's mother on her knees pleading for their help, defendants derided and ridiculed her family members, in front of Ms. Tubbs, for not caring enough about Miss Tubbs to take her to the hospital themselves. With an ambulance waiting outside, with all of the means necessary to both transport Ms. Tubbs to the Hospital, and to care for her en route, rather than allowing the provision of care and assistance during transport, the defendants outright refused to allow Ms. Tubbs to be transported to the hospital. Defendants' refusal was made notwithstanding Ms. Tubbs' deteriorating condition, her continuing shortness of breath, weakness and now, severe emotional distress, and intensified fear for her life because the trained paramedics and emergency personnel that she had called and assumed would care for her (with emergency equipment and an ambulance at the scene) were refusing her access to medical care.

Plaintiffs have stated a claim under both theories of intentional infliction of emotional distress under Ohio law.

      **F.**    **Defendants are Not Entitled to Qualified Immunity For Their Intentional Infliction of Emotional Distress Under Ohio's Grant of Statutory Immunity To State Officers For Negligent Acts.**

          **1.**    **There Is No Heightened Pleading Standard Requirement When Defendants Claim Statutory Immunity**

As noted above, the law is clear that there is no heightened pleading requirement where a defendant asserts a qualified immunity defense under federal law. See, e.g. Swierkiewicz; Crawford-El; Johnson v. Hayden, et al.. Notwithstanding the clear, binding authority to the contrary, however, defendants not only seek to impose such a requirement with regard to plaintiffs' federal claims, but go on to argue, without any authority for the proposition, that such a "heightened pleading standard" should be extended to apply in the case of defendants' claim of immunity under Ohio state law (O.R.C. § 2744) as well. Defendants' invitation to this Court to create such a standard must be rejected.

          **2.**    **Ohio Revised Code Section 2744 Doesn't Grant Defendants Immunity From Suit For Their Intentional Harms**

The defendants' claim that they are immune from suit for plaintiffs' intentional infliction of emotional distress claims under Ohio Revised Code Section 2744 is entirely without merit. Section 2744 provides immunity to state officials for mere negligence. See Ohio Rev. Code § 2744.03. Plaintiffs are not alleging that defendants' conduct merely fell below the standard of care, though it clearly did. Rather, plaintiff's complaint alleges that plaintiffs *intentionally* and *willfully* discriminated against Ms. Tubbs because of her race, and not only refused her medical transport when they had and did transport similarly situated white citizens, but *intentionally* caused Ms. Tubbs and Janie Samuels to suffer extreme emotional distress, *knowingly* caused Ms. Tubbs to fear for her life, by effectively holding their ability to assist Ms. Tubbs over her head, and *purposely* derided her family for not helping her sooner, when defendants themselves

18

continued to refuse to transport her to a hospital. The defendants were aware of Cathy Tubbs' medical condition, including her pulmonary hypertension, but intentionally escalated their encounter into a confrontation in which they sought to humiliate and deride Ms. Tubbs and her family. At a bare minimum, defendants acted recklessly with regard to the harm that would and did in fact occur. Thus, defendants cannot hide behind section 2744 for protection from liability for their intentional infliction of emotional distress on the plaintiffs in this case. Ohio Rev. Code § 2744.03(A)(6)(b) (no immunity where "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to dismiss be denied.

Respectfully submitted,

/s/ Barbara Bison Jacobson
Barbara Bison Jacobson (0014190)
Vorys, Sater, Seymour and Pease LLP
221 East Fourth Street, Suite 2000
P.O. Box 236
Cincinnati, Ohio 45202
Telephone – (513) 723-4016
Facsimile – (513) 852-8481

Trial Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2004, I electronically filed the foregoing with the Clerk of Court using the CM/ECF which will send notification of such filing to Geri Hernandez Geiler, Sr. Assistant City Solicitor, Room 214 City Hall, 801 Plum Street, Cincinnati, Ohio 45202.

/s/ Barbara Bison Jacobson
Barbara Bison Jacobson

09/13/2004 - 501384.3