UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JANIE SAMUEL, Adm. of Estate** : | Case No. C-1-02-378 | |
| of Cathy Lynn Tubbs, et al., : | | |
| | **Judge Dlott** | |
| PLAINTIFFS : | | |
| | **DEFENDANTS' MEMORANDUM** | |
| v. : | **IN REPLY TO PLAINTIFFS'** | |
| | **MEMORANDUM OPPOSING** | |
| **STEVEN M. HOOG, et al.** : | **DEFENDANTS' MOTION TO** | |
| | **DISMISS** | |
| DEFENDANTS. : | | |

I. **ARGUMENT**

A. **THE COURT MAY TAKE NOTICE OF THE MEDICAL RUN REPORT BECAUSE THE INFORMATION IN IT UPON WHICH DEFENDANTS RELY IS NON-MEDICAL INFORMATION.**

The medical records exception to the definition of what constitutes a public record

provides:

> **"Medical record" means any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment.**

Ohio R. C. § 149.43(A)(3). But the Ohio Attorney General has opined:

> Information on a run sheet that satisfies the medical records exception of RC § 149.43(A)(1)(a), but that is not also subject to the exception of RC § 149.43(A)(1)(p), may be released to the public in response to a public records request**, but a county EMS organization is under no obligation to do so: OAG No. 99-006 (1999). [Emphasis added].**

[and] . . .

> When a run sheet is created and maintained by a county emergency medical services (EMS) organization, **all information on the run sheet that does not**

>**satisfy either the medical records exception**, RC § 149.43(A)(1)(a), or the exception for "records the release of which is prohibited by state or federal law," RC § 149.43(A)(1)(p), is a public record and must be disclosed pursuant to RC § 149.43(B).  [Emphasis added].

OAG No. 99-006 (1999).  Ohio R. C. § 149.43(A)(1)(p) provides in relevant part:  "'Public record' does not mean . . . Peace officer, firefighter, or EMT residential and familial information; it does not apply in the instant case.  Thus, on a medical run sheet, only information pertaining to the medical history, diagnosis, prognosis, or medical condition of a patient is covered by the "medical records" exception, and all other information is a public record and may be disclosed.

Plaintiffs, urging the court to not take notice of the medical run report submitted by Defendants, hyperbolically declare:  "Defendants even go so far as to take the extraordinary step of attaching a document that purports to be a 'medical run report' filled out by one or more of the Defendants, and assert and rely upon the truth of these statements."  (Pl. Memo. in Opp., 6).  However, Plaintiffs do not indicate which of "these statements" on the medical run report Defendants assert and rely upon.  Indeed, the only "statement" that Defendants rely upon is the "statement" of the time that the firefighters arrived on the scene and the time that they transported Ms. Tubbs.  (See Def. Motion to Dismiss, 3).  This is clearly not information pertaining to "the medical history, diagnosis, prognosis, or medical condition" of Ms. Tubbs.  Defendants do not rely on the medical run report for an assessment of Ms. Tubbs' medical condition.  Neither do Defendants rely on the medical run report for any statements attributable to FF Hoog or FF/Paramedic Lotz.  Nowhere except in reference to the times of arrival and transportation do Defendants cite to the medical run report.  These are the only "adjudicative facts" of which Defendants ask the court to take notice on this Motion, and they are not covered by the "medical records" exception.  Nor does Plaintiff dispute the times stated by Defendants.  So they are not at issue, and need not be "construed in favor of" Plaintiff.

The medical run report is used by Defendants only to show the time of arrival of the firefighters and the time that Ms. Tubbs was transported. There is no medical component to this information, and this court should therefore take notice of the "medical run report."

### B.    PLAINTIFFS FAIL TO STATE AN EQUAL PROTECTION CLAIM

**1.    This court should require Plaintiffs to produce specific, nonconclusory factual allegations of improper motive because this is a case in which Plaintiffs must prove wrongful motive and in which Defendants have raised the affirmative defense of qualified immunity.**

In Goad v. Mitchell, 297 F.3d 497, 503 (6th Cir. 2000), the Sixth Circuit cautioned:

> . . . although Crawford-El invalidates Veney's circuit-created heightened pleading requirement, Crawford-El permits *district courts* to require plaintiffs **to produce specific, nonconclusory factual allegations of improper motive** before discovery **in cases in which the plaintiff must prove wrongful motive and in which the defendant raises the affirmative defense of qualified immunity**. We emphasize, however, that the Supreme Court in Crawford-El was motivated by the particular problem raised by the conjunction of constitutional claims that require proof of improper motive and the doctrine of qualified immunity, which is "an entitlement not to stand trial or face the other burdens of litigation." [Citation omitted]. We therefore do not believe that district courts should require plaintiffs to produce specific, nonconclusory factual allegations of improper motive **in cases in which improper motive is not at issue or in which qualified immunity cannot be raised as an affirmative defense**. [Emphasis added; italics in original].

Goad, 297 F.3d at 504-505. Notwithstanding Crawford-El's invalidation of heightened pleading requirements in improper motive cases, the court imposed a duty on district courts to require plaintiff's to produce specific, nonconclusory factual allegations of improper motive in cases in which there was a confluence of an allegation of improper motive by the plaintiff *and the invocation of qualified immunity by the defendant*.

> The court articulated the rationale for its imposition of this duty in such cases:
>
> The Supreme Court in Crawford-El did, however, reiterate that in cases in which qualified immunity is raised as an affirmative defense, "'firm application of the Federal Rules of Civil Procedure is fully warranted' and may lead to the prompt disposition of insubstantial claims." Crawford-El, 523 U.S. at 597. [Citation

> omitted]. The Court further stated that "when a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings." 523 U.S. at 597-98. In such cases, the Court explained that district courts "may order a reply to the defendant's or a third party's answer under Federal Rule of Civil Procedure 7(a), or grant the defendant's motion for a more definite statement under Rule 12(e). **Thus, the court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment**." 523 U.S. at 598. [Citation omitted]. [Emphasis added].

Goad, 297 F.3d at 504. Thus, in a case in which the plaintiffs allege improper motive and the defendants raise qualified immunity as an affirmative defense, the plaintiffs, in order to survive a motion to dismiss, must put forward specific, nonconclusory factual allegations that establish improper motive.

This is just such a case. Plaintiffs allege that Defendants treated them differently because they were Black rather than White; this is an allegation of improper motive. Defendants have raised the affirmative defense of qualified immunity. The very confluence of circumstances that the Goad court contemplated is present here. In light of the standard delineated by the Sixth Circuit in reference to improper motive cases in which the defendant raises the qualified immunity defense, Plaintiffs' reliance on a knee-jerk and repeated invocation of "notice" pleading is futile; the Sixth Circuit's standard is the appropriate one. Therefore, to survive Defendant's Motion to Dismiss, Plaintiffs must put forward specific, nonconclusory factual allegations that establish improper motive.

**2.    Plaintiffs have not put forward specific, nonconclusory factual allegations that establish improper motive on their Equal Protection Claim.**

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." (Pl. Memo. in Opp., 11, (citing City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 440 (1985); Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). As Defendants pointed out in their Motion to Dismiss, the Sixth Circuit, in reviewing equal protection claims, has laid a heavy emphasis on plaintiffs identifying similarly situated individuals who were treated differently. (See Def. Motion to Dismiss, 8-9). Defendants summarized three cases, Buchanan v. City of Bolivar, 99 F.3d 1352 (6th Cir. 1996), Nicholson v. City of Westlake, 76 Fed. Appx. 626 (6th Cir. 2003), and Ross v. Duggan, 2004 U.S. App. LEXIS 10106 (attached to Def. Motion to Dismiss) in which the Sixth Circuit has dismissed equal protection claims because a plaintiff failed to identify a *specific* similarly situated individual who was treated differently than the plaintiff. Defendants noted that in Ross, "the court . . . recently held that the plaintiff's failure to 'identify, either in the Amended Complaint or in the plaintiffs' opposition to the summary judgment motion *any* specific taxicab operator[,]' . . . who received comparably favorable treatment invalidat[ed] his claim for equal protection." (Def. Motion to Dismiss, 9 (citing 2004 U.S. App. LEXIS 10106 at *33-34 (itself citing Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000); Nordinger v. Hahn, 505 U.S. 1, 11, 112 S.Ct. 2326 (1992). Defendants also remarked: "[t]he Sixth Circuit explained that if the plaintiff had such information, he should have included it in the amended complaint and that '[i]f he did *not possess* such information (as is evidently the case), any discovery on the subject would have constituted an unjustified fishing expedition.'" (Def. Motion to Dismiss (citing Ross, at 34)).

Defendants then proceeded to argue that Plaintiff failed to specifically identify any similarly situated White individual who was treated differently by the defendant firefighter. (Def. Motion to Dismiss, 9). Defendants contended that, pursuant to Ross, if Plaintiffs had such information, they should have referenced it in their First Amended Complaint, and that Plaintiffs' failure to identify such a similarly situated individual rendered Plaintiffs' First Amended Complaint deficient. (Def. Motion to Dismiss, 9-10).

Plaintiffs, even in their Memo. in Opp., do not name a single similarly situated individual who was treated differently than them. Instead, they conclusorily state that they "have identified similarly situated white citizens that [sic] received preferential treatment from defendants, and maintain that they have "no legal requirement to provide defendants [sic] with the full names of similarly situated individuals in order to survive a motion to dismiss." (Pl. Memo. in Opp., 12). Plaintiffs' refusal to provide specific names flouts both the settled law in this Circuit as stated in Ross, as well as the "firm application of the Federal Rules of Civil Procedure" to require that a plaintiff "put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment" in a case in which the plaintiffs allege improper motive and the defendants raise qualified immunity as an affirmative defense. Goad, at 504, 505.

In their Motion to Dismiss, Defendants noted that "[i]t is the plaintiff who possesses the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner." (Pl. Memo. in Opp. 8 (citing Gillard v. Norris, 857 F.2d 1095, 1101 (6th Cir. 1988)). Plaintiffs do not dispute that they bear the burden, they just decline to even attempt to meet that burden by alleging the *single fact* of a specific named individual who was similarly situated to Ms. Tubbs who was treated disparately. In light of Plaintiffs' failure to provide even this solitary

fact that is necessary to make out their Equal Protection claim, their insistence that they have "alleged specific, nonclusory allegations [sic] of fact" rings hollow. Because, even accepting the facts stated by Plaintiffs as true for the purposes of this Motion, the salient point is that Plaintiffs have not put forward "specific, nonconclusory factual allegations" that substantiate their Equal Protection claim. Therefore, Plaintiffs' Equal Protection claim should be dismissed.

### C.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

When a government official asserts the defense of qualified immunity, courts must engage in a two-part sequential determination. The first step is to determine whether "[t]aken in the light most favorable to the party asserting the injury, **do the facts alleged** show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, at 202, 121 S.Ct. 2151 (2001)(emphasis added). If no constitutional right would have been violated *based on the facts alleged*, the court need not inquire further. Id. at 202. However, if the facts do allege a violation of a constitutional right, then the second step is to determine whether the right is clearly established at the time in question. Id. at 201. This second step is an enquiry which "must be undertaken in light of the the specific context of the case, not as a broad general proposition." Id. A constitutional right is "clearly established," if the law is clear in regard to the official's particular actions in the particular situation." Long v. Norris, 929 F.2d 1111, 1114 (6th Cir. 1991), cert. denied 502 U.S. 863 (1991); see also, Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1996)(holding that "for a plaintiff to make a successful 1983 claim, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right'" (quoting Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992)).

Taken in the light most favorable to the Plaintiffs, the facts they allege do not show that the firefighters' conduct violated a constitutional right. And even if this court finds that the facts

alleged do show that the violation of a constitutional right, the right alleged was not clearly established, as to the particular situation that the firefighter faced, at the time the alleged violation occurred.

### 1. The facts alleged by Plaintiffs do not show that Plaintiffs suffered a constitutional violation.

The underlying constitutional claim that the court must consider in its determination of whether the Defendant firefighters are entitled to qualified immunity is Plaintiff's Equal Protection claim, which was addressed at length above. See Section B, *supra*. Defendants showed that Plaintiffs have not alleged the critical fact of a specifically-named similarly-situated party to Plaintiffs who was treated differently than Plaintiffs. Instead, Plaintiffs have rested on the extremely conclusory allegations of "whites with similar or less serious conditions than Cathy Lynn Tubbs' condition."

Furthermore, Plaintiffs do not dispute that the delay that occurred because of the alleged confrontation was **at most** 17 minutes; for even if there had been no "confrontation," surely the firefighters' evaluation of Ms. Tubbs would have taken a good 5-10 minutes. And Plaintiffs do not allege that Defendants' conduct in any way contributed to the death of Ms. Tubbs. Moreover, Ms. Tubbs was transported to the hospital of her choice and did receive medical care. A mere 17-minute or less delay, which even Plaintiffs do not maintain contributed to Ms. Tubbs' death, hardly amounts to a constitutional violation.

Plaintiffs have not made out a constitutional claim. There is no need for this court to move to the second step of the qualified immunity test; Defendants are entitled to qualified immunity.

> **2.**   **Plaintiffs cannot show that the right they allege was violated was clearly established.**
>
> **a.**   **The right that Plaintiffs defined in their First Amended Complaint was not clearly established.**

Even if this court finds that Plaintiffs have made out a constitutional claim, Plaintiffs cannot show that the right asserted in their First Amended Complaint was so "clearly established" that a reasonable official would have understood, at the time that right was allegedly violated, that what he was doing violated that right. "Clearly established" in the context of the qualified immunity inquiry "depends largely 'upon the level of generality at which the relevant 'legal rule' is to be established.' Wilson v. Layne, 526 U.S. 603, 614-615, 119 S. Ct. 1692; 143 L. Ed. 2d 818 (1999)(quoting Anderson v. Creighton, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)).

> "Clearly established" for purposes of qualified immunity means that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Id. at 615 (quoting Anderson, 483 U.S. at 640 (internal citations omitted); see also United States v. Lanier, 520 U.S. 259, 270, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997). "However," the court stated, "as we explained in Anderson, the right allegedly violated must be **defined at the appropriate level of specificity** before a court can determine if it was clearly established. Id. at 615 (quoting Anderson, 483 U.S. at 641; emphasis added). The Court then stated that the right in question in the case was "whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful, in light of clearly established law and the information the officers possessed." The Court held that even though the question was not "open and shut . . . it was not unreasonable for a police officer in

April 1992 to have believed that bringing media observers along during the execution of an arrest warrant (even in a home) was lawful."

Plaintiff's First Amended Complaint states in Count 1, its "Civil Rights" claim. that the City of Cincinnati has a policy of "You call, we haul" ambulance transport "without opposition, without argument and without an atmosphere of confrontation." (First Amended Compl. ¶¶ 24-25). Plaintiffs allege that this policy was applied to unidentified White citizens, but not to Ms. Tubbs. (First Amended Compl. ¶¶ 26-34). This was the particular right that Plaintiffs, in their First Amended Complaint, claimed was a civil right, and thus, a constitutional right: the right to ambulance transport "without opposition, without argument and without an atmosphere of confrontation." Furthermore, Defendants had no obligation to shield Ms. Tubbs, an adult, from their frank assessment of her condition. Plaintiffs have submitted no case law demonstrating that what they characterize as the right to ambulance transportation without opposition, without argument, and without an atmosphere of confrontation, was so clearly established, at the time the incident occurred, that a reasonable officer should have known that his actions were unlawful.

      **b.**      **Plaintiffs now assert an altogether different right than that asserted in their First Amended Complaint.**

Instead of adhering to the right they asserted in their First Amended Complaint, Plaintiffs, perhaps because they realize that the right they asserted was not established at the time the incident occurred, fabricate, in their Memo. in Opp, an altogether different right that they allege was violated: "the right to equal access to medical care." (Memo. in Opp. 14). However, this was not the right asserted by Plaintiffs in their First Amended Complaint. Indeed, there is nothing in the First Amended Complaint that alleges any deficiency in Defendants' provision of medical care to Ms. Tubbs. Ms. Tubbs was provided transport to the hospital of her choice; Ms. Tubbs did receive medical care; Plaintiffs do not allege that Defendants in any way contributed

to or hastened Ms. Tubbs' death due to deficiencies in their provision of medical care to Ms. Tubbs.   Plaintiffs, in their Memo. in Opp., assert an altogether different right than they asserted in their First Amended Complaint. Even if this right were cognizable as "clearly established" under the qualified immunity test, Plaintiffs should not be allowed to assert this new claim now, after they realize the deficiency in their original claim.

Plaintiffs have not shown that the right they asserted in their First Amended Complaint, Ms. Tubbs' right to ambulance transport "without opposition, without argument and without an atmosphere of confrontation," was clearly established at the time of the incident. Neither should they be allowed to now allege an altogether different right that is without support even in their own pleadings. Defendants did not violate a "clearly established" right, and they are therefore entitled to qualified immunity.

### D.  PLAINTIFF'S INTENTIONAL TORT CLAIM AGAINST DEFENDANTS IS BARRED BY R.C. 2744.

R.C. 2744.03(A)(6)(b) provides immunity to government employees unless the employees' acts were committed with malicious purpose, in bad faith, or in a wanton or reckless manner. In the instant case, despite invoking the various standards randomly and conclusorily, Plaintiffs do not meet their burden of showing that the facts as alleged would show that Defendants were acting with malicious purpose, in bad faith, or in a wanton or reckless manner.

"Malicious" means indulging or exercising malice, harboring ill will or enmity. Teramano v. Teramano (1966), 6 Ohio St.2d 117, 188, 216 N.E.2d 375, 377. "Malice" is the willful intention and design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. Jackson v. Butler Cty. Bd. of Commrs. (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363, citing Bush v. Kelley's Inc. (1969), 18 Ohio St.2d 89, 92, 247 N.E.2d 745. Plaintiffs cannot show malicious purpose. They do not

contend that Defendants had any intention to cause serious harm to Ms. Tubbs. Plaintiffs do not contend that Defendants' conduct in any way contributed to or hastened Ms. Tubbs' death. Even accepting Plaintiffs' characterization of the facts, Defendants' conduct was not malicious.

Neither was Defendants' conduct "reckless." "Reckless" conduct is defined as conduct committed knowing or having reason to know of facts which would lead a reasonable man to realize not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. Cater v. City of Cleveland (1998), 83 Ohio St.3d 24, 29, 697 N.E.2d 610, citing Marchetti v. Kalish (1990), 53 Ohio St.3d 95, 96, 559 N.E.2d 699, 700 (additional citations omitted). The firefighters' conduct, in discussing her condition candidly with Ms. Tubbs, momentary reluctance to transport Ms. Tubbs based on their opinion that the situation was not an emergency, and their less than 17-minute delay in transporting Ms. Tubbs can hardly be considered reckless. Plaintiffs cannot show that this conduct created an unreasonable risk of physical harm to Ms. Tubbs; indeed Plaintiffs do not contend that Defendants' conduct was in any way causative of Ms. Tubbs' death. Thus, Defendants' conduct cannot be considered "reckless."

"Wanton" misconduct has been defined as conduct whereby an individual "'fails to exercise any care whatsoever toward those to whom he owes a duty of care, and this failure occurs under circumstances in which there is a great probability that harm will result.'" McKinney v. Hartz & Restle Realtors (1987), 31 Ohio St.3d 244, 246, 510 N.E.2d, quoting Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 118-119, 363 N.E.2d 367, syllabus. Again, even accepting Plaintiffs' characterization of the facts, they do not contend that Defendants exercised no care whatsoever on Ms. Tubbs' behalf. And Plaintiffs' failure to implicate Defendants in Ms.

Tubbs' death strongly implies that Plaintiffs do no contend that the circumstances in which Defendants' conduct occurred were such that Defendants should have know that a great probability of harm would result from their conduct. Defendants' conduct cannot be viewed as "wanton."

Since Plaintiffs cannot establish that Defendants' conduct was malicious, reckless, or wanton in regards to Ms. Tubbs' claims, they also cannot establish those claims as to Ms. Samuel, who was merely a bystander.

Because Plaintiffs cannot show that Defendants conduct was malicious, reckless, or wanton, Defendants, under R.C. 2744.03, retain their immunity from suit for their alleged intentional torts.

## II.     CONCLUSION

For the foregoing reasons, Plaintiffs' opposition to Defendants' Motion to Dismiss is without merit, and Defendants' Motion should be granted.

                                       Respectfully submitted,

                                       **JULIA L. McNEIL (0043535)**
                                       City Solicitor

                                       /s/: *Geri Hernandez Geiler*
                                       **GERI HERNANDEZ GEILER** (0042081)
                                       Sr. Assistant City Solicitor
                                       Room 214 City Hall
                                       801 Plum Street
                                       Cincinnati, Ohio  45202
                                       Ph. (513) 352-3334
                                       geri.geiler@cincinnati-oh.gov
                                       *Trial Attorney for Defendants*
                                       *Firefighters Hoog and Lotz*

CERTIFICATE OF SERVICE
BY ELECTRONIC FILING

I hereby certify that on October 4, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Barbara Bison Jacobson.  I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  **n/a**.

/s/: *Geri Hernandez Geiler*
**GERI HERNANDEZ GEILER** (0042081)
Sr. Assistant City Solicitor
Room 214 City Hall
801 Plum Street
Cincinnati, Ohio  45202
Ph. (513) 352-3334
geri.geiler@cincinnati-oh.gov