IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANIE SAMUEL, | : | |
| AS ADMINISTRATOR OF | : | Case No. C-1-02-378 |
| THE ESTATE OF | : | |
| CATHY LYNN TUBBS, et al., | : | Judge Watson |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -vs- | : | |
| | : | |
| STEVEN M. HOOG, et al., | : | **PLAINTIFFS' REPLY** |
| | : | **MEMORANDUM IN SUPPORT OF** |
| Defendants | : | **MOTION TO STRIKE AFFIDAVIT** |
| | : | **OF TOM LAKAMP** |
| | : | |

**I.     PRELIMINARY STATEMENT**

The "Certification of Public Records" and the attached run report filed with the Defendants' Motion to Dismiss should not be considered by the Court. The arguments set forth in Defendants' Memorandum in Opposition to Plaintiffs' Motion to Strike ("Memorandum in Opposition") are wholly irrelevant because: (1) Defendants' arguments rely almost exclusively on Ohio law, despite the fact that federal law, not state law, governs this Court's proper consideration, if any, of these documents or statements therein; and 2) even if the instant issue were a question of state law, Defendants' arguments incorporate information that is similarly inapplicable to an analysis under Ohio authority. Moreover, by entering the run report in its entirety and without redacting certain information contained therein, Defendants violate federal law, the local rules of this Court, and the Cincinnati Fire Departments Notice of Health Information Practices policy. Through counsel, Defendants continue, even in death, to treat the decedent with a lack of respect and dignity.

1

## II.   LAW AND ARGUMENT

In their Memorandum in Opposition, Defendants inexplicably spill considerable ink arguing that the run report should be admissible under Ohio law. In their effort to convince the Court that it should consider the run report, Defendants rely on the Ohio statutory definition of "public records." (Def. Memo. in Opp., 1-2). No authority need be cited for the proposition that such a definition is irrelevant to whether the Court should consider the document in a federal court proceeding. Even under Ohio evidence law, the statute to which Defendants refer is irrelevant. Defendants' arguments are not only unfounded in the law, but are also wholly irrelevant. It is axiomatic that the Federal Rules of Evidence are to be applied in the federal courts. In short, Defendants have failed entirely to address the issues presented by Plaintiffs in their Motion to Strike.

In spite of defense counsel's tortuous attempt at convincing the Court that the run report is a public record under state law, an attempt that mysteriously includes a diversion into whether or not the residential and familial information of firefighters or emergency medical technicians are public records, we are at square one. The run report should not be considered in ruling on Defendants' Motion to Dismiss because: (1) the matters stated therein are irrelevant to a determination of whether or not the allegations of Plaintiffs' Amended Complaint are sufficient to state a claim for relief; (2) the statements relied upon by Defendants in the run report are inadmissible hearsay, (3) the run report is not the type of resource appropriate for judicial notice; and (4) Defendants' disclosure of the run report in its entirety is a violation of federal law.

1) **The Run Report and Matters Stated Therein Are Irrelevant In the Context of Defendants' Motion to Dismiss**

The run report attached to Defendants' Motion to Dismiss is simply irrelevant at this stage of the proceedings. As discussed more fully in Plaintiffs' Motion to Strike, a motion under Rule 12(b)(6) is a challenge to the sufficiency of the allegations of a plaintiff's complaint to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); Varljen v. Cleveland Gear Co., Inc., 250 F.3d 426, 429 (6th Cir. 2001) (citations omitted). In deciding the motion, the Court must accept as true all allegations in the Plaintiffs' Amended Complaint, viewing those allegations in the light most favorable to the party opposing the motion. See, Great Lakes Steel v. Deggendorf, 716 F.2d 1101, 1105 (6th Cir. 1983).

By defense counsel's own admission, Defendants introduce the run report in order to establish the amount of time that Defendants were on the scene. See Memo. in Opp. at 2. The amount of time that Defendants were on the scene is not relevant to the *legal* determination that a *claim* for a civil rights violation or a *claim* for intentional infliction of emotional distress has been *pleaded*. Perhaps at some stage of the proceedings, it may be appropriate to argue the *factual* question of how much time Defendants spent at the scene. However, the amount of time that Defendants spent violating Plaintiffs' constitutional rights and intentionally causing Plaintiffs to suffer severe emotional distress is simply not relevant at this stage of the proceedings.

2) **The Statements Relied Upon by Defendants are Inadmissible Hearsay.**

Defendants have offered the run report into the record in order to rely on the facts contained therein to support their motion. Defense counsel would like to minimize the importance of such an admission by stating that she only seeks to introduce it to illustrate the

amount of time that Defendants were on the scene of the emergency call. (Def. Memo. in Opp., 2). It is plain that she is seeking to admit the document in order to prove the truth of the facts contained therein. When a party seeks to admit an out-of-court statement in order to prove the truth of the matter asserted, in this case the amount of time at issue, it is hearsay. F.R.E. 801(c). Defendants then must rely on an exception to the hearsay rule in order for the Court to find the statement admissible.

It appears that Defendants seek to rely on the exception contained in Rule 803(8), commonly known as the public records exception. This exception provides, in pertinent part, that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report" are admissible. See 803(8)(B). There is a further exception to the exception, however, contained in the last sentence of the rule, which provides that such evidence will not be admissible if "the sources of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

The reasoning behind Rule 803(8) is underscored by the exception to the exception. The public records exception is based upon the assumption that public officers will perform their duties and that they lack motive to falsify. Wright & Miller, 30B Federal Practice and Procedure § 7049 (2004); see also, Reynolds v. Green, 184 F.3d 589, 596 (6th Cir. 1999). Thus, when the record casts doubt upon the assumption that the public officers making the record or report will fulfill their duty properly, the public records exception should not apply. This is required by the exception contained in Rule 803(8). See Fed. R. Evid. 803(8); see also, Thompson v. Office and Professional Employees Intern. Union, AFL-CIO, 74 F.3d 1492, 1506 (6th Cir. 1996).

Beyond the irrelevance of the run report and the matters contained therein in the context of Defendants' pending Motion to Dismiss, there are a number of additional problems with the run report. First, the public records exception requires that the document be filled out by a party with a legal obligation to do so either with first-hand knowledge of the facts contained therein or that the record be completed by someone under the obligation to do so and to whom the facts were transmitted by a party with first-hand knowledge who is under an obligation to transmit such facts for the record. See Fed. R. Evid. 803(8). Because it is unclear who filled out the run report, it is not clear that this report satisfies even this threshold requirement of the rule. Although Tom Lakamp's affidavit appears to be an attempt to certify the run report as a "public record," the determination of whether the run report is a public record for purposes of federal evidence law is a legal conclusion for the Court and not a fact that either Mr. Lakamp nor defense counsel, who presumably drafted the affidavit in addition to acting as the notary thereto, can assert. See Fed. Evid. R. 104(a).

The bare information provided regarding this document does not even include whether Mr. Lakamp is the custodian of this document. The information provided is not sufficient to authenticate the document, much less to establish the admissibility of the hearsay statements contained therein. See Fed. R. Evid. R. 902(4).

Even if the document were to satisfy the threshold requirements of the public record exception, it should still be excluded from consideration on the basis that the statements lack trustworthiness. See Fed. R. Evid. 803(3). The run report was, presumably, either filled out by the Defendants or a party to whom such information was transmitted by the Defendants. Given the facts alleged in Plaintiff's Complaint, which must be construed as true for purposes of a motion to dismiss, it is clear that when Defendants were filling out their report (or giving the

information contained therein), they had, at the very least, "motivational problems" that indicate a lack of trustworthiness. Thompson, 74 F.3d at 1506.

  The run report was completed during and/or after a confrontational encounter with Plaintiff and her family, where Defendants refused to transport Plaintiff to the hospital. See First Amend. Compl. at ¶ 33-34. This confrontation was so charged that it motivated Defendant Hoog, a professional responsible for the emergency medical care of citizens in this community, to instruct the ambulance driver to drive slowly, in spite of the fact that the decedent was suffering from symptoms associated with her confirmed life-threatening illness. See First Amend. Compl. at ¶ 34. The run report was completed after a confrontation so emotional that it involved a mother pleading on her knees for these emergency professionals to take her dying daughter to the hospital. See First Amend. Compl. at ¶ 34. The run report was completed following a confrontation in which Defendant Lotz indicated that if the family cared enough about Ms. Tubbs, they would have taken her to the hospital themselves, rather than calling 911. See First Amend. Compl. at ¶ 34. The run report was completed after Defendant Hoog, having refused to allow Ms. Tubbs to be transported to hospital by ambulance, conceded the basis for his refusal to be based upon race. See First Amend. Compl. at ¶ 34. Perhaps even more tellingly, however, the run report was completed after Defendants learned that one of the family members who witnessed Defendants' statements and actions was an attorney, a realization that promptly changed Defendants' position regarding transport of the decedent to the hospital. See First Amend. Compl. at ¶ 34. Given this revelation, and Defendants' reaction to it, Defendants could reasonably have anticipated that litigation may result. They had motive to lie in or exclude information from this "public record," including minimizing the amount of time that elapsed during their refusal to transport and resulting confrontation. There is no greater "motivational

6

problem." The self-serving nature of Defendants' hearsay statements in the run report is exemplified by the complete absence of any mention of their continuing refusal to transport Ms. Tubbs, or their outrageous statements and intentional subjection of the Plaintiffs to ridicule, humiliation and increased fear for Ms. Tubbs' life. The document and Plaintiffs' statements therein are not only irrelevant at this juncture, but because they lack trustworthiness, they must be excluded from consideration.

### 3) The "Run Report" Is Not A Proper Resource For Judicial Notice Because Its Accuracy Is Questionable.

Evidence Rule 201 provides that:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources **whose accuracy cannot reasonably be questioned**.

Fed. R. Evid. 201(b) (emphasis added).

For all the same reasons discussed in support of the exclusion of the run report as inadmissible hearsay, it is not a resource that is appropriate for taking judicial notice. Specifically, this run report's accuracy is, at a minimum, questionable. It is an understatement that Defendants had sufficient motivation to fabricate or exclude information from the run report. This throws the information contained in the run report into serious doubt.

Although the Court may take judicial notice of public records when the records are completed by a disinterested third-party, it is hardly appropriate to take Defendants' word that they accurately completed their run report. The run report is simply an inappropriate document of which to take judicial notice.

    **4)**     **The "Run Report" Should Be Stricken Because it Improperly Includes Information That Should Have Been Redacted Or Otherwise Protected From Public Disclosure.**

By filing the run report in the manner that they have, Defendants are in violation of the local rules of this Court as well as federal law.

Southern District Local Rule 26.2 provides that parties should avoid unnecessarily memorializing social security numbers and full birth dates, among other things. S.D. Ohio Civ. R. 26.2(a). Emphasizing its purpose to protect against unnecessary disclosure, it provides that:

> A party deeming it essential to file an otherwise proper document containing personal identifying information which may implicate privacy or security concerns may, upon motion, file an unredacted document under seal, which shall be contained by the Court as part of the record.

S.D. R. 26.2(b). In such cases, the rule further provides that only a redacted copy would be available on the Electronic Case Filing system. Id.

Moreover, Defendants are in violation of federal regulations promulgated under the Health Insurance Portability and Accounting Act as well as the Cincinnati Fire Department's own Health Information Practices policy.[1] See 42 U.S.C. § 1130(d) et seq.; see also 45 CFR § 164.502. Federal regulations state that "[a] covered entity[2] may not use or disclose protected health information, except as permitted or required by this subpart or by subpart C of part 160 of this subchapter." 45 CFR § 164.502. The phrase "protected health information" encompasses nearly all individually identifiable health information transmitted or maintained in any form or

---

[1] The Cincinnati Fire Department's privacy practices, entitled Notice of Health Information Practices (attached hereto as Exhibit A) can be found at http://www.cincinnati-oh.gov/cityfire/downloads/cityfire_pdf6672.pdf. The policy provides, in part, that "Federal law requires that the CFD maintain the privacy of [personal and health information]."

[2] The Cincinnati Fire Department implicitly recognizes itself as a covered entity throughout its Notice of Health Information Practices.

medium. See 45 CFR § 160.103. Further, the regulations explicitly provide that the protections contained therein extend to a person even after they are deceased. 45 CFR § 164.502.

If the run report were properly admissible, which the Plaintiff vigorously maintains it is not, the federal regulations provide the guidelines under which such document may be used. Defendants blatantly ignore these protections. For instance, any time disclosure is necessary, "a covered entity must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 CFR § 164.502. Defendants' actions, which resulted in the unnecessary, wholesale posting of this document on a public website, make a mockery of this requirement. Defense counsel essentially acknowledges in her Memorandum in Opposition that the health information need not have been included at all. See Memo. in Opp. at 2.

It is not clear how a full, unredacted copy of the run report could end up in the hands of Defendants without HIPAA being violated. The subsequent indiscriminate public filing of the document with this Court, without any attempt to protect the privacy of the information contained therein, constitutes an additional violation of HIPAA and the regulations promulgated thereunder. See, e.g., 42 U.S.C. § 1330(d) et seq.; see also 45 CFR § 164.512 (governing the use of protected information in judicial proceedings). Defendants should not be able to take advantage of a document that has only ended up in the record through a violation of federal law, and it should be stricken.

### III. CONCLUSION

The run report that the Defendants have submitted for consideration in connection with Defendants' Motion to Dismiss, is inadmissible hearsay evidence and is not appropriate for judicial notice because it is inherently untrustworthy. Moreover, by obtaining and admitting the

run report into the record in the manner in which they have, Defendants have shown a disregard not only for federal law and the rules of this Court, but also for the privacy and personal dignity of the decedent, Cathy Tubbs. Plaintiffs respectfully request that the run report and any reference to it be stricken from the record.

Respectfully submitted,

/s/ Barbara Bison Jacobson
Barbara Bison Jacobson (0014190)
Vorys, Sater, Seymour and Pease LLP
221 East Fourth Street, Suite 2000
P.O. Box 236
Cincinnati, Ohio 45202
Telephone – (513) 723-4016
Facsimile – (513) 852-8481

Trial Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2004, I electronically filed the foregoing with the Clerk of Court using the CM/ECF which will send notification of such filing to Geri Hernandez Geiler, Sr. Assistant City Solicitor, Room 214 City Hall, 801 Plum Street, Cincinnati, Ohio 45202.

/s/ Barbara Bison Jacobson
Barbara Bison Jacobson