IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Janie Samuel, et al.,

        Plaintiffs,

v.

Steven M. Hoog, et al.,

        Defendants.

Case No. 1:02cv378

District Judge Michael H. Watson

## OPINION AND ORDER

Before the Court are the following:

1. The July 29, 2004 Motion of Defendants Steven M. Hoog and Michael A. Lotz (hereinafter collectively "Defendants") to Dismiss First Amended Complaint (Doc. 18). Plaintiffs, Janie Samuel, personally (hereinafter "Ms. Samuel") and as Administrator of the Estate of Cathy Lynn Tubbs (hereinafter collectively "Plaintiffs"), filed a Memorandum in Opposition on September 13, 2004 (Doc. 20). Defendants filed a Memorandum in Reply on October 4, 2004 (Doc. 22).

2. The September 13, 2004 Motion of Plaintiffs to Strike Affidavit of Tom Lakamp, or Alternatively, Motion for Opportunity to Respond Pursuant to Rule 56 (Doc. 21). Defendants filed a Memorandum in Opposition on October 4, 2004 (Doc. 23). Plaintiffs filed a Reply Memorandum on October 15, 2004 (Doc. 26).

3. The November 4, 2004 Motion of Defendants to Stay Discovery, Including all Public Records Requests (Doc. 29). Plaintiffs filed a Memorandum in

        Opposition on November 24, 2004 (Doc. 34). Defendants filed a Reply Memorandum on December 8, 2004 (Doc. 35).

4.     The February 15, 2005 Motion of Plaintiffs for Leave to File Supplemental Memorandum of Authority in Opposition to Defendants Motion to Stay Discovery, Including all Public Records Requests (Doc. 36).

These matters are now ripe for review. For the reasons stated herein, the July 29, 2004 Motion of Defendants to Dismiss First Amended Complaint is hereby **DENIED**; the September 13, 2004 Motion of Plaintiffs to Strike is hereby **GRANTED**; and the November 4, 2004 Motion of Defendants to Stay Discovery, Including all Public Records Requests is hereby **DENIED**.

## I.   MOTION TO DISMISS

### A.   FACTS

Plaintiffs' Amended Complaint in this matter asserts the following factual allegations. Cathy Lynn Tubbs (hereinafter "Ms. Tubbs"), an African-American, suffered from pulmonary hypertension, a disorder in which blood pressure in the pulmonary artery rises well-above normal limits. (Doc. 15 ¶ 1) Pulmonary hypertension is a serious medical condition which can result in cardiac arrest and death. (Id.) Symptoms include difficulty in breathing, dizziness, fatigue and fainting spells. (Id.)

In the afternoon of May 29, 2000, Ms. Tubbs was at her home at 1316 Burdett Avenue, Cincinnati, Ohio, having been released from the hospital twenty days earlier, when she experienced shortness of breath, extreme weakness and other related

medical problems. (Id. ¶13) Accordingly, a 911 call was made for emergency medical assistance. (Id.)

On May 29, 2000, the City of Cincinnati Fire Department operated under a "You call, we haul" policy (hereinafter "Policy"). (Id. ¶25) As such, transport was provided to anyone who believes he or she needs to travel by ambulance to the hospital. (Id. ¶24) Pursuant to the Policy, ambulance transport was provided to City of Cincinnati citizens without opposition, without argument and without an atmosphere of confrontation. (Id. ¶25) Further, the Policy requires an ambulance to provide a citizen with medical services and communication directly with the hospital en route. (Id.)

Defendants Hoog and Lotz, City of Cincinnati firefighters, who are both Caucasian, responded to the 911 call. (Id. ¶¶8, 18 & 19) Additionally, Mr. Lotz is a paramedic. (Id. ¶9)

After arriving at the scene, Mr. Hoog stated he was not going to provide emergency transport to Ms. Tubbs, notwithstanding the knowledge she suffered from pulmonary hypertension and was having difficulty breathing, was so weak she was unable to walk unassisted, was under extreme stress and feared for her life. (Id. ¶¶31 & 34) Mr. Lotz, the sole paramedic at the scene, was present and failed to contradict Mr. Hoog. (Id. ¶34) Upon Defendants' refusal to transport, Ms. Tubbs became distraught and began to cry. (Id. ¶47)

Ms. Tubbs, along with her mother, Ms. Samuel, pleaded with Messrs. Hoog and Lotz to transport Ms. Tubbs to the hospital. (Id. ¶34) Defendants ignored their pleas, causing Ms. Samuel to get down on her knees and beg Mr. Hoog to take her daughter to the hospital in an ambulance. (Id.) In refusing the requests of Ms. Tubbs and Ms.

Samuel, Defendants created an atmosphere of confrontation. (Id. ¶33). When Ms. Tubbs' sister, Candace, challenged his refusal to transport, Mr. Hoog responded, "Yea, I am a racist." (Id. ¶34)

During this exchange, Mr. Lotz failed to perform the proper test and sat idle while Mr. Hoog, who was not a paramedic, declared Ms. Tubb's medical needs a non-emergency. (Id. ¶44) Mr. Lotz's inaction included, *inter alia*, failing to utilize the pulse/oximeter device to measure Ms. Tubbs' pulse and oxygen levels and failing to apply the leads of the EKG machine to monitor heart rhythm. (Id) The equipment was available to Mr. Lotz. (Id.)

Shortly thereafter, upon learning Ms. Tubbs' aunt, who had previously questioned Defendants as to whether they were going to be transporting her niece, was an attorney, Defendants agreed to transport Ms. Tubbs by ambulance. (Id. ¶34) As Ms. Tubbs was being loaded into the ambulance, Mr. Hoog instructed the ambulance driver to drive slowly. (Id.)

Even after Defendants finally agreed to transport Ms. Tubbs, Mr. Hoog pleaded with the family to take Ms. Tubbs to the hospital in their private vehicle. (Id.) Moreover, Mr. Lotz commented that if this was his family member and he was concerned, he would have already driven the individual to the hospital without requiring ambulance service. (Id.)

Ms. Tubbs died later that evening from complications arising from her pulmonary hypertension. (Id. ¶22)

Prior to May 29, 2000, Defendants transported Caucasian citizens in accordance with the Policy without opposition, argument and without creating an atmosphere of

1:02cv378                                                                                              4

confrontation. (Id. ¶25) Additionally, Defendants transported Caucasian citizens with similar or less serious conditions than Ms. Tubbs' condition. (Id. ¶27) Further, Defendants transported Caucasian citizens, with similar or less serious conditions, from Ms. Tubbs' address, 1316 Burdett Avenue, without incident. (Id.)

On May 28, 2002, Plaintiffs filed the instant action against Defendants. On May 28, 2004, Plaintiffs amended their Complaint against Defendant asserting claims for violation of equal protection, 42 U.S.C. §1983, intentional infliction of emotion distress and punitive damages.

### B. ARGUMENT OF PARTIES

#### 1. Equal Protection Claim

Defendants argue Plaintiffs' equal protection claim fails to state any federal equal protection claim upon which relief can be granted. Plaintiffs are required to produce specific, nonconclusory factual allegations of Defendants' improper motive. However, the Court has identified no case law which holds a firefighter/paramedic liable for questioning the urgency of a patient's medical condition and then, ultimately, transporting the patient to the hospital of her choice. Defendants contend these allegations fail to establish any improper motive and Plaintiffs fail to plead any cognizable injury.

Additionally, Defendants contend Plaintiffs' claim of disparate treatment based on race must fail. Plaintiffs fail to identify any similarly situated Caucasian person who was treated differently by Messrs. Hoog and Lotz. Specifically, Plaintiffs fail to name any Caucasian person who called for emergency medical services, who was conscious, alert and speaking upon the arrival of Messrs. Hoog and Lotz and who they treated any

differently by not expressing their opinion as to their condition or not questioning the urgency of their situation.

Further, Defendants assert, while Plaintiffs' Amended Complaint does not allege disparate impact, even if it did, proof of disparate impact is not determinative unless the pattern is clear or "stark" and unexplainable on grounds other than race. Plaintiffs fail to allege any pattern, let alone, a "stark" one. Assuming as true the facts alleged by Plaintiffs, Defendants contend the circumstances of this one particular incident are not so dramatic that a suspect motive can even be inferred.

In response, Plaintiffs assert there is no heightened pleading standard for cases alleging intentional discrimination. In support, Plaintiffs rely upon *Johnson v. Hayden*, 67 FED. App. 319, 2003 U.S. App. Lexis 11522 (6th Cir. June 6, 2003), which recognized the heightened pleading standard on civil rights plaintiffs accusing government officials of unconstitutional motive was inconsistent with the Supreme Court decisions in *Crawford-El v. Britton*, 523 U.S. 574 (1998) and *Swierkiewixa v. Sorema*, 534 U.S. 506 (2002). As such, Plaintiffs contend their claims are subject to the notice pleading standard of Fed. R. Civ. P. 8(a). Further, Plaintiffs argue Defendants concede the intentional discrimination claim was plead in notice form.

Notwithstanding the fact there is no heightened pleading standard, Plaintiffs maintain they have alleged specific, nonconclusory allegations of fact in support of the equal protection claim. Plaintiffs' Amended Complaint asserts, due to Defendants' racial animus, the Policy was modified in Ms. Tubbs' situation to include a conscious, alert and speaking standard, to which Caucasian people were not subjected. Further, Plaintiffs contend they identified, by a description of their medical conditions and status,

1:02cv378     6

similarly situated Caucasian citizens who received preferential treatment from Defendants at Ms. Tubbs' address. Defendant contends, contrary to Ms. Tubbs' assertion, non-African-American citizens were not required to establish they met an apparently arbitrary "emergency" standard, as determined by a non-paramedic in order to be transported to the hospital.

    2.    *Qualified Immunity*

Defendants contend they are entitled to qualified immunity on the equal protection claim. Specifically, Defendants are government officials who were performing discretionary functions which are shielded from liability as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants maintain there is no constitutional violation where a firefighter/paramedic questions the urgency of a patient's medical condition and then quickly transports the patient to the hospital of her choice, with no resulting medical consequences even alleged. Further, there is no clearly established case law which holds that it is a constitutional violation for a firefighter/paramedic to question the urgency of a patient's medical condition or to discuss it with the family in front of the patient and then transport the patient to the hospital of her choosing.

In response, Plaintiffs maintain there can be no question that in May, 2000, Defendants were on notice it was unlawful to refuse to allow an African-American citizen to be transported to a hospital, or to receive emergency medical service on the way to the hospital because the citizen is African-American when similarly situated Caucasian citizens are transported and provided with emergency medical care without questions. No reasonable officer could honestly doubt such actions would violate the

1:02cv378     7

clearly established right of Ms. Tubbs to have the same access to medical transportation and treatment as enjoyed by similarly situated Caucasian citizens.

### 3. State Law Claims

Defendants contend the Court should decline jurisdiction over Plaintiffs' pendent state law claims. Even if the Court has jurisdiction, Defendant asserts Plaintiffs' state law claims fail to state a claim upon which relief may be granted.

First, Plaintiffs claim for intentional infliction of emotional distress fails as there is nothing about Ms. Tubbs' medical condition which would dictate Defendants either discuss it or express an opinion as to her condition outside of her presence. To the contrary, Defendants maintain they were under a duty to discuss Ms. Tubbs' condition with her directly or with her family in her presence.

Second, even if Plaintiffs' sufficiently plead a claim for intentional infliction of emotional distress, Defendants assert they are entitled to immunity, pursuant to O.R.C. §2744.03(A)(6)(b), as they did not commit acts with malicious purpose, in bad faith or in a wanton or reckless manner. Assuming as true Plaintiffs' allegations, Defendants maintain support cannot be found in Ohio law to conclude engaging Ms. Tubbs in a discussion about her condition, or a momentary reluctance to transport her based on their opinion the situation was not an emergency, ultimately transporting Ms. Tubbs to the hospital of her choice, whereby no medical consequences occurred as a result of the Defendants' action, is malicious conduct. Similarly, Ohio law does not support the conclusion the alleged actions constitute wanton misconduct. Finally, reckless conduct does not result from these actions as Plaintiffs do not allege any physical harm being proximately caused by Defendants' actions.

In response, Plaintiffs contend they allege sufficient facts to state claims under both theories of recovery. They have alleged Defendants, with full awareness of Ms. Tubbs' recent medical history, her shortness of breath, general weakness and her fear for her life, chose to refuse to allow her to be transported to a hospital because of her race. It is alleged Defendants created an atmosphere of confrontation and made comments to Ms. Tubbs' family members, in front of Ms. Tubbs, for not caring enough about her to take her to the hospital themselves.

Furthermore, Plaintiffs assert Defendants are not entitled to qualified immunity for their intentional infliction of emotional distress. O.R.C. §2744.03(A)(6)(b) provides immunity to state officers for mere negligence. However, Plaintiffs allege Defendants intentionally caused Ms. Tubbs and Ms. Samuel to suffer extreme emotional distress, knowingly caused Ms. Tubbs to fear for her life, by effectively holding their ability to assist her over her head, and purposely derided her family for not helping her sooner, notwithstanding Defendants continued refusal to transport her to a hospital. As such, Plaintiff maintains Defendants are unable to hide behind O.R.C. §2744.03(A)(6)(b) for protection from liability for their intentional infliction of emotional distress in this matter.

C.   ANALYSIS

   1.   *Motion to Dismiss Standard*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (en

banc). In applying this standard, the district court must presume all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

### 2.  Heightened Pleading Requirement

The first argument to be examined is whether Plaintiffs are subject to a heightened pleading requirement. In *Goad v. Mitchell*, 297 F.3d 497 (6th Cir. 2002), the Sixth Circuit concluded the Supreme Court's decision in *Crawford-El*, supra., invalidated the heightened pleading requirement enunciated in *Veney v. Hogan*, 70 F.3d 917 (6th Cir. 1995).[1] "We...hold that the Supreme Court's opinion in *Crawford-El* invalidates the heightened pleading requirement...enunciated in *Veney*...for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity." *Goad* at 503.

Notwithstanding the invalidation of the *Veney* heightened pleading requirement, it is within the district court's discretion to ask a "plaintiff to produce specific, nonconclusory factual allegations of improper motive before discovery in cases in which the plaintiff must prove wrongful motive and in which the defendant raises the affirmative defense of qualified immunity" *Id.* at 504-505 citing *Crawford El* at 600. In these instances, direct evidence of improper motive is not required. *Goad* at 505.

---

[1] In *Veney*, the Sixth Circuit concluded "the trial court need not deny a defendant the right to qualified immunity simply because a complaint adequately alleges a violation of clearly established law. Rather, a plaintiff must allege sufficient facts 'to create a genuine issue as to whether the defendant in fact committed those acts.'" 70 F.3d at 920 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526). However, in *Crawford-El*, the Supreme Court held qualified immunity jurisprudence "provides no support for making any change in the nature of the plaintiff's burden of proving a constitutional violation," 523 U.S. at 589, and that "the unprecedented change made by the Court of Appeals in this case...alters the cause of action itself in a way that undermines the very purpose of §1983 -- to provide a remedy for the violation of federal rights." *Id.* at 594-95.

Instead, "district courts must accept as specific, nonconclusory allegations of fact those allegations that provide circumstantial evidence of improper intent." *Id.*

As discussed in greater detail below, an examination of the Amended Complaint reveals Plaintiffs provided circumstantial evidence of improper intent and, thus, produced specific, nonconclusory factual allegations.

       3.     *42 U.S.C. §1983 - Deprivation of Right to Equal Protection*

To establish a valid claim under 42 U.S.C. §1983, Plaintiffs must show (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *King v. City of Eastpointe*, 86 FED. Appx. 790, 801, 2003 U.S. App. Lexis 25712 (6th Cir. 2003). Furthermore, the Equal Protection Clause requires "'similarly situated individuals" be treated "in a similar manner.'"*Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1360 (6th Cir. 1996).

Currently, Defendants do not dispute they were acting under color of state law. As such, the focus is on whether Plaintiffs state facts which demonstrate Defendants' conduct deprived Ms. Tubbs of the right to equal access to medical services because of her race. Upon consideration, the Court concludes Plaintiffs allege sufficient facts in support of their equal protection claim to withstand Defendants' Motion to Dismiss.

Plaintiffs' allegations of dissimilar treatment by Defendants based upon race are more fully developed in the record than, as Defendants contend, the bare assertions that Plaintiffs are African-Americans and Defendants are Caucasians. Instead, Plaintiffs allege the City of Cincinnati established the Policy, which was in place at the time of the subject incident. However, Plaintiffs maintain Defendants did not apply the

Policy to Ms. Tubbs as they refused to transport her and, instead, questioned whether she needed to be transported by ambulance as she was conscious, alert and speaking. As such, Plaintiffs allege the Policy was disregarded and Ms. Tubbs, was subjected to a conscious, alert and speaking standard. Moreover, Plaintiffs assert Defendants, subjected Ms. Tubbs and her family to opposition, argument and an atmosphere of confrontation, but similarly situated conscious, alert and speaking Caucasian individuals, who lived at Ms. Tubbs' address, were not subjected to this standard. Plaintiffs assert similarly situated Caucasians were transported without question or discussion as to the need for transport. They were not subjected to opposition, argument and an atmosphere of confrontation. Moreover, Plaintiffs provide descriptions of the medical conditions suffered by the similarly situated Caucasians. Finally, the Amended Complaint alleges Mr. Hoog, challenged by Ms. Tubbs' sister, stated he was a racist.

These allegations, which the Court must presume for purposes of the motion to dismiss as true and draw all reasonable inferences in favor of Plaintiffs, are specific, nonconclusory allegations of fact which provide circumstantial evidence of improper intent by Defendants. Accordingly, the Court concludes Plaintiffs allege sufficient facts in support of their equal protection claim to withstand Defendants' Motion to Dismiss.

This conclusion is not altered by Defendants assertion that Plaintiffs must, specifically, identify in their Amended Complaint, similarly situated Caucasian individuals who were treated differently. The case law upon which Defendants rely

arises from motions for summary judgment, not motions to dismiss.[2] As such, the plaintiffs in those cases were subject to a different burden and Defendants' contention to the contrary is without merit.

2.  *Qualified Immunity*

Qualified immunity will generally shield government officials from individual liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing, Procunier v. Navarette*, 434 U.S. 555, 565 (1978). Qualified immunity involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved " 'clearly established constitutional rights of which a reasonable person would have known.' "

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002), *quoting, Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred. *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988). "Although the absence of a case on point does not necessarily endow a public official with public immunity, 'when this court can uncover

---

[2]"On a motion for summary judgment, the plaintiff shoulders the burden of identifying disparate treatment of such similarly situated individuals. *Nicholson*, 629; Equal protection claim failed because, in opposing a motion for summary judgment, plaintiff did not bring forth evidence of similarly situated Caucasian students who were treated differently than her son to refute affidavit of African-American assistant principal which stated the son was not treated any differently than any other student. *Buchanan*, 1360.

only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'" *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *quoting, Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998). Once a court finds the right is clearly established, the court must next decide "whether a reasonable person in the defendant's position would have known that his or her actions violated clearly established rights." *Id.* at 1008.

As discussed above, Plaintiffs properly plead an equal protection claim based on race. Thus, Plaintiffs demonstrate the first step of qualified immunity analysis.

Turning to the second step, "[t]he State may not...selectively deny its protective services to certain disfavored minorities violating the Equal Protection Clause." *DeShaney v. Winnebago Co. Dept. of Soc. Servs.*, 489 U.S. 189, 197, n. 3. As such, Defendants should have known denying Ms. Tubbs access to ambulance transport based on race violated a clearly established constitutional right.

Moreover, Defendants' argument there is no case law which establishes a constitutional violation for a firefighter/paramedic to question the urgency of a patient's medical condition or to discuss it with the family in front of the patient is misplaced. Defendants are asserting *their* interpretation of the facts in this matter as if they are undisputed. For the Court to conclude this is what occurred would be for the Court to decide the ultimate factual issues in this matter. However, the ultimate conclusion whether Defendants discriminated against Plaintiffs based on race or whether Defendants were merely questioning the urgency of a patient's medical condition are

1:02cv378    14

credibility issues for the trier of fact and not for the Court to determine on a motion to dismiss.

### 3.    Intentional Infliction of Emotional Distress

In order to prevail on a claim of intentional infliction of emotional distress, Plaintiffs must prove:

(1)   Defendants either intended to cause emotional distress, or knew or should have know their conduct would result in serious emotional distress to Plaintiffs;

(2)   Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community;

(3)   Defendants' conduct was the proximate cause of Plaintiffs' psychic injury; and

(4)   Plaintiffs suffered serious emotional distress such that no reasonable person could be expected to endure it.

*Roe v. Franklin County,* 109 Ohio App.3d 772, 783-784 (1996). Additionally, "serious emotional distress describes emotional injury which is both severe and debilitating." *Paugh v. Hanks,* 6 Ohio St.3d 72, paragraph 3(a) of the syllabus (1983).

Furthermore, Ohio recognizes an action for emotional distress where the business relationship of the parties creates a situation where the plaintiff is entitled to protection by the defendant. *Myers v. Hot Bagels Factory, Inc.,* 131 Ohio App.3d 82 (1999). If this situation exists, a plaintiff may recover for injuries which result from a willful breach of duty, insult or unlawful treatment. *Id.* Moreover, public policy dictates, because of the relationship between the parties, that plaintiff should have redress under

the law for mental distress and humiliation caused by the defendant's insulting conduct. *Id.*

The Court finds without merit Defendants' assertion that a heightened pleading standard is applicable to Plaintiffs' state law claim for intentional infliction of emotional distress. Plaintiffs' claim for intentional infliction of emotional distress is asserted under Ohio law. There is no Ohio authority which supports Defendants' position of a heightened pleading standard for intentional infliction of emotional distress when immunity is asserted as a defense. As such, Plaintiffs' claim for intentional infliction of emotional distress under Ohio law is not subject to a heightened pleading standard.

Applying the motion to dismiss standard to Plaintiffs' intentional infliction of emotional distress claim, the Court is unable to conclude Plaintiffs can prove no set of facts entitling them to relief. If we accept the facts alleged in Plaintiffs' Amended Complaint as true, the facts alleged are sufficient to state a claim for intentional infliction of emotional distress. Defendants were aware of Ms. Tubbs' serious medical history and the fear she was in for her life. Nonetheless, with an ambulance on scene, Defendants initially refused to transport her to the hospital based solely upon her race. Additionally, Defendants, aware of Ms. Tubbs' condition, argued with her family for not caring enough to transport her to the hospital themselves. All this occurred in front of Ms. Tubbs while her condition continued to deteriorate and her fear for her life increased.

Finally, Defendants' assertion of immunity pursuant to O.R.C. 2744(A)(6)(b) does not alter this analysis. O.R.C. §2744 (A)(6)(b) states, in relevant part, "the employee [of a political subdivision] is immune from liability unless...the employee's acts or omissions

1:02cv378　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　16

were with malicious purpose, in bad faith, or in a wanton or reckless manner." The facts alleged, taken as true, are sufficient to conclude Defendants acted with either malicious purpose, bad faith, or in a wanton or reckless manner.

Accordingly, the July 29, 2004 Motion of Defendants Steven M. Hoog and Michael A. Lotz to Dismiss First Amended Complaint (Doc. 18) is hereby **DENIED**.

II.     **MOTION TO STRIKE**

Plaintiffs seek an order from the Court striking the "Certification of Public Records" and its attached "run report" filed with the July 29, 2004 Motion of Defendants to Dismiss First Amended Complaint. Plaintiffs contend the run report consists of out of court statements, apparently made by the Defendants. Defendants' version of events is irrelevant in the context of a motion to dismiss.

In response, Defendants contend the run report is admissible as a public record because the information in it upon which they rely is non-medical information. Specifically, Defendants reliance upon the run report is limited to the establishment of the time of their arrival on the scene and the time of Ms. Tubbs' departure to the hospital. As such, there is no medical component to this information and the run report is admissible as a public record.

Upon consideration, the information which Defendants seek to admit through the run report is irrelevant to the Court's consideration of Defendants's Motion to Dismiss. At this point in the litigation, how long Defendants were at Ms. Tubbs' residence does not impact the analysis of whether Plaintiffs have properly plead an equal protection violation. Instead, the focus is on whether the facts alleged by Plaintiffs as to what

transpired between Plaintiffs and Defendants when they were in the residence is sufficient to establish a claim for violation of the Equal Protection Clause.

Accordingly, the September 13, 2004 Motion of Plaintiffs to Strike Affidavit of Tom Lakamp (Doc. 21) is hereby **GRANTED**.

### III. MOTION TO STAY DISCOVERY

Defendants seek to stay discovery in this matter, including all public document requests. As the Court denied Defendants' Motion to Dismiss, there is no reason discovery should not proceed in this matter. Moreover, with respect to Plaintiffs' public records request directed to the City of Cincinnati Fire Department, Defendants' arguments are more appropriately addressed in a motion for protective order than a motion to stay.

Accordingly, the November 4, 2004 Motion of Defendants to Stay Discovery, Including all Public Records Requests (Doc. 29) is hereby **DENIED**. Additionally, the February 15, 2005 Motion of Plaintiffs for Leave to File Supplemental Memorandum of Authority in Opposition to Defendants Motion to Stay Discovery, Including all Public Records Requests (Doc. 36) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
**MICHAEL N. WATSON, JUDGE
UNITED STATES DISTRICT COURT**