IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JANIE SAMUEL, AS ADMINISTRATOR OF THE ESTATE OF CATHY LYNN TUBBS, et al., | Case No. C-1-02-378 |
| | Judge Michael R. Barrett |
| Plaintiffs, | |
| -vs- | |
| STEVEN M. HOOG, et al., | **PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO F.R.C.P. 37(b)** |
| Defendants. | |

Plaintiffs Janie Samuel, individually and as administrator of the estate of her daughter Cathy Lynn Tubbs, respectfully move the Court for sanctions pursuant to Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure or, alternatively, pursuant to Rule 37(b)(2)(C).

## INTRODUCTION

It has now been over a year since Plaintiffs served on the City of Cincinnati a subpoena for records ("September 1996 Subpoena"). After repeated delays by the City, on July 27, 2007, the Court ordered the Defendants to produce by August 31, 2007 specific documents requested in the September 1996 Subpoena. The Defendants failed to comply with the Court's order in at least two significant ways.

First, the Court ordered the Defendants to produce Medical Run Reports from May 29, 1999 through July 29, 2000 that identify either Defendant Steven Hoog or Defendant Michael Lotz. Rather than producing responsive *documents*, the Defendants produced 55 microfiche tapes on which the requested Run Reports are stored – along with thousands of other non-

responsive records, through which Plaintiffs must hunt to find responsive records. Defendants' counsel stated that it would take "many months" to identify and print the requested documents from the microfiche. Beginning as early as April 9, 2007, however, Plaintiffs' counsel *repeatedly* offered to assist in the document production process. Thus, that "many months" of review could – and should – have begun months earlier. For the Defendants to wait until August 31, 2007 to produce microfiche is simply too little, too late – especially when dispositive motions are due just one month later on October 1, 2007 and trial is scheduled to begin January 22, 2008.

Second, the Court ordered the Defendants to produce emergency response documents for any occasions when Firefighter Hoog acted as the officer in charge. The Defendants failed *entirely* to produce such records outside May 1999 through August 2000 (and for that time period, the responsive records were produced only on microfiche). Again, Plaintiffs' counsel repeatedly offered to assist with the production process.

The Defendants may also have failed to comply with the Court's order in a third way, by not producing a report addressing racial segregation and discrimination in the Fire Department, if such a report exists. Plaintiffs' counsel has received only an evasive answer in response to repeated questions about the existence of such a report.

Plaintiffs now seek relief from the Court. Pursuant to Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure, Plaintiffs request that the Court prohibit Defendants from introducing evidence or arguing that Plaintiffs failed to produce evidence that Defendants treated similarly situated white persons differently from Ms. Tubbs – evidence the Plaintiffs expected to discover in the requested emergency response records. In the alternative, pursuant to Rule 37(b)(2)(C) Plaintiffs request the Court to order Defendants for a second time to produce records for any

occasion when Firefighter Hoog acted as officer in charge and to postpone the trial and pretrial deadlines, including the dispositive motion deadline, to permit Plaintiffs a reasonable time to review the records and conduct additional investigation based thereon.  Under either alternative, Plaintiffs further request the Court again to order Defendants to produce any analysis of racial segregation and discrimination in the Fire Department that exists.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs served the September 2006 Subpoena on September 14, 2006.  *See* September 2006 Subpoena, attached hereto as Exhibit A.  The Subpoena stated that the documents were to be produced by October 2, 2006.  *See* Ex. A.

The City did not respond to the Subpoena until January 26, 2007, more than four months after the Subpoena was issued.  *See* City of Cincinnati's Responses to Subpoena for Records, attached hereto as Exhibit B.  Peter Stackpole, counsel for the Defendants, signed the Responses as counsel for the City.  *See id.*  The Responses asserted no objection to any of the documents at issue in this Motion.  *Id.*  Despite the four months taken to respond, the only Medical Run Reports and other emergency medical services documents produced in response to the Subpoena were for 1316 Burdett Avenue, the address of Plaintiff Janie Samuel.

After serving its response, the City made available for inspection by Plaintiffs' counsel files in the Fire Department's Office of Internal Investigation.  These files contained Medical Run Reports and other medical response documents, but only in instances where an internal investigation of the response had taken place.  Affidavit of Dorothea Langsam ¶2 ("Langsam Aff."), attached hereto as Exhibit C.

After reviewing internal investigation documents on two occasions and realizing that the documents being made available for inspection included only one subset of the requested

3

records, on April 9, 2007, Plaintiffs' counsel sent a letter to Mr. Stackpole to follow up on the response to the subpoena. That letter listed each of the document requests not fully responded to, including those still at issue, and stated:

> For all of the documents requested, we are willing to coordinate the production of the requested information to minimize any inconvenience.

April 9, 2007 letter from Dorothea Langsam to Peter Stackpole (Langsam Aff. ¶3, Ex. 1).

Having received no response from Mr. Stackpole to the April 9 letter, Plaintiffs' counsel sent a further letter on April 23, 2007, to urge production of the remainder of the documents before the parties were required to submit a status report on May 2, 2007. *See* April 23, 2007 letter from Dorothea Langsam to Peter Stackpole (Langsam Aff. ¶4, Ex. 2). That letter also asked Mr. Stackpole to let Plaintiffs' counsel know "if there is anything we can do to expedite the production." *Id.*

Again receiving no response, Plaintiffs' counsel called Mr. Stackpole on April 27. Mr. Stackpole stated in this conversation that the City would produce the remaining documents requested in the subpoena, although he would not commit to when the production would be completed. Langsam Aff. ¶5.

On May 18, 2007, Plaintiffs' counsel and Mr. Stackpole met to review additional internal investigation files. *Id.* ¶6. At that time, Plaintiffs' counsel provided Mr. Stackpole a list entitled "Additional Documents to Be Produced Pursuant to September 14, 2006 Subpoena, as of May 18, 2007." *Id.* ¶6, Ex. 3. Mr. Stackpole again indicated that the remainder of the requested documents would be produced. *Id.* ¶6.

On May 22, 2007, Plaintiffs' counsel sent Mr. Stackpole another letter, stating "please let me know when I can expect to receive the additional documents responsive to the September 14, 2006 subpoena." Langsam Aff. ¶7, Ex. 4.

On June 8, 2007, Mr. Stackpole sent an e-mail to Plaintiffs' counsel, which stated:

> I have farmed out your primary document requests to three different people within the Fire Department. They are assistant Chief Mose Demasi (Human Resources), Maria Menke-Sunderhaus (accounting supervisor – apparently her department handles medical records), and District Chief Roy Winston (Dispatch) who should be able to get us a map of the E23 service area. When I have any information back from these folks, I will provide it to you.

Langsam Aff. ¶8, Ex. 5. It thus appears that Mr. Stackpole attempted for the first time in June 2007 to obtain from the Fire Department the Medical Run Reports and several other categories of documents responsive to the September 2006 Subpoena.

On June 13, 2007, Plaintiffs' counsel e-mailed Mr. Stackpole a proposed joint status report. Langsam Aff. ¶9, Ex. 6. The e-mail stated: "I have left for you to fill in the date by which the City expects to produce the remainder of the subpoenaed documents." *Id.* Mr. Stackpole selected July 2, 2007. *Id.* The Joint Status Report stated:

> The City intends to produce the remainder of subpoenaed documents by July 2, 2007.

June 15, 2007 Joint Status Report.

The Court held a telephone status conference on June 21, 2007. Plaintiffs' counsel understood during the telephone conference that the City still intended to complete the document production by July 2, and it was on that basis that Plaintiffs' counsel believed it could meet the deadlines agreed to at the conference and still in effect: In particular, that dispositive motions are due October 1, 2007, and trial will begin January 22, 2008. Langsam Aff. ¶11; *see also* June 20, 2007 e-mail from Dorothea Langsam to Peter Stackpole ("I assume you are still anticipating producing these and the other remaining documents on July 2.") (Langsam Aff. ¶10, Ex. 7).

Given the unfortunate track record, Plaintiffs' counsel took the precaution of sending a letter to Mr. Stackpole after the conference on June 21, stating:

5

> This letter will confirm that the City of Cincinnati will produce the remainder of the subpoenaed documents by July 2, 2007. We understand that although you will be on vacation June 29 through July 6, this will not interfere with your ability to produce the documents to us no later than July 2.

Langsam Aff. ¶12, Ex. 8. And Plaintiffs' counsel reiterated: "If there is anything we can do to assist with this process, please let me know." *Id.*

Mr. Stackpole responded by e-mail on June 25, stating in relevant part:

> For the F33s [the Medical Run Reports] you've requested, apparently a lot of the material is on microfiche. The good news is that, according to Maria [Menke-Sunderhaus, of the Fire Department], the City should be able to get even the oldest records you have requested. But I may not be able to get the F33s to you by July 2, particularly since my vacation begins June 29.

Langsam Aff. ¶13, Ex. 9.

In response, Plaintiffs' counsel e-mailed Mr. Stackpole to ask: "If you can't have it by July 2nd, when is your absolute, I know I can have it, no delays, date? I will agree with such a date, if it is very soon after July 2nd. . . . Again, if you need bodies to review records, let me know." *Id.*

Mr. Stackpole e-mailed back that he had spoken with Chief Demasi, who

> believes that finding the specific information you have requested may well be like searching for a needle in a haystack. The problem is, as I understand it, there was no computer system in which data was stored until the last few years. Prior to that, the records were all kept by hand. We are talking many thousands of runs and each one would have to be pulled by hand and read by a person to ascertain if the desired information is present.

*Id.*

On June 26, the City produced additional documents responsive to the September 1996 Subpoena (Defendant Hoog's and Lotz's work schedules and documents from their personnel

6

files related to this case and a chart showing the race of firefighters by assignment, apparently as of June 2007) – but no Medical Run Reports. In another e-mail, Mr. Stackpole explained:

> Each day that Hoog and Lotz worked will have anywhere from 10 to 20 plus runs. Each run is a separate medical run report and can only be searched through someone physically looking through microfiche or handling the document itself (if it is hardcopy). In total, Mose [Chief Demasi] conservatively estimates that this would involve the review by hand of at least 16,000 documents (for both individuals combined).

Langsam Aff. ¶14, Ex. 10. Mr. Stackpole stated in another June 26 e-mail: "No one is aware of a 'race study' that has been conducted by an outside group." Langsam Aff. ¶15, Ex. 11.[1]

On June 27, 2007 Plaintiffs' counsel sent Mr. Stackpole yet another letter seeking the remainder of the documents to be produced. Langsam Aff. ¶16, Ex. 12. This letter noted that Mr. Stackpole had stated that "no one is aware of a 'race study' that has been conducted by an outside group," and asked if there are "internal documents commenting on the racial makeup of the fire houses." *Id.* Plaintiffs' counsel also included a list of documents produced pursuant to the September 2006 Subpoena and those still to be produced as of June 27, 2007. *Id.*

No additional documents were produced on July 2, 2007, the date identified in the June 21 Joint Status Report.

On July 27, 2007, the Court issued an Order requiring the Defendants to produce the following records, *inter alia* (to the extent the records exist):

> 1. Medical Run Reports from May 29, 1999 through July 29, 2000 that identify by name or badge number either Firefighter Hoog or Lotz, or both;
> . . .

---

[1] Although this e-mail stated that Firefighters Hoog's and Lotz's personnel files were available for inspection, in fact only documents specifically pertaining to this case were made available at that time. Plaintiffs' counsel obtained the personnel files, however, after the Court ordered their production.

7

> 3. Medical Run Reports, CAD's, Forms 34 and any other emergency response documentation for any occasions where Firefighter Hoog acted as the officer in charge;
>
> . . .
>
> 8. Documents related to the racial makeup of fire house or engine companies, including a report addressing racial segregation and discrimination in the Fire Department.

July 27, 2007 Order.

On August 8, 2007, Plaintiffs' counsel again wrote to Mr. Stackpole to clarify that Plaintiffs requested any documents commenting on the racial makeup of fire houses, whether produced internally or externally. Langsam Aff. ¶17, Ex. 12.

On August 30, 2007, Plaintiffs' counsel called Mr. Stackpole to ask how Plaintiffs could obtain the documents to be produced the next day. Langsam Aff. ¶18. During that conversation, Mr. Stackpole informed Plaintiffs' counsel for the first time that Defendants would be producing chart showing their work schedules and microfiche tapes on which Plaintiffs could locate responsive documents based on when the Defendants worked. *Id.*

The next day, the Defendants produced additional documents pertaining specifically to Plaintiff's 1316 Burdett Avenue address, Engine 23's "desk diary" from the year 2000, a map of the geographic area served by Engine 23, Firefighter Hoog's and Lotz's work schedules of the years 1999 and 2000 (indicating whether Firefighter Hoog requested above-grade pay during a pay period and thus may have worked as officer in charge during that time), a list of incidents in 1999 and 2000 for which Firefighter Hoog may have acted as officer in charge (apparently identified because Firefighter Hoog made the report for those incidents), and 55 microfiche tapes for the time period May 27, 1999 through August 7, 2000.

The Defendants did not produce – either in hard copy or on microfiche – any records for occasions in which Firefighter Hoog acted as officer in charge outside of the May 27, 1999

through August 7, 2000 time period.  Nor did they produce any report or study concerning racial segregation or discrimination in the Fire Department.  Mr. Stackpole did provide a chart listing categories of records ordered produced and who in the Fire Department was assigned the task of locating the records.  Langsam Aff. ¶19, Ex. 14.  That chart indicates that the task of "[i]nvestigat[ing] the existence of a report addressing racial discrimination and segregation in the fire department" was assigned to "Disregard."  *Id.*  (By contrast, for other documents requested that do not exist, Capt. Ransick provided a written statement to that effect.  *Id.*)

Plaintiffs hired a college student to print responsive documents from the microfiche at the public library.  Langsam Aff. ¶21.  The process is time consuming.  The microfiche include Medical Run Reports for the entire Fire Department and are not organized by fire house or engine or ambulance number.  *Id.*  There are approximately a hundred reports *per day* that must be searched through to identify responsive reports (those that identify Hoog or Lotz by name or badge number).  *Id.*  The process is made slower because the microfiche reader does not operate while a document prints, so the student must wait to begin scrolling for the next responsive document.  *Id.*  The student estimates it takes approximately 30 to 40 minutes to identify and print the responsive documents for a single day.  *Id.*  Hoog and Lotz worked several hundred days during the time period for which Defendants were provided microfiche, and although they worked together on the day of Cathy Tubbs' death, they frequently worked on different outfits, requiring the identification of separate documents for each Defendant.  *See* Langsam Aff. ¶20, Ex. 15.

## ARGUMENT

Plaintiffs have sought the documents at issue for over a year now.[2] The City and the Defendants have proffered no justification for their failure to comply in a timely fashion with the September 2006 Subpoena or for their violation of the Court's July 21, 2007 Order. Instead, Defendants' counsel has simply asserted that to compile the requested documents from microfiche would be time consuming. True. But Plaintiffs' counsel repeatedly offered assistance in the production process. Rather than accepting that offer – and rather than producing the microfiche on October 2, 2006, the date a response to the subpoena was due, so Plaintiffs could begin this time-consuming process – counsel for the City and Defendants waited almost a full year after the subpoena issued to turn over the microfiche. Defendants' counsel estimates it would take "many months" to identify and produce hard copies of the responsive documents, but Defendants left Plaintiffs with just a month both to retrieve those documents from the microfiche and to conduct any follow-up investigation before the dispositive motions deadline. And, Defendants *still* have not produced in any form documents for when Hoog acted as the officer in charge outside the May 1999 through August 2000 time period. Nor have Defendants produced any reports or studies of racial segregation or discrimination at the Fire Department (or confirmed that no such analyses exist).

Cathy Tubbs died on May 29, 2000. It is now seven years later. This case needs to move forward. But Defendants' failure to comply with the July 21 Order threatens to place Plaintiffs in an untenable situation – one in which Plaintiffs must either request yet another delay in the

---

[2] In fact, Plaintiffs first sought to obtain the Medical Run Reports only now produced on microfiche by a Public Records Act request issued October 14, 2004, to which Defendants filed a motion objecting.

proceedings or face the summary judgment stage without all documents they believe are necessary and to which they are entitled, and without sufficient opportunity to identify and conduct investigation of those records that were finally turned over on microfiche.

Plaintiffs therefore move the Court pursuant to Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure to preclude Defendants from presenting evidence and arguments based on the records either not produced at all or produced only on microfiche on August 31, 2007. This would permit the case to move forward without significant prejudice to Plaintiffs from Defendants' dilatory discovery practices. Plaintiffs intended to show from the requested records and investigation following therefrom that Defendants treated Ms. Tubbs worse than similarly situated white persons in need of ambulance transportation. The Plaintiffs therefore specifically ask the Court to preclude the Defendants from obtaining summary judgment or judgment as a matter of law (or a new trial) on the ground that Plaintiffs failed to show that a similarly situated white person received better treatment than Ms. Tubbs and to prohibit Defendants from introducing evidence or argument to that effect in support of any motion or at trial. Plaintiffs also ask the Court again to order Defendants to produce any reports or studies of racial discrimination or segregation in the Fire Department.

Rule 37 provides in pertinent part that when a party fails to comply with a discovery order, the court "may make such orders in regard to the failure as are just, and among others the following":

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

11

>(C) An order striking out pleadings or parts thereof, or staying
>further proceedings until the order is obeyed, or dismissing the
>action or proceeding or any part thereof, or rendering a judgment
>by default against the disobedient party;

F.R.C.P. 37(b)(2).

Thus, subsection (B) specifically provides for the type of relief sought. Not surprisingly, therefore, courts grant such relief. *See, e.g.*, *Bergman v. United States*, 565 F.Supp. 1353, 1373 (W.D. Mich. 1983) ("Pursuant to Rule 37(b)(2)(B) and in light of the problems caused by the refusal to produce documents, the government must be foreclosed from controverting Plaintiffs' evidence or proceeding with its defense, on all but statute of limitations grounds."); *Williams v. Texaco, Inc.*, 165 B.R. 662, 670-71 (D.N.M. 1994) (striking defense for failure to supply requested information); *Transportes Aereos de Angola v. Ronair, Inc.*, 104 F.R.D. 482, 502 (D. Del. 1985) (precluding party from introducing evidence contrary to specific factual statements).

Such relief is appropriate here. The Plaintiffs have made every reasonable effort to obtain the records – in addition to repeated offers of assistance, Plaintiffs even provided Defendants' counsel with periodic updated lists to identify those documents still to be produced. *See* Langsam Aff. ¶6, Ex. 3; ¶10, Ex. 7; ¶16, Ex. 12. By contrast, it does not appear that Defendants' counsel even inquired of the Fire Department until June 2007 about the documents finally produced on microfiche on August 31. *See id.* ¶8, Ex. 5. And it is unclear that he *ever* requested either an internal study of segregation or discrimination or the additional documents from when Hoog was in charge. *See id.* ¶19, Ex. 14.

As to the records produced only on microfiche, in an e-mail sent June 25, 2007, Mr. Stackpole began insisting that it would take time for the City to produce the requested documents because they would have to be identified and pulled from microfiche or hard copy. *See id.* ¶13,

Ex. 9. As noted above, the microfiche could have been timely produced in response to the subpoena in October 2006, or the City could have accepted Plaintiffs' counsel's repeated offers to assist with the production process. *See id.* ¶3, Ex. 1; ¶4, Ex. 2; ¶12, Ex. 8; ¶13, Ex.9. But, at the very least, by July 2, 2007, the date agreed to in the Joint Status Report, Defendants' counsel could have produced the microfiche to Plaintiffs – all that he eventually did anyway– so that Plaintiffs could have had two additional months to identify responsive documents and investigate.[3] Defendants did none of these things. Instead, they waited until August 31, 2007, the last day ordered by the Court for production of the requested documents and just one month before the dispositive motion deadline, to turn over the microfiche.[4]

Moreover, the Defendants still have not produced records – in any format – for those occasions when Mr. Hoog acted as officer in charge outside of the May 27, 1999 through August 7, 2000 time period. The Court's Order required the production of "Medical Run Reports, CAD's, Forms 34 and any other emergency response documentation for any occasions where Firefighter Hoog acted as the officer in charge." June 21, 2007 Order, at ¶3. This language is not limited to those occasions where Firefighter Hoog acted as the officer in charge *between May 1999 and August 2000*. The Defendants' failure to produce records beyond that time period is a blatant violation of the Court's Order.

---

[3] That would not have been adequate compliance with the subpoena. *See Transportes Aereos de Angola v. Ronair, Inc.*, 104 F.R.D. 482, 500 (D. Del. 1985) ("The Court will not permit defendants to shift the burden of discovery by telling 'plaintiff that, if he wishes, he may hunt through all the documents and find the information for himself.'") (quoting *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D.Mass.1979)). It would, however, have been better than what occurred – inexplicably waiting two additional months to produce the tapes, especially when the dispositive motion and trial schedules were set based on the City's stated intention to produce the requested documents on July 2.

[4] And Defendants' counsel failed to give advance notice that he would produce the documents in this manner to permit Plaintiffs' counsel to make arrangements for an employee or employees to work full time to identify and print the requested documents from the "many thousands of runs" contained on the microfiche. Langsam Aff. ¶13, Ex. 9.

Plaintiffs ask the Court only to preclude the Defendants from obtaining judgment based on Plaintiffs' failure to present evidence that would be found in the records either not produced at all or produced only at the eleventh hour in a time-consuming, labor-intensive format. This relief would allow the case finally to be heard, and would even streamline the proceedings by focusing on the events of May 29, 2000. It would reduce the prejudice to Plaintiffs from Defendants' failure to comply with the Court's order. *Bergman v. United States*, 565 F.Supp. 1353, 1372 (W.D. Mich. 1983) ("Preclusionary orders ensure that a party will not be able to profit from its own failure to comply.") (quoting Second Circuit in *Cine Forty-Second St. Theatre v Allied Artists*, 602 F2d 1062, 1066 (2nd Cir. 1979)) At the same time, however, Defendants could still obtain summary judgment or victory at trial – they simply must do so based on what occurred on May 29, 2000.

Notably, Plaintiffs do not seek the more drastic relief provided for in subsection (C) of Rule 37(b)(2) – a default judgment against Defendants. Nor do they specifically seek relief under subsection (A), pursuant to which the Court could order it established that Defendants treated Ms. Tubbs worse than similarly situated white persons – although such relief would be just as Defendants have effectively denied Plaintiffs the opportunity to obtain such evidence. But while they would certainly not object to such relief, in an effort to move the case forward, and because Plaintiffs believe they can prove their case based on what occurred the day Ms. Tubbs died, they request the less severe relief provided for under subsection (B).

In the alternative, Plaintiffs ask the Court to require Defendants to comply with the July 21 Order by producing documents for occasions when Hoog acted as officer in charge beyond the 1999-2000 time range and any reports or studies concerning racial segregation or discrimination that exist, and to postpone the dispositive motion and trial schedules to permit

Plaintiffs sufficient time to review these documents as well as those produced on microfiche on August 31 and to conduct subsequent investigation.  The Court has the express authority under Rule 37(b)(2)(C), quoted above, to proceed in this manner.

## CONCLUSION

For the reasons stated, the Court should preclude the Defendants from presenting evidence or arguing in any motion or at trial that Plaintiffs failed to show Ms. Tubbs was treated worse than a similarly situated white person.  In the alternative, the Court should order Defendants to comply belatedly with the July 21, 2007 Order and should postpone trial and pre-trial deadlines.  Under either alternative, the Court should order the Defendants to produce any existing report or study of racial segregation or discrimination at the Fire Department.

Respectfully submitted,

*s/ Barbara Bison Jacobson*
Glenn V. Whitaker (0018169)
Barbara Bison Jacobson (0014190)
Vorys, Sater, Seymour and Pease LLP
221 East Fourth Street, Suite 2000
P.O. Box 236
Cincinnati, Ohio 45202
Telephone – (513) 723-4016
Facsimile – (513) 852-8481

Trial Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on September 19, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF which will send notification of such filing to Peter J. Stackpole, Esq., City of Cincinnati Solicitor's Office, 801 Plum Street, Room 214, Cincinnati, OH  45202; and Kimberly A. Rutowski, Esq., Hardin Lefton Lazarus & Marks LLC, 30 Garfield Place, Suite 915, Cincinnati, OH  45202.

                                                                                         s/ *Barbara Bison Jacobson*
                                                                                         Barbara Bison Jacobson