IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANIE SAMUEL, ET AL., | : | Case No. 1:02CV00378 |
| Plaintiffs, | : | JUDGE MICHAEL R. BARRETT |
| v. | : | |
| STEVEN M. HOOG, ET AL., | : | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** |
| Defendants. | : | |

## I.   Introduction

This Court should not grant the plaintiffs' motion for sanctions. The subpoena that requested information was directed to the City of Cincinnati. The individual firefighters have no control over the City of Cincinnati and did nothing to delay discovery in this matter. The City of Cincinnati has worked diligently to produce and allow inspection of a very large amount of material. This Court entered an Order on July 27, 2007. The Order was not issued because the City delayed discovery or was subject to a motion to compel. It was issued at the request of *defense counsel* because he did not want the City of Cincinnati to violate the requirements of HIPAA by releasing protected medical information.

The defendants concede that the microfiche tapes outside of the period from May 29, 1999 through July 29, 2000 were not produced. Lieutenant Michael Cayse informed defense counsel that he mistakenly believed plaintiffs wanted records of when FF Hoog was acting as officer in charge for the time period from May 29, 1999 through July 29,

1

1999, similar to the medical run reports. Lieutenant Michael Cayse is ordering the outstanding microfiche tapes from the vendor, Tronitech, to provide to plaintiffs.

## II.     Background

### A.     Defendants cooperated with plaintiffs' discovery requests

At no time has defense counsel attempted to obstruct or delay discovery. Suggesting otherwise is not only wrong, it is offensive.

#### 1.     Motion for extension of time to submit expert identifications and reports

The plaintiffs filed a motion for extension of time to submit expert identifications and reports on January 30, 2007. In that motion, plaintiffs wrote:

> Although substantial progress has been made in deposition discovery, the paper discovery has taken some additional time. Plaintiff requested paper discovery of certain fire department documents from the City of Cincinnati. ***Additional time was agreed for the City to provide such documents.*** The undersigned has been advised that these documents will be available for review on Thursday, February 1, 2007.[1]

The review that occurred on February 1, 2007 was conducted by Barbara Bison Jacobson. She reviewed one filing cabinet out of sixteen and concluded her review after approximately four hours. She stated that she would follow up with further inspections. Former plaintiffs' co-counsel, Ward Washington, contacted defense counsel to conduct the next inspection, which took place on April 5, 2007. Additional inspections took place in April and May, 2007. These inspections were intended to provide plaintiffs with a response to their request for "any and all documents related to any allegation or complaint by a citizen or firefighter that they have been subject to adverse actions or treatment by a Cincinnati firefighter since January 1, 2000."

---

[1] See Motion for Extension of Time, p. 2 (doc. 54) (emphasis added).

### 2. Joint Status Reports

On March 2, 2007, the parties submitted a Joint Status Report. The report prepared and filed by plaintiffs states:

> Although substantial progress has been made in deposition discovery, the paper discovery has taken, and will require, some additional time. Plaintiff requested paper discovery of certain documents from the City of Cincinnati. ***Additional time was agreed for the City to provide such documents. The City has provided some of the requested documents.*** The parties have scheduled additional reviews of remaining documents.[2]

On May 2, 2007, the parties submitted a Joint Status Report. The report prepared and filed by plaintiffs states:

> The parties have continued to make substantial progress in discovery, with much of the written discovery and a number of depositions completed. Plaintiffs subpoenaed certain written documents from the City of Cincinnati. The City produced directly to Plaintiffs' counsel's office some of the requested documents, and Plaintiffs' counsel reviewed other documents made available for inspection at a City facility on two days, by agreement. The City intends to produce and make available for inspection additional documents in response to Plaintiffs' subpoena, and the parties are working together to complete this process.[3]

The same report later states, "The parties are working together to complete discovery in a timely manner."[4]

On June 15, 2007, the parties submitted another Joint Status Report. The report prepared and filed by the plaintiffs states:

> The parties are working together to complete the discovery process in a timely manner. Some of the written discovery and a number of depositions have been completed. Plaintiffs subpoenaed documents from the City of Cincinnati. The City produced directly to Plaintiffs' counsel's office some of the requested documents, and Plaintiffs'

---

[2] See Joint Status Report, p. 1 (doc. 56) (emphasis added).
[3] See Joint Status Report, p. 1 (doc. 58).
[4] Id. at 2 (doc. 58).

3

counsel reviewed other documents made available for inspection at a City facility on three days, by agreement. The most recent review occurred on June 1, 2007. The City intends to produce the remainder of subpoenaed documents by July 2, 2007.[5]

### 3.    Attempts to obtain records

The information requested in the subpoena directed to the City was originally due on October 2, 2006. Defense counsel obtained an extension until November 15, 2006 and then November 30, 2006 because of a busy trial schedule. Defense counsel asked another attorney in the office for help. She coordinated with the Fire Department to obtain responses to the subpoena.

During that process, she was informed that the records would be voluminous and she was told that this would involve literally thousands of documents. Defense counsel contacted plaintiffs' counsel, explained the situation, and suggested allowing inspection of the records so that plaintiffs could determine what they actually want. In the meantime, the City produced the records it had available. Not until February 1, 2007 were the parties able to set a date for inspection.

On April 9, 2007 and April 23, 2007, Dorothea K. Langsam identified records that remained outstanding from the subpoena directed to the City. Defense counsel submitted the requests to the Cincinnati Fire Department for action.[6] One of the divisions within the Fire Department responded that it had no records.[7] Following up on that email, defense counsel was ultimately directed to the appropriate people within the department.[8]

---

[5] See Joint Status Report, p. 1 (doc. 60).
[6] See email to District Chief Jones dated April 24, 2007 (attached as exhibit A).
[7] See email from DC Denny Clark dated May 1, 2007 (attached as exhibit B).
[8] See email from DC Denny Clark dated June 8, 2007 (attached as exhibit C).

### 4. HIPAA concerns, microfiche records, and the need for a Court Order

Before filing the June 15, 2007 joint status report, Dorothea K. Langsom asked defense counsel what date to use as the date by which the City would finish producing its responses.[9] Because defense counsel could not reach Assistant Chief DeMasi (AC DeMasi) who was on vacation, defense counsel suggested a date of July 2, 2007. Defense Counsel made it clear that the deadline would be subject to discussions with AC DeMasi, who would be responsible for overseeing the work.

When AC DeMasi returned from vacation, defense counsel met with him and went over the outstanding requested information. From that discussion, defense counsel learned that much of the records were on microfiche. This is the first time that defense counsel became aware that the majority of the records were on microfiche. Defense counsel notified Barbara Bison Jacobson of this fact by email on June 26, 2007, stating:

> Each day that Hoog and Lotz worked will have anywhere from 10 to 20 plus runs. Each run is a separate medical run report and can only be searched through someone physically looking through microfiche or handling the document itself (if it is hardcopy). In total, Mose conservatively estimates that this would involve the review by hand of at least 16,000 documents (for both individuals combined).[10]

Defense counsel further informed Barbara Bison Jacobson that, "If it would help, I've asked Assistant Chief DeMasi to be ready to explain to the Court why obtaining the information would be intensive and time consuming."[11]

---

[9] See email exchange between Peter J. Stackpole and Dorothea K. Langsam dated June 13 – 15, 2007 (attached as exhibit D).
[10] See email of Peter J. Stackpole to Barbara Bison Jacobson dated June 26, 2007 (attached as Exhibit E).
[11] Id.

Moreover, AC DeMasi expressed concerns about HIPAA requirements and whether the City would be in violation by responding to plaintiffs' subpoena. Defense counsel raised the issue with Barbara Bison Jacobson. In the same email dated June 26, 2007, defense counsel wrote, "But before we get into the mechanics of producing and copying the information that is available, I want to resolve the HIPAA questions so that I am satisfied I am not causing my client to violate any laws by responding to discovery."[12]

The HIPAA concerns are what led *defense counsel* to ask for an Order requiring the defendants to produce discovery. In this way, the City of Cincinnati would be protected from any claimed HIPAA violation.

### 5. Complying with the Court Order

As the responses were being prepared, defense counsel received a call from District Chief Ronald Texter. DC Texter stated that there was no way he could get the emergency medical run reports for FF Hoog and Paramedic Lotz identified and printed from the microfiche tapes by August 31, 2007.

Defense counsel asked if copies of the microfiche tapes could be made. DC Texter said that tapes could be made, but the duplicates could only be generated by the vendor. One set of duplicate tapes was ordered from the vendor, Tronitech, at a cost of $1228.70. The Fire Department delivered the duplicate microfiche tapes and all outstanding responses to defense counsel on August 30, 2007. Defense counsel delivered the microfiche tapes and the other remaining items,

---

[12] Id.

with the single exception noted below, to Dorothea K. Langsom at his first opportunity on August 31, 2007.

Defense counsel did not delay getting the microfiche tapes to Barbara Bison Jacobson. They were delivered as soon as they were received.

### 6. FF Hoog's Officer in Charge records

Defense counsel spoke with Lieutenant Michael Cayse regarding these records. Lieutenant Cayse did not understand that the request was for FF Hoog's OIC records outside of the May 29, 1999 through July 29, 2000 time period. He is ordering the microfiche tapes from Tronitech. Defense counsel does not have a microfiche reader and could not review the tapes prior to delivery. Defense counsel believed that the records were complete when they were tendered on August 31, 2007 and had no reason to believe that some records were not produced.[13]

## III. Law and Argument

This case is a far cry from the cases cited by plaintiffs. The defendants have produced or allowed inspection of literally thousands of documents and have done their utmost to respond to exceedingly broad discovery requests. The City of Cincinnati allowed the plaintiffs to examine sixteen filing cabinets worth of internal investigation records over the course of four months. Allowing inspection was the only way the City could realistically respond to request No. 18 of the subpoena directed to the City.

While the City allowed inspection of these documents, the parties were working together on the other discovery requests. This is evident by the remarks noted in the

---

[13] See Affidavit of Peter J. Stackpole attached as exhibit F.

Motion for Extension of Time and Joint Status Reports. If the plaintiffs felt that the City was purposely and willfully delaying and obstructing discovery, then why not point that out to the Court in the motion for extension of time and the joint status reports? The reason is because at no time has the City purposely delayed or obstructed discovery. It has taken a long time to work through plaintiffs' discovery requests. That much is true. But this is a function of the nature of the requests and, in fairness, the nature of a large, operational department within a large municipal government—rather than a measure of the defendants' willingness to provide responses.

The plaintiffs cite *Bergman v. United States* in support of their motion for sanctions. In *Bergman*, the United States government refused to comply with a series of court orders.[14] In fact, the Deputy Attorney General defending the United States sent a letter directly to the Court refusing to comply with the court's order. Here, defense counsel requested the discovery order so that it **_could produce_** the discovery responses without fear of potential HIPAA violations.

In *L.D. Williams v. Texaco*, the district court sanctioned Texaco for "willful refusal to obey a discovery order and for other intentional acts of bad faith."[15] There are no willful refusals to obey discovery orders or other intentional acts of bad faith in this case.

In the other case cited by the plaintiffs, *Transportes Aereos De Angola v. Ronair*, the court noted, "The motions for sanctions now pending before this Court arise from a rare and prolonged situation where the contumacious conduct of two of the party litigants aided by a stream of attorneys who have appeared and disappeared in these

---

[14] *Bergman v. United States*, 565 F.Supp. 1353, 1362-63 (W.D. Mich. 1983).
[15] *L.D. Williams v. Texaco, Inc.*, 165 B.R. 662, 664 (D.N.M. 1994).

actions have effectively brought this litigation to a dead standstill due to their deliberate refusal to abide by the provisions of the Federal Rules of Civil Procedure or to comply with numerous court orders."[16] These are hardly analogous situations.

The Sixth Circuit reviews the imposition of sanctions under Rule 37 for an abuse of discretion.[17] The reviewing court will consider the following factors: 1) whether the adversary was prejudiced by the sanctioned party's failure to cooperate in discovery, 2) whether the sanctioned party was warned that failure to cooperate could lead to such a sanction, and 3) whether less drastic sanctions were imposed or considered before dismissal was ordered.[18]

First, there has been no prejudice to the plaintiffs. A tentative new trial date of March 17, 2008 has been set by the Court. If the plaintiffs need additional time to inspect the microfiche tapes, they should be granted additional time.

The City did not violate this Court's order by producing microfiche tapes. Rule 45(d)(1)(B) provides, "If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable."[19] The emergency medical run report records requested by plaintiffs are ordinarily stored on microfiche. Microfiche film is reasonably usable and there are microfiche readers (nine) available at the public library downtown.

---

[16] *Transportes Aereos de Angola v. Ronair, Inc*, 104 F.R.D. 482, 485 (D. Del. 1985).
[17] *Polk v. Local 16, Intl. Union of Bricklayers and allied Craftsmen*, 53 F.3d 332, 1995 WL 241999 at *3 (6th Cir. 1995).
[18] Id.
[19] Rule 45(d)(1)(B). See also Rule 34(b)(ii).

Second, there was no warning to Steven M. Hoog and Michael A. Lotz that if the City did not comply with the July 27, 2007 Order that they would lose the opportunity to assert defenses by motion for summary judgment. The individual defendants do not have the records. The City does. That is why plaintiffs issued the subpoena to the City in the first place. It would be wrong to penalize the individual defendants under these circumstances.

Finally, this Court should not sanction the defendants but should instead grant the plaintiffs additional time to examine the microfiche films. This is not a case of willful obstruction or delay. The records have been provided or, in the case of FF Hoog's OIC records for the period outside May 29, 1999 through July 29, 2000, will be provided as soon as the vendor generates duplicate microfiche films for the relevant time periods.

Granting the motion for sanctions on this record would be unjust.

## IV. Conclusion

Based on the foregoing, the defendants respectfully ask this Court to deny the plaintiffs' motion for sanctions and grant plaintiffs additional time as necessary to examine the microfiche films.

Respectfully submitted,

**JULIA L. McNEIL, (0043535)**
**CITY SOLICITOR**

/s/ Peter J. Stackpole
**PETER J. STACKPOLE (72103)**
Assistant City Solicitor
Counsel for Defendant City of Cincinnati
City Hall, Room 214
801 Plum Street
Cincinnati, Ohio 45202
Tel: 513-352-3350
Fax: 513-352-1515

Email: peter.stackpole@cincinnati-oh.gov

## **CERTIFICATE OF SERVICE**

I hereby certify on September 24, 2007 that a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

**/s/ Peter J. Stackpole**
**PETER J. STACKPOLE (0072103)**
Assistant City Solicitor