**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JANIE SAMUEL, | : | |
| AS ADMINISTRATOR OF | : | **Case No. 1:02CV378** |
| THE ESTATE OF | : | |
| CATHY LYNN TUBBS, et al., | : | **Judge Michael R. Barrett** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| -vs- | : | |
| | : | |
| STEVEN M. HOOG, et al., | : | **PLAINTIFFS' REPLY IN SUPPORT OF** |
| | : | **THEIR MOTION FOR SANCTIONS** |
| **Defendants.** | : | **PURSUANT TO F.R.C.P. 37(b)** |
| | : | |

**INTRODUCTION**

Parties and counsel must exercise diligence to comply with discovery requests and court orders. Defendants bear the burden to show that a good faith effort was made to comply with the September 2006 Subpoena and the Court's July 27, 2007 Order. They have failed to do so. Counsel for the Defendants and the City bore the responsibility to ensure timely and full compliance with the Subpoena and the Order. This was not done.

It has been over a year since Plaintiffs issued the Subpoena. Even with a Court Order, Plaintiffs still have not received all documents requested. At the very least, the microfiche should have been produced a year ago – so that Plaintiffs could by now have completed the process of identifying and reviewing responsive documents and conducting follow up investigation. Defendants' counsel's failure even to attempt to obtain from the Fire Department the documents at issue until June 2007 – nine months after the subpoena issued – and his failure to make even the most minimal effort to ensure the Court's Order was fully complied with on

August 31, 2007, belie any claim of diligence.  Sanctions are warranted to avoid further delay and prejudice to Plaintiffs.

The documents at issue would allow Plaintiffs to identify similarly situated white persons who were treated differently from Ms. Tubbs – key evidence for Plaintiffs' racial discrimination claim.  The requested relief – precluding Defendants from arguing or obtaining judgment if Plaintiffs cannot present evidence of similarly situated white persons – would simply ensure that Defendants do not gain a litigation advantage from their counsel's delay.

## DISCUSSION

On September 14, 2006, Plaintiffs issued a subpoena seeking, *inter alia*, (1) Medical Run Reports that identify Defendants Hoog or Lotz for the period May 29, 1999 through July 29, 2000 ("1999-2000 Run Reports") and (2) documents for any occasions, without time limitation, that Defendant Hoog acted as officer in charge, as he did the day Cathy Lynn Tubbs died ("Hoog In-Charge Records").  By July 27, 2007, the City had simply not complied with either request.[1] The Court then ordered the Defendants to produce the documents by August 31, 2007.  On August 31, the Defendants produced 55 microfiche tapes on which it stored all Medical Run Reports, including thousands of non-responsive records, for May 1999 through July 2000. Defendants concede that they *still* have not produced – in any format – Hoog In-Charge Records beyond the one-year period for which all Run Reports were produced.[2]  Attached for the Court's

---

[1] The only Medical Run Reports and other emergency medical documentation the City had produced were for emergency medical responses to Ms. Samuel's address and any such documentation in the Fire Department's internal investigation files, which were made available for inspection by Plaintiffs' counsel.

[2] Defendants also did not produce any study of racial segregation or discrimination in the Fire Department – and while Defendants' Memorandum in Opposition entirely fails to mention this part of the Court's Order, their counsel's affidavit states only that "Assistant Chief Mose DeMasi is unaware of any study regarding racial discrimination or segregation within the Cincinnati Fire Department."  Affidavit of Peter J. Stackpole ¶3.

convenience as Exhibit A is a chart showing the key dates since the September 2006 Subpoena issued.

In *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958), the Supreme Court held that the most drastic of sanctions available under Rule 37 – dismissal or default judgment – should not be granted "when it has been established that failure to comply has been due to *inability*, and not to willfulness, bad faith, or any fault of petitioner." *Id.* at 212 (emphasis added). In the Sixth Circuit, it is well established that "the burden of proof is on the sanctioned party to establish that the failure to comply was due to inability and not to willfulness, bad faith or any fault of the party." *Bratka v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 448, 460 (S.D. Ohio 1995) (*Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988); *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 987 (6th Cir. 1988); *Beil v. Lakewood Engineering & Manu. Co.*, 15 F.3d 546, 552 (6th Cir. 1994)).

This Court has held that the "fault" sufficient to warrant dismissal or default judgment – a more severe sanction than sought here – "would at least include gross negligence." *Bratka*, 164 F.R.D. at 460; *see also id.* at 463 ("If litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.").[3]

---

[3] In *Bratka*, the plaintiff sued his employer, Anheuser-Busch, alleging that he was injured during his employment by exposure to the chemical iodophor. *Id.* at 449. Plaintiffs requested, and the Court ordered, Anheuser-Busch to produce, all documents reflecting discussions of iodophor, all documents referring to iodophor exposure, and any incident reports or employee complaints concerning iodophor at any of Anheuser-Busch's seven facilities where iodophor was used. *Id.* at 450-51. When Anheuser-Busch failed to produce all relevant documents despite repeated

In *Bratka*, the defendant Anheuser-Busch's "[t]rial counsel permitted the defendant, through its general counsel's office, to undertake total responsibility for compliance with plaintiff's discovery requests and the Court's discovery order." *Id.* at 461. While designating some responsibility for document retrieval is permissible, the Court made clear that trial counsel bears responsibility to establish and follow through on a plan that will ensure full compliance with discovery requests:

> The Court expects that any trial attorney appearing as counsel of record in this Court who receives a request for production of documents in a case such as this will formulate a plan of action which will ensure full and fair compliance with the request. Such a plan would include communicating with the client to identify the persons having responsibility for the matters which are the subject of the discovery request and all employees likely to have been the authors, recipients or custodians of documents falling within the request. The plan should ensure that all such individuals are contacted and interviewed regarding their knowledge of the existence of any documents covered by the discovery request, and should include steps to ensure that all documents within their knowledge are retrieved. All documents received from the client should be reviewed by counsel to see whether they indicate the existence of other documents not retrieved or the existence of other individuals who might have documents, and there should be appropriate follow up. Of course, the details of an appropriate document search will vary, depending upon the circumstances of the particular case, but in the abstract the Court believes these basic procedures should be employed by any careful and conscientious lawyer in every case.

*Id.* at 461. Thus, a "lack of diligence in planning and executing an effective search for the relevant documents evidences the absence of good faith, and a lack of respect for the seriousness of [the] duties under the Federal Rules of Civil Procedure and the importance of full and fair discovery under the Rules." *Id.* at 460.

The Court need not decide whether Defendants' counsel deliberately failed to comply with the subpoena or the Court's July 27, 2007 Order. The record is clear that – at the very least – there was a "lack of diligence in planning and executing an effective search for the relevant

---

requests by the plaintiff, the Court imposed default judgment on the issue of liability, leaving for trial only the question of damages. *Id.* at 463.

documents." *Id.*  That warrants sanctions – not simply an extension of pretrial and trial deadlines, especially when further delay prejudices Plaintiffs, who bear the burden to prove what occurred on May 29, 2000, now over seven years ago.

It is important to clarify that Plaintiffs were not given the opportunity to obtain or inspect the 1999-2000 Run Reports or the Hoog In-Charge Records prior to August 31, 2007. Defendants' Memorandum asserts that after learning in the Fall of 2006 that the response to the subpoena would be voluminous, "Defense counsel contacted plaintiffs' counsel, explained the situation, and suggested allowing inspection of the records so that plaintiffs could determine what they actually want."  Defs' Memo. at 4.  If this statement suggests Defendants' counsel made available for inspection the 1999-2000 Run Reports or the Hoog In-Charge Records, it is misleading.  Although Defendants' counsel advised that he would make the remainder of the requested documents available for inspection (*see* Motion For Extension of Time at 2 (doc. 54)), the only documents actually made available for inspection were the internal investigation documents, which only include Medical Run Reports and other emergency medical documentation if a complaint was filed or an internal investigation conducted.

The review of the internal investigation documents was not a substitute for the production of the 1999-2000 Run Reports or the Hoog In-Charge Records.[4]  The Memorandum in Opposition argues "The defendants have produced or allowed inspection of literally thousands of documents and have done their utmost to respond to exceedingly broad discovery requests.  The

---

[4] The internal investigation documents and the 1999-2000 Run Reports and Hoog In-Charge Records go to different issues in the case.  The purpose of reviewing the internal investigation documents was to determine whether there were complaints that other minority patients were discriminated against by the Defendants or whether there was a regular practice of such discrimination within the Fire Department or within Defendants' fire house or unit in particular. By contrast, the purpose of requesting the 1999-2000 Run Reports and the Hoog In-Charge Records was to identify emergency runs in which Defendants Hoog and Lotz transported similarly situated white patients without delay or argument.

City of Cincinnati allowed the plaintiffs to examine sixteen filing cabinets worth of internal investigation records over the course of four months." Defs' Memo. at 7. More precisely, on three occasions – none of which lasted more than several hours – Defendants' counsel sat in attendance as Plaintiffs' counsel reviewed approximately sixteen drawers of documents at the office of internal investigations. This hardly justifies the failure to comply with the remainder of the subpoena or with the Court's July 27, 2007 Order.

Counsel for the City and the Defendants further attempts to blame the bureaucracy of the Fire Department for his clients' failure timely to comply with the September 2006 Subpoena or the Court's July 27, 2007 Order. *E.g.*, Def's Memo. at 8. But it seems clear Defendants' counsel did not even ask the Fire Department to produce the 1999-2000 Run Reports or the Hoog In-Charge Records until June 2007 – almost nine full months after the subpoena issued.[5] Defendants' Memorandum in Opposition provides no justification for their counsel's failure even to attempt to comply with this part of the September 1996 Subpoena until three-quarters of a year after it issued. And Plaintiffs' counsel made repeated requests for the missing documents – even going so far as to provide dummied-down lists of the categories of documents for which production was still incomplete. *See* Langsam Aff. ¶6, Ex. 3; ¶10, Ex. 7; ¶16, Ex. 12.

---

[5]  In Exhibit C to Defendants' Memorandum in Opposition, on June 7, 2007, Defendants' counsel sent an e-mail to District Chief Dennis Clark requesting the 1999-2000 Run Reports and the Hoog In-Charge Records (which he described as part of the "latest request for records" – as if they had not previously been requested). Even now that Defendants have had the opportunity to respond to Plaintiffs' Motion for Sanctions, this appears to be the first time Defendants' counsel actually requested the Fire Department to provide these documents. In Exhibit A to Defendants' Memorandum in Opposition, on April 24, 2007, Defendants' counsel forwarded to District Chief Will Jones Plaintiffs' counsel's April 9, 2007 letter, which listed ten categories of documents requested in the September 2006 Subpoena and explained what documents Plaintiffs still needed to receive – including the 1999-2000 Run Reports and the Hoog In-Charge Records. *See* Langsam Aff. Ex. 1. But in his e-mail to Chief Jones, Defendants' counsel only mentions that Plaintiffs wanted to inspect records at Rescue 1 and Rescue 2. Defs' Ex. A. Rescue 1 and 2 were another possible location for internal investigation documents – they were *not* a source for either the 1999-2000 Run Reports or the Hoog In-Charge Records.

Defendants further assert that it was not until June 26, 2007, or shortly before, that their counsel learned that the Medical Run Reports were stored on microfiche. Defs' Memo. at 5. That simply raises the question: Why was counsel first finding out about these documents in June 2007 when the subpoena issued in September 2006? At the very least, the microfiche should have been turned over by July 2, 2007, the date selected by Defendants' counsel and included in the parties' Joint Status Report as the deadline by which the City would produce the remaining documents. There was no reason – other than intentional delay – for the City or the Defendants to sit on the microfiche until the very last day of the Court's Order.

Defendants also attempt to shift the responsibility to a Lieutenant of the Fire Department for the failure to produce Hoog In-Charge Records outside the May 1999-July 2000 time period, because the Lieutenant apparently misinterpreted the Court's Order. Defs' Memo. at 1 & 7. But it was Defendants' counsel's responsibility to ensure full compliance with the Court's July 27, 2007 Order. *See Bratka*, 164 F.R.D. at 461 ("[T]rial counsel must exercise some degree of oversight to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court. . . . All documents received from the client should be reviewed by counsel to see whether they indicate the existence of other documents not retrieved or the existence of other individuals who might have documents, and there should be appropriate follow up."). The excuse given here is that "Defense counsel does not have a microfiche reader and could not review the tapes prior to delivery," Defs' Memo. at 7, and "When the discovery responses, including microfiche tapes, were provided to me on August 30, 2007, I had no way of knowing that FF Hoog's OIC records were not entirely contained in the microfiche tapes," Affidavit of Peter J. Stackpole ¶7. Defendants' counsel could easily have known that all of the Hoog In-Charge Records were not being produced. First, he could have

asked the Lieutenant what was on the tapes.  Second, the date range of each tape is clearly

labeled on the tape.  *See* copies of tape labels, attached hereto as Exhibit B.  The first tape begins

on May 27, 1999, and the last tape ends on August 7, 2000.  *Id.*  Thus, had Defendants' counsel

simply looked at what he produced (not the actual records, as required by *Bratka*, 164 F.R.D. at

461, but merely the tape labels), he would have known the tapes did not fully comply with the

Court's Order.

The time for any "mistakes" about whether the production was complete was a year ago

in a timely response to the subpoena.  Had a real effort to comply with the subpoena been made

in a timely fashion, any mistakes would have been resolved long ago.  It is an understatement to

note that August 31, 2007 was just too late for an incomplete production.

August 31, 2007 was also too late for production of 55 microfiche tapes, which contain

thousands of pages of non-responsive documents mixed in with the 1999-2000 Run Reports

requested.  This Court condemned a similar production in *Bratka*:

> After the filing of the instant motion, defendant gathered the records it had
> previously failed to produce . . . .  It then failed to separate out the responsive
> from the nonresponsive documents and delivered over one thousand pages of
> irrelevant nonresponsive documents to plaintiff's counsel, presenting him with the
> tedious and time-consuming task of separating the relevant from the irrelevant.
> [Citation.]  Whether this was an attempt to "hide the needle in the haystack," to
> overwhelm plaintiff's counsel with hours of unnecessary work, to impress the
> Court with the sheer number of documents produced, or just another example of
> defendant's negligence is a moot question.

164 F.R.D. 448, 462-63 (S.D. Ohio 1995).  At the very least, if the microfiche were to be

produced, this should – and could – have been done in a timely response to the subpoena, not a

year later.

Defendants also argue that the Court's Order "was issued at the request of *defense*

*counsel* because he did not want the City of Cincinnati to violate the requirements of HIPAA by

releasing protected medical information." Defs' Memo. at 1.[6] But whether Defendants' counsel

agreed to or suggested the Court's Order does not give Defendants license to violate it – and the

Order required production of the 1999-2000 Run Reports and the Hoog In-Charge Records by

August 31, 2007.

The longer this case is delayed, the greater risk to Plaintiffs who have the burden to prove

what occurred on May 29, 2000, now over seven years ago. The Defendants argue that any

repercussions from their counsel's failure to produce the records should not inure to them

because the September 2006 Subpoena was issued to the City. The Court's July 27, 2007 Order

– in language agreed to (and, indeed, even drafted by Defendants' counsel) – was directed to

Defendants. It was their counsel acting in his dual role as counsel both for the Defendants and

the City who engaged in what must be considered serious negligence if not deliberate delay.

Acting in that dual role, Defendants' counsel delayed producing the documents from which

Plaintiffs could obtain evidence that Defendants treated similarly situated white people

differently from Ms. Tubbs – such delay could only benefit Defendants and prejudice Plaintiffs.[7]

Plaintiffs have not asked that judgment be entered in their favor. *Compare, e.g.*, *Bratka*,

164 F.R.D. at 464 (entering default judgment on issue of liability in favor of plaintiff as sanction

for defendant's failure to produce documents). Plaintiffs ask only that Defendants not be able to

---

[6] Defendants' counsel raised these HIPAA concerns for the first time on June 25, 2007. *See* Sept. 19, 2007 Langsam Aff. Ex. 9. The January 26, 2007 response to the subpoena raised no objection to either document request – so any such objection has been waived. *See* Pls' Mot. Ex. B at ¶1, 8. It is telling that Defendants' counsel apparently first gave serious consideration to what objections might apply to Plaintiffs' discovery requests at the end of June 2007.

[7] Moreover, when attorneys ignore their obligations under the discovery rules, their clients very often feel the consequences. *See Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1996) ("While both plaintiff and defense counsel have an ethical obligation to zealously represent their clients, they must do so within the bounds of the law. Appellees' law firm failed to do this. The discovery rules adopted by this court were cavalierly ignored. Appellees' complaints about a lack of a fair trial fall on deaf ears. If they were denied a fair trial, it was because of their own attorneys' actions. They must now live with the consequences.").

argue that Plaintiffs failed to show that a similarly situated white person was treated differently from Ms. Tubbs, because this evidence would be found in the 1999-2000 Run Reports and the Hoog In-Charge Records that Defendants' counsel so long delayed producing, and still has either not produced at all or produced almost a year late in a time-consuming format that includes thousands of non-responsive documents. The requested relief is warranted because it would preclude Defendants from gaining a litigation advantage from their counsel's delay. *See id.* ("a default judgment on the issue of liability would not only serve the purposes of punishment and deterrence but it would also have a direct relationship to the specific evidence which defendant failed to produce, namely evidence relevant to the issues of defendant's fault and the proximate cause of plaintiff's injury").[8]

Plaintiffs alternatively are amenable to what they understood to be the Court's suggestion: that Defendants would not be permitted to file a motion for summary judgment until Plaintiffs have all records in their possession and have had sufficient time to identify the responsive records and conduct follow-up investigation. Plaintiffs would also request, under this scenario, that Defendants not be permitted to file a motion for summary judgment so soon before trial that Plaintiffs would be required to respond to their motion at the same time as they are engaged in intensive trial preparations. And Plaintiffs ask that trial not be postponed again to make additional time for Defendants to move for summary judgment. Further delay – especially so many years after Ms. Tubbs' death – will only cause additional prejudice to Plaintiffs.

---

[8] Plaintiffs note that they intend to produce other direct and indirect evidence of racial discrimination than what would be found in the 1999-2000 Run Reports and the Hoog In-Charge Records.

**CONCLUSION**

For the reasons stated, the Court should preclude the Defendants from presenting evidence or arguing in any motion or at trial that Plaintiffs failed to show Ms. Tubbs was treated worse than a similarly situated white person.  In the alternative, the Court should refuse to permit Defendants to move for summary judgment unless and until they have fully complied with the Court's July 21, 2007 Order and Plaintiffs have had sufficient opportunity to review the production and conduct follow up investigation within a reasonable time before trial.

Respectfully submitted,

*s/ Barbara Bison Jacobson*
Glenn V. Whitaker (0018169)
Barbara Bison Jacobson (0014190)
Vorys, Sater, Seymour and Pease LLP
221 East Fourth Street, Suite 2000
P.O. Box 236
Cincinnati, Ohio 45202
Telephone – (513) 723-4016
Facsimile – (513) 852-8481

Trial Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF which will send notification of such filing to Peter J. Stackpole, Esq., City of Cincinnati Solicitor's Office, 801 Plum Street, Room 214, Cincinnati, OH 45202; and Kimberly A. Rutowski, Esq., Hardin Lefton Lazarus & Marks LLC, 30 Garfield Place, Suite 915, Cincinnati, OH 45202.

*s/ Barbara Bison Jacobson*
Barbara Bison Jacobson

11